M. Natasha Labovitz
Christopher Updike
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Telephone:    (212) 909-6000
Facsimile:    (212) 909-6836

Proposed Counsel to the Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | |
| **THE BIG APPLE CIRCUS, LTD.** | **Chapter 11** |
| **Debtor.** | **Case No. 16-13297 (___)** |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND**
**FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO OBTAIN**
**POSTPETITION FINANCING AND (II) GRANTING RELATED RELIEF**

The above-captioned debtor and debtor in possession, The Big Apple Circus, Ltd.

(the "**Circus**" or the "**Debtor**"), respectfully states as follows:

**Concise Statement of Relief Requested**

1.      The Circus hereby submits this motion, pursuant to sections 362, 363, 364,

1107(a), and 1108 of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 2002,

4001, 9006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"),

and rules 4001-2 and 9013-1 of the Local Bankruptcy Rules for the Southern District of New

York (the "**Local Bankruptcy Rules**"), for entry of interim and final orders, substantially in the

forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "**Interim Order**" and

"**Final Order**"): (a) authorizing, but not directing, the Circus to obtain interest-free postpetition

financing from directors Paul Goldenheim, Ron Gross, and Rick Mayberry (collectively, the

"**Directors**") in the amounts set forth on **Exhibit C** hereto for an aggregate amount of $66,058

(the "**DIP Loan**") that (i) matures upon the closing of the sale of the Walden Property (as

defined below), (ii) is secured by a lien on the Walden Property that is junior only to valid,

enforceable, perfected and non-avoidable third-party liens, and (iii) has priority over any and all

administrative expenses of the kind specified in section 503(b) or 507(b) of the Bankruptcy

Code, and (b) granting related relief.[1]

2.      The Circus further proposes that the Court set, at the initial hearing, a date

for consideration of permanent grant of the requested relief (the "**Final Hearing**"), and a

deadline for objections thereto.  If any such objection is filed, the Circus proposes that it be

addressed at the Final Hearing; if no objection is filed, the Circus proposes that the Final Order

be entered without a Final Hearing.

3.      In support of this motion, the Circus relies upon the "Declaration of Will

Maitland Weiss, Executive Director of The Big Apple Circus, Ltd., in Support of Chapter 11

Petition and First Day Pleadings" (the "**First Day Declaration**"),[2] and respectfully states as

follows.

**Jurisdiction and Venue**

4.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue is

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1]    The Circus maintains that the foregoing complies with the requirements under Bankruptcy Rule
4001(c)(1)(B) and Local Rule 4001-2(a) to include a concise statement of the relief requested herein
with respect to the DIP Loan, however, out of an abundance of caution, the Circus respectfully
requests relief from such requirements to the extent not satisfied.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First
Day Declaration.

**General Background**

5.    On the date hereof (the "**Petition Date**"), the Circus commenced a voluntary case under chapter 11 of the Bankruptcy Code in this Court.  The Circus is authorized to continue to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made, and no statutory committee has been appointed or designated, in this chapter 11 case.

6.    Information regarding the Circus' businesses, its capital structure, the events leading to the filing of its chapter 11 case, and the facts and circumstances supporting the relief requested herein are set forth in the First Day Declaration, filed contemporaneously herewith and incorporated herein by reference.

7.    As set forth in the First Day Declaration, the Circus has faced significant financial distress during recent years.  In response, the Circus aggressively cut operating costs wherever possible, reduced its performance schedule, and actively sought donor contributions, most recently through the "Save the Circus" campaign mounted this summer.  However, despite receiving donations from over 1,400 donors as well as continued financial support of the Circus' officers and directors, the Circus was ultimately unable to raise sufficient funds.  In July, the Circus made the difficult decision to cancel the 2016-17 performance season and release the Circus' artists and production crew.

8.    Based on the foregoing and other factors, the Circus, in consultation with its directors, officers and advisors, determined that the best course of action to maximize the Circus' value for creditors and honor its mission was to commence this chapter 11 case to effectuate an orderly wind down of the Circus' affairs, sell certain assets, and satisfy creditor

claims, all while continuing a downsized operation of its Community Programs, some of which may be transitioned to other capable not-for-profit organizations, and preserving the opportunity to restart the annual ring show with new financial support or through a sale of the circus to an interested buyer.

9.      Specifically, in light the cancellation of the Circus' performance season, the Circus intends to sell its circus equipment and other personal and intellectual property associated with the Circus' performance unit (such assets, the "**Circus Assets**"), which are no longer necessary to support the Circus' mission or operations.  Most of the physical Circus Assets are located at the Circus' owned real property located at 39 Edmunds Lane, Walden, New York 12586 (the "**Walden Property**"), which the Circus historically used as a storage and training facility.  The Circus also intends to sell the Walden Property and is currently finalizing a purchase and sale agreement with respect thereto.

## The DIP Loan

10.      The Directors have generously agreed to provide the DIP Loan – a zero-interest term loan in an amount equal to $66,058 – in order to provide critical liquidity to fund administrative expenses incurred by the Circus during this chapter 11 case until the sale of the Circus Assets or the Walden Property closes, thereby unlocking considerable unencumbered value for the Debtor's estate.

11.      The DIP Loan shall not bear any interest and shall be repaid in full by the Circus upon the closing of the sale of the Walden Property.  The DIP Loan shall be evidenced by the Interim Order or Final Order (as applicable), and, if requested by the Directors, promissory notes payable to the Directors in form and substance reasonably acceptable to the respective Director and the Circus.  To secure the Circus' obligation to repay the DIP Loan to the Directors,

the Circus will grant the Directors a lien on and security interest in the Walden Property, which

lien and security interest shall be (a) deemed valid, enforceable, perfected and non-avoidable

pursuant to the Interim Order or Final Order (as applicable), and (b) junior only to pre-existing

liens of a third party, but solely to the extent that such liens and security interests are, as of the

commencement of this chapter 11 case, valid, enforceable, perfected and non-avoidable liens, or

were perfected subsequent to commencement of this chapter 11 case as permitted under section

546(b) of the Bankruptcy Code

    12. In addition to the grant of the foregoing lien and security interest, upon

entry of the Interim Order, the Circus' obligation to repay the DIP Loan shall constitute an

allowed super-priority administrative expense claim against the Circus' estate pursuant to section

364(c)(1) of the Bankruptcy Code with priority over any and all administrative expenses of the

kind specified in section 503(b) and 507(b) of the Bankruptcy Code.

### Basis for Relief Requested

    13. For the reasons set forth herein, the Circus submits that approval of the

DIP Loan will serve the best interests of the Debtor and its estate, creditors, stakeholders, and

other parties in interest, and is authorized under the Bankruptcy Code and the Bankruptcy Rules.

Accordingly, the Debtor respectfully requests entry of the proposed Interim and Final Orders.

**A.** **The Circus Should Be Authorized to Obtain the DIP Loan on a Junior Secured Basis**

    14. Approval of the DIP Loan will provide the Circus with immediate access

to funding necessary to pay current and ongoing operating expenses of this chapter 11 case,

while the Circus seeks to sell it assets.  Without the DIP Loan, the Circus would have insufficient

liquidity to continue to make such payments, and, therefore, the DIP Loan is critical to ensure

that the Circus has sufficient working capital and liquidity to continue operations and preserve

the value of the Circus Assets and the Walden Property until they are sold.

15.     Section 364(c) of the Bankruptcy Code provides that if a debtor is unable

to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the

Bankruptcy Code, the Court may authorize the debtor to obtain credit or incur debt (a) with

priority over any and all administrative expenses as specified in section 503(b) or 507(b) of the

Bankruptcy Code, (b) secured by a lien on property of the estate that is not otherwise subject to a

lien, or (c) secured by a junior lien on property of the estate that is subject to a lien.  11 U.S.C. §

364(c).  The Debtors propose to obtain the DIP Loan by granting the Directors a lien on the

Walden Property junior only to valid, enforceable, perfected and non-avoidable third-party liens,

and a superpriority administrative expense claim pursuant to section 364(c).

16.     Bankruptcy courts routinely defer to a debtor's business judgment in

considering whether to approve the debtor's request to obtain postpetition financing.  See, e.g.,

In re Ames Dep't Stores, Inc., 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (the court should defer to

the debtor's "reasonable business judgment . . . so long as the financing agreement does not

contain terms that leverage the bankruptcy process and powers" and its purpose is to benefit the

estate rather than another party-in-interest).  Courts consider various factors in determining

whether a debtor may obtain postpetition financing under section 364(c) of the Bankruptcy Code,

including whether (a) the debtor is unable to obtain unsecured credit under sections 364(b) of the

Bankruptcy Code, i.e., by allowing a lender only an administrative expense claim, (b) the

postpetition financing is necessary to preserve the assets of the estate, (c) the terms of the

transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower

and the proposed lender, (d) entry into the financing constitutes an exercise of the debtor's sound

and reasonable business judgment, and (e) the financing was negotiated in good faith and at arm's-length between the debtor and the lender.  See, e.g., In re Aqua Assocs., 123 B.R. 192, 195-96 (Bankr. E.D. Pa. 1991); Ames Dep't Stores, 115 B.R. at 37-39.

17.     Under section 364(c) of the Bankruptcy Code, the adequacy of a debtors efforts to obtain postpetition financing on other terms is a case-specific inquiry.  Courts generally hold that a debtor's good faith efforts to seek credit from other sources is sufficient to carry this burden.  See, e.g., Bray v. Shenandoah Fed. Savs. & Loan Ass'n (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986) (recognizing "there is no duty to seek credit from every possible lender"); see also In re Gen. Growth Props., Inc., 412 B.R. 122, 125 (Bankr. S.D.N.Y. 2009) (debtor has an obligation to make "reasonable efforts, under the circumstances . . . to obtain [unsecured financing], in the ordinary course of business or otherwise"); In re 425 Cent. Park Ave. Corp., 136 B.R. 626, 630-31 (Bankr. S.D.N.Y. 1992) (noting that while "[s]ection 364(d)(1) does not require the debtor to seek alternate financing from every possible lender," it "must make an effort to obtain credit without priming a senior lien").  Indeed, when few lenders are likely to be able and willing to extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing."  In re Sky Valley, Inc., 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), aff'd sub nom., Anchor Savs. Bank FSB v. Sky Valley, Inc., 99 B.R. 117, 120 n. 4 (N.D. Ga. 1989).

18.     The Circus has explored various potential sources of postpetition financing, and was unable to identify any party willing to lend on more favorable terms than the Directors.  Indeed, because the DIP Loan bears no interest, it imposes no cost on the Circus' estate, while providing essential bridge financing to support the organization and preserve the value of the Circus' assets.  Following good faith negotiations, the Directors were not willing to

provide the DIP Loan on any lesser terms, such as on an unsecured or administrative expense basis. Accordingly, the Circus maintains that obtaining the DIP Loan on the terms set forth herein and in the proposed Interim and Final Order (as applicable) is a sound exercise of the Circus' reasonable business judgment and should be authorized and approved.

**B.      The Directors Are Entitled to the Protections Under Section 364(e) of the Bankruptcy Code**

19.      Section 364(e) of the Bankruptcy Code provides that:

> The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e). This statute protects a good faith lender's right to collect loans extended to a debtor and its right in any lien securing those loans, even if the authority of the debtor to obtain such loans or grant such liens is later reversed or modified on appeal, and was designed to "encourage lenders to extend credit to debtors by eliminating the risk that any lien securing the loan will be modified on appeal." Keltic Fin. Partners, LP v. Foreside Mgmt. Co. (In re Foreside Mgmt. Co.), 402 B.R. 446, 451 (B.A.P. 1st Cir. 2009) (citing Shapiro v. Saybrook Mfg. Co. (In re Saybrook Mfg. Co.), 963 F.2d 1490, 1493 (11th Cir. 1992)); see also White Rose Food v. General Trading (In re Clinton St. Food Corp.), 170 B.R. 216, 200 (S.D.N.Y. 1994) (noting that section 364(e)'s purpose "is to overcome[s] parties' reluctance to lend to a bankrupt firm . . ."); Fleet Nat'l Bank v. Doorcrafters (In re N. Atl. Millwork Corp.), 155 B.R. 271, 279 (Bankr. D. Mass. 1993) ("The purpose of Section 364(e) is to allow good-faith lenders to rely upon conditions at the time they extend credit and to encourage lenders to lend to bankruptcy entities.").

20.     The terms and conditions of the DIP Loan are fair and reasonable, and were negotiated in good faith with the Directors.  Indeed, the DIP Loan provides no pecuniary benefit for the Directors and, instead, represents another example of the considerable financial support that has been generously provided by the Circus' officers and directors over the years during the Circus' most difficult moments.  In particular, the DIP Loan reflects the steadfast commitment of the Directors to ensure that the Circus' affairs are properly wound down for the benefit of creditors, donors, and all other parties in interest.  Accordingly, the Directors should be provided with the benefit and protections of section 364(e), such that if any of the provisions of the DIP Loan are later modified, vacated, or terminated by subsequent order of this or any other court, the Directors will be fully protected with respect to any amounts previously disbursed.

## C.     Immediate Relief Is Necessary to Avoid Immediate and Irreparable Harm

21.     Bankruptcy Rule 4001(c) provides that the Court may conduct a hearing to consider a motion for authority to obtain credit within 14 days after service of the motion, but only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.  Fed. R. Bankr. P. 4001(c).

22.     As described above, authorizing the Circus to immediately obtain the DIP Loan is critical to allow the Circus to fund this chapter 11 case until the closing of the sale of the Circus Assets or the Walden Property, and thus successfully liquidate its assets in a manner that maximizes value for creditors and honors the Circus' mission.  Failure to receive such authorization during the first 21 days of this chapter 11 case would significantly disrupt the administration of this case at a critical juncture, and delay, if not prevent, the sale of the Circus Assets and the Walden Property.  Accordingly, the Debtor submits that it has satisfied the

requirements of Bankruptcy Rule 4001 to support the relief requested on the terms described herein.

## **Motion Practice**

23.     This motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to this motion.  Accordingly, the Circus submits that this motion satisfies Local Bankruptcy Rule 9013-1(a).

## **Notice**

24.     Notice of this Motion shall be given to (a) the Office of the United States Trustee for the Southern District of New York, (b) the U.S. Attorney for the Southern District of New York, (c) the New York State Attorney General, (d) the New York City Department of Cultural Affairs, (e) any entity known or reasonably believed to have asserted a security interest in or lien against the Walden Property, (f) the Directors, (g) the entities listed on the List of Creditors Holding the 20 Largest Unsecured Claims and (h) all those persons and entities that have formally requested notice by filing a written request for notice, pursuant to Bankruptcy Rule 2002 and the Local Bankruptcy Rules (collectively, the "**Notice Parties**").  Due to the nature of the relief requested herein, the Debtor respectfully submits that no further notice of this motion is required.

## **No Prior Request**

25.     No prior request for the relief sought herein has been made by the Debtor to this or any other court.

WHEREFORE, the Debtor respectfully requests that the Court (a) enter the Interim and Final Orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested herein, and (b) grant such other and further relief as is just and proper.

Dated:   November 20, 2016
        New York, New York

                                 */s/ Christopher Updike*
                                 M. Natasha Labovitz
                                 Christopher Updike
                                 DEBEVOISE & PLIMPTON LLP
                                 919 Third Avenue
                                 New York, New York 10022
                                 Telephone:    (212) 909-6000
                                 Facsimile:    (212) 909-6836
                                 Email:        nlabovitz@debevoise.com
                                                   cupdike@debevoise.com

                                 Proposed Counsel to the Debtor
                                 and Debtor in Possession

**<u>Exhibit A</u>**

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**THE BIG APPLE CIRCUS, LTD.**<br><br>　　　　　　　**Debtor.** | **Chapter 11**<br><br>**Case No. 16-13297 (___)** |

## INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING AND (II) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[1] of The Big Apple Circus, Ltd. (the "**Circus**" or the "**Debtor**"), pursuant to sections 362, 363, 364, 1107(a), and 1108 of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 2002, 4001, 9006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rules 4001-2 and 9013-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**"), for entry of an interim order (a) authorizing, but not directing, the Circus to obtain interest-free postpetition financing from the Directors in the aggregate amount of $66,058 (the "**DIP Loan**") that (i) matures upon the closing of the sale of the Walden Property (as defined below), (ii) is secured by a lien on the Walden Property that is junior only to valid, enforceable, perfected and non-avoidable third-party liens, and (iii) has priority over any and all administrative expenses of the kind specified in section 503(b) or 507(b) of the Bankruptcy Code, and (b) granting related relief, all as further set forth in the Motion; and upon consideration of the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper before this

---

[1]　Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Motion.

Court pursuant to 28 U.S.C. §§ 1408 and 1409; and adequate notice of the Motion and opportunity for objection having been given under the circumstances; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that such relief is (a) in the best interests of the Debtor, its estate, its creditors and all parties in interest and (b) necessary to avoid immediate and irreparable harm to the Debtor and its estate; and any objections to the Motion having been withdrawn or overruled on the merits; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby FOUND, DETERMINED, ORDERED AND ADJUDGED that:

1.      The Motion is granted on an interim basis as set forth herein.

2.      The DIP Loan is approved in all respects.   The Debtor is hereby authorized to immediately borrow the DIP Loan up to a maximum aggregate amount of $66,058. The Debtor is authorized to enter into, execute and deliver all instruments, certificates, agreements and documents, and to take all actions, which may be reasonably required or otherwise necessary for the Debtor's performance with respect to the DIP Loan, including the delivery of promissory notes, if requested by the Directors, and the creation and perfection of the lien described herein.

3.      Upon entry of this Interim Order, the DIP Loan shall constitute a valid and binding obligation of the Debtor.   All obligations incurred, payments made, and transfers or grants of security set forth in this Interim Order are granted to or for the benefit of the Directors for fair consideration and reasonably equivalent value, and are granted contemporaneously with the making of the DIP Loan.

2

4.       Effective immediately upon the entry of this Interim Order, the Directors are hereby granted a lien on and security interest in the Walden Property, which lien and security interest shall be (a) immediately valid, binding, fully perfected, enforceable, and non-avoidable and (b) junior only to pre-existing liens of a third party, but solely to the extent that such liens and security interests are, as of the commencement of this chapter 11 case, valid, enforceable, perfected and non-avoidable liens, or were perfected subsequent to commencement of this chapter 11 case as permitted under section 546(b) of the Bankruptcy Code.

5.       This Interim Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the lien granted hereunder, without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect such lien.  Notwithstanding the foregoing, the Directors may, in their sole discretion, file such financing statements, deeds of trust, mortgages, security agreements, notices of liens and other similar documents, and are hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code to do so, and all such financing statements, deeds of trust, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the chapter 11 case.

6.       Effective immediately upon the entry of this Interim Order, the Debtor's obligation to repay the DIP Loan shall constitute an allowed super-priority administrative expense claim against the Debtor's estate pursuant to section 364(c)(1) of the Bankruptcy Code with priority over any and all administrative expenses and all other claims asserted against the Debtor now existing or hereafter arising of any kind whatsoever, including all other

3

administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code.

7.       The DIP Loan has been negotiated in good faith between the Debtor and the Directors, and all of the Debtor's obligations and indebtedness arising under, in respect of or in connection with the DIP Loan, shall be deemed to have been extended by the Directors in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

8.       All fees required to be paid to the Clerk of this Court and the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a) shall be afforded priority status in accordance with section 507(a)(2) of the Bankruptcy Code.

9.       Notice of the Motion and the hearing to consider the Motion and entry of this Interim Order was good and sufficient and satisfies section 102(l) of the Bankruptcy Code, Bankruptcy Rules 2002(a), 4001, and 9006, and all applicable Local Bankruptcy Rules.

10.       The terms and provisions of this Interim Order shall be binding in all respects upon the Debtor, its estate and creditors, all holders of any lien, claim, encumbrance, or other interest in the Walden Property, any purchaser and all successors and assigns of any purchaser, and any trustees subsequently appointed in this chapter 11 case or upon conversion to chapter 7 under the Bankruptcy Code of this case.  This Interim Order shall inure to the benefit of the Debtor, its estate and creditors, any purchaser, and their respective successors and assigns.

11.       The Final Hearing on the Motion shall be held on _____, **2016 at** _____ **(Eastern Time)** and any objections or responses to the Motion shall be in writing, filed

with the Court, and served upon (a) the proposed attorneys for the Debtor, Debevoise & Plimpton LLP, 919 Third Avenue, New York, New York 10022 (Attn: M. Natasha Labovitz, Esq. and Christopher Updike, Esq.); and (b) the Notice Parties, in each case so as to be received no later than **4:00 p.m. (Eastern Time) on _____, 2016**; provided, however, that if no objection is timely made, the Final Order regarding the relief sought in the Motion may be entered without a Final Hearing.

12.    The Debtor is authorized and empowered to take such actions as may be necessary and appropriate to implement the terms of this Interim Order.

13.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

Dated: _____, 2016

_____
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Proposed Final Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re:**<br><br>**THE BIG APPLE CIRCUS, LTD.**<br><br>                              **Debtor.** | **Chapter 11**<br><br>**Case No. 16-13297 (___)** |

## FINAL ORDER (I) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING AND (II) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[1] of The Big Apple Circus, Ltd. (the "**Circus**" or the "**Debtor**"), pursuant to sections 362, 363, 364, 1107(a), and 1108 of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 2002, 4001, 9006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rules 4001-2 and 9013-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**"), for entry of a final order (a) authorizing, but not directing, the Circus to obtain interest-free postpetition financing from the Directors in the aggregate amount of $66,058 (the "**DIP Loan**") that (i) matures upon the closing of the sale of the Walden Property (as defined below), (ii) is secured by a lien on the Walden Property that is junior only to valid, enforceable, perfected and non-avoidable third-party liens, and (iii) has priority over any and all administrative expenses of the kind specified in section 503(b) or 507(b) of the Bankruptcy Code, and (b) granting related relief, all as further set forth in the Motion; and upon consideration of the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper before this

---

[1]   Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Motion.

Court pursuant to 28 U.S.C. §§ 1408 and 1409; and adequate notice of the Motion and opportunity for objection having been given under the circumstances; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that such relief is in the best interests of the Debtor, its estate, its creditors and all parties in interest; and any objections to the Motion having been withdrawn or overruled on the merits; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby FOUND, DETERMINED, ORDERED AND ADJUDGED that:

1.    The Motion is granted on a final basis as set forth herein.

2.    The DIP Loan is approved in all respects.  The Debtor is hereby authorized to immediately borrow the DIP Loan up to a maximum aggregate amount of $66,058. The Debtor is authorized to enter into, execute and deliver all instruments, certificates, agreements and documents, and to take all actions, which may be reasonably required or otherwise necessary for the Debtor's performance with respect to the DIP Loan, including the delivery of promissory notes, if requested by the Directors, and the creation and perfection of the lien described herein.

3.    The DIP Loan constitutes a valid and binding obligation of the Debtor. All obligations incurred, payments made, and transfers or grants of security set forth in the Interim Order and this Final Order are granted to or for the benefit of the Directors for fair consideration and reasonably equivalent value, and are granted contemporaneously with the making of the DIP Loan.

4.    The Directors are hereby granted a lien on and security interest in the Walden Property, which lien and security interest shall be (a) immediately valid, binding, fully

2

perfected, enforceable, and non-avoidable and (b) junior only to pre-existing liens of a third party, but solely to the extent that such liens and security interests are, as of the commencement of this chapter 11 case, valid, enforceable, perfected and non-avoidable liens, or were perfected subsequent to commencement of this chapter 11 case as permitted under section 546(b) of the Bankruptcy Code.

5.      This Final Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the lien granted hereunder, without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect such lien.  Notwithstanding the foregoing, the Directors may, in their sole discretion, file such financing statements, deeds of trust, mortgages, security agreements, notices of liens and other similar documents, and are hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code to do so, and all such financing statements, deeds of trust, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the chapter 11 case.

6.      The Debtor's obligation to repay the DIP Loan constitutes an allowed super-priority administrative expense claim against the Debtor's estate pursuant to section 364(c)(1) of the Bankruptcy Code with priority over any and all administrative expenses and all other claims asserted against the Debtor now existing or hereafter arising of any kind whatsoever, including all other administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code.

7.     The DIP Loan has been negotiated in good faith between the Debtor and the Directors, and all of the Debtor's obligations and indebtedness arising under, in respect of or in connection with the DIP Loan, shall be deemed to have been extended by the Directors in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

8.     All fees required to be paid to the Clerk of this Court and the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a) shall be afforded priority status in accordance with section 507(a)(2) of the Bankruptcy Code.

9.     Notice of the Motion and the hearing to consider the Motion and entry of this Final Order was good and sufficient and satisfies section 102(l) of the Bankruptcy Code, Bankruptcy Rules 2002(a), 4001, and 9006, and all applicable Local Bankruptcy Rules.

10.     The terms and provisions of this Final Order shall be binding in all respects upon the Debtor, its estate and creditors, all holders of any lien, claim, encumbrance, or other interest in the Walden Property, any purchaser and all successors and assigns of any purchaser, and any trustees subsequently appointed in this chapter 11 case or upon conversion to chapter 7 under the Bankruptcy Code of this case.  This Final Order shall inure to the benefit of the Debtor, its estate and creditors, any purchaser, and their respective successors and assigns.

11.     The Debtor is authorized and empowered to take such actions as may be necessary and appropriate to implement the terms of this Final Order.

12.     This Court retains exclusive jurisdiction with respect to all matters arising

from or related to the implementation, interpretation, and enforcement of this Final Order.

Dated: _____, 2016

_____
UNITED STATES BANKRUPTCY JUDGE

**Exhibit C**

**DIP Loan Commitments**

| Director | Commitment |
|---|---|
| Paul Goldenheim | $16,666 |
| Ron Gross | $24,696 |
| Rick Mayberry | $24,696 |