M. Natasha Labovitz
Christopher Updike
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Telephone:      (212) 909-6000
Facsimile:      (212) 909-6836

Counsel to the Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**THE BIG APPLE CIRCUS, LTD.**<br><br>        **Debtor.** | **Chapter 11**<br><br>**Case No. 16-13297 (SHL)** |

**DEBTOR'S MOTION FOR ENTRY OF**
**(I) AN ORDER (A) APPROVING BIDDING**
**PROCEDURES FOR THE SALE OF THE DEBTOR'S**
**CIRCUS ASSETS, (B) AUTHORIZING THE EMPLOYMENT**
**AND RETENTION OF STAMPLER AUCTIONS AS AUCTIONEER,**
**(C) SCHEDULING AUCTION AND SALE APPROVAL HEARING,**
**(D) APPROVING THE FORM AND MANNER OF SALE NOTICE,**
**AND (E) GRANTING RELATED RELIEF, AND (II) AN ORDER**
**(A) APPROVING THE SALE OF THE DEBTOR'S CIRCUS ASSETS**
**FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND**
**OTHER INTERESTS AND (B) GRANTING RELATED RELIEF**

The above-captioned debtor and debtor in possession, The Big Apple Circus, Ltd.

(the "**Circus**" or the "**Debtor**"), submits this motion, pursuant to sections 105(a), 327(a), 328,

363, 503, 541, 1107(a), and 1108 of title 11 of the United States Code (the "**Bankruptcy**

**Code**"), rules 2002, 2014, 6004, 6005, 9006, and 9014 of the Federal Rules of Bankruptcy

Procedure (the "**Bankruptcy Rules**"), rules 2014-1, 6004-1, 6005-1, and 9013-1 of the Local

Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**"), the

"Amended Guidelines for the Conduct of Assets Sales" promulgated by General Order M-383 of

this Court (the "**Sale Guidelines**"), and the applicable provisions of the New York Not-for-Profit Corporation Law, for entry of two orders:  (a) an order, substantially in the form attached hereto as **Exhibit A** (the "**Bidding Procedures Order**"), (i) approving bidding and auction procedures, substantially in the form attached to the Bidding Procedures Order as Exhibit 1 (the "**Bidding Procedures**"),[1] in connection with the sale of certain Circus Assets (as defined below), (ii) authorizing the Circus to employ and retain Stampler Auctions ("**Stampler**") as auctioneer pursuant to the terms of the "Agreement" by and between the Circus and Stampler (the "**Agreement**"), attached hereto as **Exhibit B**, (iii) scheduling an auction and sale approval hearing, (iv) approving the form and manner of the sale notice, and (v) granting certain related relief, and (b) an order, substantially in the form attached hereto as **Exhibit C** (the "**Sale Order**"), (i) approving the sale of the Circus Assets free and clear of all liens, claims, encumbrances, and other interests and (ii) granting certain related relief.

In support of this motion, the Circus relies upon (a) the "Declaration of Will Maitland Weiss, Executive Director of The Big Apple Circus, Ltd., in Support of Chapter 11 Petition and First Day Pleadings" (the "**First Day Declaration**"), filed on November 20, 2016 [Docket No. 2], and (b) the declaration of Harry Stampler (the "**Stampler Declaration**"), filed contemporaneously herewith, each of which is incorporated herein by reference, and respectfully states as follows:

---

[1]   Capitalized terms used in this motion but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures.

**Jurisdiction and Venue**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**General Background**

2.      On November 20, 2016 (the "**Petition Date**"), the Circus commenced a voluntary case under chapter 11 of the Bankruptcy Code in this Court.  The Circus is authorized to continue to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      On December 12, 2016, the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Creditors' Committee**") pursuant to section 1102 of the Bankruptcy Code [Docket No. 43].  No request for the appointment of a trustee or examiner has been made in this chapter 11 case.

4.      The Circus is a Type B not-for-profit corporation organized under section 201 of the New York Not-for-Profit Corporation Law that is exempt from federal taxes under section 501(c)(3) of the Internal Revenue Service Code.[2]  Founded in 1977 by Paul Binder and Michael Christensen to establish a performing circus and school for the instruction and artistic development of circus arts, the Circus is a venerated, New York cultural institution renowned for its critically-acclaimed performances and dedicated community programs.  During its illustrious history, the Circus has performed 38 unique seasons of an annual ring show under the Big Top at venues across the country, featuring circus performers from around the globe and bringing the

---

[2]    A copy of the Circus' certificate of incorporation (as amended) is attached to the First Day Declaration as Exhibit B.

highest standards of artistic excellence to its multigenerational, multiethnic, and multilingual audience, both on tour and from the Circus' home base in New York City's Lincoln Center. Last year's ring show, entitled "The Grand Tour," set in the 1920s and designed to showcase "the golden age of transportation," received rave reviews, and was a Critic's Pick by both *The New York Times* and *The Boston Globe*.

5.      In nearly four decades, the Circus' performers have played to millions of parents, children, and fans. At its height, in 2008, the Circus performed over 350 shows in 8 cities and towns generating more than $18 million of earned revenue from performances for the organization. But unlike other well-known circuses run by corporate conglomerates, the Big Apple Circus, from its inception, has been a nonprofit organization focused on utilizing its funds to bring the joy and wonder of the classic circus arts to people of all ages and means.

6.      Over the years, the Circus' mission also expanded to include special performances for blind, deaf and autistic children. For example, "Circus of the Senses" is a special performance of the Circus' annual ring show adapted for children with hearing and vision impairments and offered free of charge through the Circus' extensive network of schools and nonprofit service providers. The performance utilizes American Sign Language interpreters, live audio play-by-play description through wireless headsets, and Braille and large-print descriptive programs. After the show, vision-impaired children are invited into the ring for special "touch" sessions, where they can squeeze a clown's nose, run their hands along circus equipment, and stroke the silky coats of performing animals.

7.      Similarly, the "Circus Embraces Autism" program provided performances adapted for the needs of children on the autism spectrum. A 75-minute show is performed without intermission, with modified lighting and sound. The Circus provided a calming center,

staffed by experienced volunteers with training from Autism Speaks and other organizations, which included coloring books, plush toys, and manipulatives to help calm children who might be over-stimulated.

8.      To improve access to shows, the Big Apple Circus established "Circus for All!," a program that has distributed free, discounted, and subsidized tickets to schools and not-for-profit organizations serving disadvantaged children, enabling them to experience the circus under the Big Top.  The program provided 30,000 or more tickets each year to low-income children, families, and seniors at all tour stops, making sure that they get to experience live ring shows.  The Circus worked with more than 2,000 nonprofit service organizations and schools located in each city where it performs to provide free or deeply discounted tickets.

9.      The Circus is equally dedicated to art and care, and has historically served thousands of people each year creating direct, shared connections through various community programs in hospitals, nursing homes, and schools in New York City and other cities across the United States (collectively, the "**Community Programs**").  Most notably, the Circus created "Clown Care," its signature community outreach program, which is the world's first professional hospital clowning program that brings laughter and joy to aid the healing process of patients in leading pediatric hospitals.  Clown Care sends clown doctors into hospitals across the country, and has served over three million seriously ill children, their families, and their professional caregivers.  "Vaudeville Visits" is a similar program designed to bring the uplifting power of the circus to elderly living in residential care facilities, utilizing music, juggling, magic, and improvisational theater.

10.     The Circus also offers "Circus After School", a program that has provided an opportunity for at-risk youth to develop life-enhancing skills such as teamwork, commitment,

and self-worth through a structured program of learning and performing the circus arts.  The Circus' teaching artists lead sessions on clowning, juggling, stilts, acrobatics, unicycling, and aerials, and help them put on a show for family and friends.  At the conclusion of the program, all students attend a live performance of the ring show, interacting with professional performers, and occasionally, performing in the ring for special events.

11.    As set forth in the First Day Declaration, the Circus has faced significant financial distress during recent years.  In response, the Circus aggressively cut operating costs wherever possible, reduced its performance schedule, and actively sought donor contributions, most recently through the "Save the Circus" campaign mounted this summer.  However, despite receiving donations from over 1,400 donors as well as continued financial support of the Circus' officers and directors, the Circus was ultimately unable to raise sufficient funds.  In July, the Circus made the difficult decision to cancel the 2016-17 performance season and release the Circus' artists and production crew.

12.    Based on the foregoing and other factors, the Circus, in consultation with its directors, officers and advisors, determined that the best course of action to maximize the Circus' value for creditors and honor its mission was to commence this chapter 11 case to effectuate an orderly wind down the Circus' affairs, sell certain assets, and satisfy creditor claims, all while continuing a downsized operation of its Community Programs, some of which may be transitioned to other capable not-for-profit organizations, and preserving the opportunity to restart the annual ring show with new financial support or through a sale of the Circus' enterprise to an interested buyer.

13.    Specifically, in light the cancellation of the Circus' performance season, the Circus will sell its circus equipment and other related personal and intellectual property

associated with the Circus' performance unit (the "**Circus Assets**"), which are no longer necessary to support the Circus' mission or operations, with hopes of preserving an operating enterprise that will once again perform shows in New York City in upcoming seasons.  Most of the physical Circus Assets are located at the Circus' owned real property located at 39 Edmunds Lane, Walden, New York 12586 (the "**Walden Property**") that the Circus has historically used as a storage and training facility.  On December 9, 2016, the Circus filed a motion with the Court [Docket No. 32] seeking entry of an order approving the sale of the Walden Property, which is scheduled to be heard on January 11, 2017.

14.    Additional information regarding the Circus' business, its capital structure, and the events leading to the filing of its chapter 11 case, and the facts and circumstances supporting the relief requested herein are set forth in the First Day Declaration.

## The Circus Assets

15.    The Circus seeks to sell the Circus Assets identified on Exhibit A to the Bidding Procedures (collectively, the "**Circus Assets**").  These assets include a wide variety of items, ranging from the Circus' big top tent, acrobat platforms, and vehicles used to put on the shows, to the toys and memorabilia made available to the Circus' loyal fans over the years.  The Circus Assets also include the Circus' various copyrights, trademarks and other intellectual property.  Accordingly, a purchaser of substantially all of the Circus Assets would have the brand and equipment to restart the circus as an operating enterprise as soon as fall 2017.

16.    The Circus Assets to be sold expressly exclude certain vehicles and auxiliary tent equipment identified on the list of Circus Assets as "Excluded Items" in which the New York City Department of Cultural (the "**DCLA**") asserts either a lien or ownership interest.  However, the DCLA has indicated that it may consider consenting to the transfer of these

excluded items to a successful purchaser of all or substantially all of the Circus Assets who intends to restart performances in New York City.

## **Proposed Bidding Procedures**

17.    Over recent months, the Circus has been contacted by several parties interested in purchasing all or substantially all of the Circus Assets, some of whom have already submitted sale proposals and conducted diligence.    Accordingly, to obtain the highest or otherwise best bid(s) for the Circus Assets and provide an opportunity to preserve the Circus' performance enterprise, the Circus intends to implement the Bidding Procedures, which establish a two-stage bidding process.

18.    During the first phase, the Circus and its auctioneer, Stampler, shall solicit bids for the purchase of substantially all of the Circus Assets, conduct an auction for such bids (the "**Phase I Auction**") if the Circus receives two or more Qualified Bids (as defined below), and then seek entry of the Sale Order, after notice and hearing (the "**Sale Approval Hearing**"), approving the sale of substantially all of the Circus Assets to the Successful Bidder(s) (as defined below).    During the second phase, any Circus Assets not purchased through the Phase I Auction shall be sold through a subsequent public auction (the "**Phase II Auction**" and together with the Phase I Auction, the "**Auctions**") in a manner and at a time and place to be determined by the Circus, in consultation with Stampler.

19.    The Bidding Procedures contemplate an expeditious and targeted marketing and sale process, which the Circus believes is critical to maximizing the value of the Circus Assets.    The aggregate value of the Circus Assets is directly correlated with the ability of prospective buyers of the enterprise to begin performances during fall 2017.    If the sale of the Circus Assets cannot be closed so that a Successful Bidder can (a) contract with Lincoln Center

and/or other performance venues for 2017-2018 and beyond, (b) hire the necessary artists and production crew, and (c) begin design and rehearsal in advance of a fall re-opening, prospective bidders may offer less consideration, or worse, refuse to participate.

20.    Accordingly, in order to efficiently and effectively identify the parties most like to be bona fide bidders for the Circus Assets in whole, the Circus, through Stampler, shall simultaneously mine its extensive industry contacts while building upon the considerable media attention already received from the "Save the Circus" campaign and commencement of this bankruptcy case by also marketing the sale on specific online trade publications, telemarketing, e-marketing, social networking, a dedicated webpage, and/or other advance auction promotion.    Stampler has already begun these efforts following execution of its Agreement, and, in fact, the Circus and its Board have been actively reaching out to their contacts since this summer.    Furthermore, the sale of the Walden Property is expected to close soon, which will require that the Circus Assets be removed either through a sale or by paying to have them transferred and stored at an alternative facility.    Clearly, time is of the essence.    Thus, the proposed sale process balances the need to provide adequate and appropriate notice to parties in interest and potential purchasers with the need to efficiently and effectively sell the Circus Assets while they have higher realizable enterprise value.

21.    The following summary highlights the material terms of the Bidding Procedures and all parties in interest are referred to the text of the Bidding Procedures for additional information regarding the proposed procedures.

a.    <u>Bid Deadline</u>.  Any entity wanting to participate in the Phase I Auction (a "**Potential Bidder**") must submit a Qualified Bid (as defined below) in writing **so as to be <u>actually</u> <u>received</u> on or before February 3 at 5:00 p.m. (Eastern Time)** (the "**Bid Deadline**"), which deadline may be extended by the Circus, in consultation with Stampler and the Creditors'

Committee.  No bids submitted after the Bid Deadline shall be considered by the Circus.

b.  <u>Bid Requirements</u>.  Only bids for the Circus Assets that constitute "Qualified Bids" will be considered by the Circus.  A "Qualified Bid" is an offer to purchase the Circus Assets that: (i) identifies the Circus Assets to be purchased and the consideration to be paid for such Circus Assets, (ii) identifies the Potential Bidder and the officer(s) or authorized agent(s) who will appear on behalf of such Potential Bidder, (iii) explains the proposed use of the Circus Assets, (iv) provides evidence, satisfactory to the Circus in its reasonable discretion, of the Potential Bidder's financial wherewithal and operational ability to consummate the proposed transaction, (v) provides that such offer is not subject to any due diligence or financing contingency or further board or similar approval, (vi) provides for a good faith deposit (a "**Good Faith Deposit**") to be submitted to the Circus on or before the Bid Deadline in an amount equal to then percent (10%) of the proposed purchase price, but in no event less than $50,000, (vii) provides that such offer is irrevocable until and unless the Circus accepts higher or otherwise better Qualified Bid and the Potential Bidder is not selected as the Back-Up Bidder (as defined below); (viii) includes a copy of a board resolution or similar document demonstrating the authority of the Potential Bidder to submit an offer to purchase the Circus Assets on the terms proposed by such Potential Bidder;  (ix) identifies any proposed revisions to the form of order approving the proposed transaction that was attached to the Sale Motion; and (x) includes a proposed asset purchase agreement or identifies any proposed revisions to the form of asset purchase agreement provided by the Debtor, if provided.  As soon as practicable after a Potential Bidder submits a bid, the Circus will determine whether such bid is a Qualified Bid and will notify such Potential Bidder of such determination.  The Circus reserves the right, in consultation with the Creditors' Committee, to consider bids for less than a substantial portion of the Circus Assets and bids that do not conform to one or more of the aforementioned requirements, and may deem such bids to be Qualified Bids notwithstanding such requirements.  The Circus, in consultation with the Creditors' Committee, may aggregate separate bids from unaffiliated Potential Bidders to create one Qualified Bid, <u>provided</u>, <u>however</u>, that all such Potential Bidders shall remain subject to the provisions of section 363(n) of the Bankruptcy Code regarding collusive bidding.

c.  <u>Due Diligence</u>.  Through and including the Bid Deadline, the Circus will afford Potential Bidders the opportunity to conduct a due diligence investigation regarding the Assets in the manner determined by the Circus, in its business judgment, to be reasonable and appropriate, subject to execution of an appropriate confidentiality agreement, as necessary.  The Circus shall not be obligated to furnish access to any information of any kind whatsoever regarding the Assets after the Bid Deadline.

d.    The Phase I Auction.  If two or more Qualified Bids are received on or before the Bid Deadline, the Circus shall conduct the Phase I Auction commencing on **February 7, 2017 at 11:00 a.m. (Eastern Time)**, at the offices of Debevoise & Plimpton LLP, 919 Third Avenue, New York, New York 10022, to determine the highest or otherwise best bid for the Assets (the "**Successful Bid**").  The Phase I Auction may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Phase I Auction.   The Circus, in consultation with the Creditors' Committee, reserves the right to cancel the Phase I Auction.

e.    Phase I Procedures.   Only the Circus, Stampler, any entity that has submitted a Qualified Bid (a "**Qualified Bidder**"), the Office of the United States Trustee for the Southern District of New York (the "**United States Trustee**"), the New York State Attorney General, the Creditors' Committee, and such entities' respective advisors are eligible to participate in the Phase I Auction.  All participants shall appear in person, by telephone, or through a duly authorized representative.  Prior to the Phase I Auction, the Circus, in consultation with the Creditors' Committee, shall select the Qualified Bid that, in its business judgment, reflects the highest or otherwise best bid for the Circus Assets as the starting bid (the "**Starting Auction Bid**") and advise all participants in the Phase I Auction of the terms of the Starting Auction Bid.   Qualified Bidders may then submit bids that are better and higher than the Starting Auction Bid in increments to be announced at the Phase I Auction (collectively, the "**Overbid Increments**").  The Circus reserves the right, in consultation with Stampler and the Creditors' Committee and in the Circus' business judgment, to announce reductions or increases to the Overbid Increments at any time during the Phase I Auction.  The Phase I Auction may include individual negotiations with the Qualified Bidders and/or open bidding in the presence of all other Qualified Bidders.  Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale.   The Circus, in consultation with the Creditors' Committee, shall have the right to conduct any number of auctions during the Phase I Auction to accommodate Qualified Bids for certain, but less than all, of the Circus Assets if the Circus determines, in its business judgment, that such process would be in the best interests of the Circus' estate.   The Circus, in consultation with the Creditors' Committee, shall determine whether any Qualified Bid is the Successful Bid pursuant to the "Determination of Successful Bid" section below.  As soon as practicable following the determination of the Successful Bid, the Circus shall file the Successful Bidder Notice with the Bankruptcy Court identifying the Qualified Bidder that submits the Successful Bid (the "**Successful Bidder**") and serve such notice by telecopy, electronic mail transmission, or overnight delivery, upon the following entities: (i) the United States Trustee, (ii) counsel to the Creditors' Committee, (iii) the New York State Attorney General, (iv) all other parties that have filed notices of appearance in the Case, and (v) all

Qualified Bidders that have submitted a Qualified Bid.  The Circus, in consultation with the Creditors' Committee, may adjourn, continue, or terminate the Phase I Auction, and reserve the right to adopt other and further rules and procedures for the Phase I Auction that, in its business judgment will better promote the goals of the Phase I Auction.  Absent irregularities in the conduct of the Phase I Auction, or reasonable and material confusion during the bidding, the Court will not consider bids after the Phase I Auction has been closed.

f.    <u>Determination of Successful Bid</u>.  The Circus shall review each Qualified Bid that has been submitted and determine, in the Circus' reasonable discretion, in consultation with the Creditors' Committee, whether any Qualified Bid is the Successful Bid.  In making such determination, the Circus shall consider any factor that it deems relevant, including, without limitation, the purchase price, the Circus' mission, and those factors affecting the speed and certainty of consummating the proposed sale of the Assets.  As soon as practicable following notification of the determination of the Successful Bid, but in no event later than the fifth (5th) business day after such notification, the Successful Bidder must execute a definitive agreement to purchase the Assets (an "**Asset Purchase Agreement**"), to the extent not previously executed, in all respects acceptable to the Circus.  The presentation of the Successful Bid to the Court for approval does not constitute the Circus' acceptance of such bid.  The Circus will be deemed to have accepted the Successful Bid only when such bid has been approved by the Court pursuant to the Sale Order and the sale of the Circus Assets proposed in such bid has been consummated.

g.    <u>Back-Up Bidder</u>.  If the Phase I Auction is conducted, the Qualified Bidder(s) with the next highest or otherwise best Qualified Bid for the Circus Assets at the Phase I Auction (the "**Back-Up Bid**") shall be required to serve as the back-up bidder(s) (the "**Back-Up Bidder**") for such Circus Assets and keep such Back-Up Bid(s) open and irrevocable until the first to occur of (i) thirty (30) days after the completion of the Phase I Auction, (ii) consummation of the transaction with the Successful Bidder, or (iii) the Back-Up Bidder's receipt of notice from the Circus of the release by the Circus of the Back-Up Bidder's obligations.  Following the Sale Approval Hearing, if the Successful Bidder fails to consummate the approved transaction because of a breach or failure to perform on the part of such Successful Bidder or otherwise, the Back-Up Bidder will be deemed to be the new Successful Bidder, and the Circus will be authorized, but not required, to consummate the sale with the Back-Up Bidder without further order of the Court.

h.    <u>Reservation of Rights</u>.  The Circus reserves the right to (a) determine, in its reasonable discretion, whether any Qualified Bid is a Successful Bid and (b) reject, at any time prior to entry of the Sale Order by the Bankruptcy Court, without liability, any bid that the Circus, in its

reasonable discretion determines to be (i) inadequate or insufficient, (ii) not in conformity with these Bidding Procedures, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, or applicable state law, or (iii) contrary to the best interests of the Circus and its estate.  At or before the Sale Approval Hearing, the Circus may impose such other terms and conditions on the sale of the Circus Assets as the Circus, in consultation with the Creditors' Committee, may determine to be in the best interests of the Circus and its estate.  The Circus reserves the right to modify the Bidding Procedures without the need for any further order of the Bankruptcy Court, including, without limitation, (a) extending the deadlines set forth in the Bidding Procedures, (b) adjourning the Phase I Auction and the Sale Approval Hearing, and (c) withdrawing or adding any assets from the sale process at any time prior to or during the Phase I Auction.

i.   <u>Disposition of Good Faith Deposits</u>.  All Good Faith Deposits shall be held in a segregated trust account by Stampler.  Good Faith Deposits shall be returned without interest to each bidder not selected by the Circus as the Successful Bidder or the Back-Up Bidder by no later than the tenth (10th) business day following the conclusion of the Phase I Auction.  The Good Faith Deposit of the Back-Up Bidder shall be held by Stampler until ten (10) business days after the closing of sale transaction with the Successful Bidder or termination of the Back-Up Bid as provided above.  If the Successful Bidder fails to consummate the purchase of the Circus Assets, or any part thereof, because of a breach, default or unexcused failure to perform on the part of such Successful Bidder, the Circus will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, and such Good Faith Deposit shall irrevocably become property of the Circus without affecting or reducing any of the Debtor's other rights or claims against such Successful Bidder.  If a Successful Bidder consummates the purchase of the Circus Assets, the Good Faith Deposit deposited by such Successful Bidder shall be applied as a credit toward the purchase price for the Circus Assets.

j.   <u>As Is, Where Is</u>.  The sale of the Assets shall be on an "as is, where is, and with all faults" basis and without representations or warranties of any kind, nature, or description by the Circus, its estate, or its agents or representatives.  Except as otherwise expressly provided in these Bidding Procedures or any applicable Asset Purchase Agreement, by submitting a bid, each Potential Bidder that submits a bid shall be deemed to acknowledge and represent that it (i) has had an opportunity to conduct any and all reasonable due diligence regarding the Assets prior to making its bid, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether

express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith.

k.  <u>Sale Approval Hearing</u>.  The sale of the Assets and applicable Asset Purchase Agreement shall be presented for authorization and approval by the Bankruptcy Court at the Sale Approval Hearing, which the Circus has requested be scheduled for **February 14, 2017 at 10:00 a.m. (Eastern Time)** at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 701, New York, New York 10004, before the Honorable Sean H. Lane, United States Bankruptcy Judge.  The Sale Approval Hearing may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Approval Hearing.

l.  <u>Phase II Auction</u>.  Following the consummation of the sale of the Circus Assets to the Successful Bidder or cancellation of the Phase I Auction, Stampler will conduct the Phase II Auction, which shall be an online public auction, for any remaining unsold Circus Assets.  No later than twenty-one (21) days after the last sale of the Circus Assets is closed, Stampler will provide the Circus with a report of such sale(s) (the "**Sale Report**"), which Sale Report shall be filed with the Court and served on the United States Trustee, the Creditors' Committee, and any other parties requesting notice pursuant to Bankruptcy Rule 2002.  The Sale Report will include: (a) the time, date, and place of each sale; (b) the gross dollar amount of each sale; (c) if the Assets were sold in lots, a description of the items in each lot, and any bulk bids received; (d) an itemized statement of Stampler's expenditures, disbursements, and commissions; (e) the names and addresses (to include city, state, country, and zip code) of all purchasers; (f) the approximate number of people attending the sale; (g) the items for which there were no bids and the disposition of those items; (h) a statement of the manner and extent of advertising of the sale; (i) a statement of the manner and extent of the availability of the Assets for inspection; and (j) any other information that the United States Trustee may request.

22.  The Circus believes that the Bidding Procedures substantially comply with the Sale Guidelines and Local Bankruptcy Rules 6004-1 and 6005-1, but requests that the requirements of the Sale Guidelines and Local Bankruptcy Rule 6004-1(c) ("Manner of Display and Conduct of Auction") be waived to the extent applicable and not satisfied.

**<u>Extraordinary Provisions under the Sale Guidelines</u>**

23.    The proposed Sale Order contains the following provisions that may be considered Extraordinary Provisions under the Sale Guidelines:

a.    <u>Use of Proceeds</u>:  If the sale of the Circus Assets is approved by this Court, the Circus proposes to use the sale proceeds (the "**Sale Proceeds**") to satisfy the Circus' obligations under the Agreement and apply the net proceeds of the sale in accordance with section 363 of the Bankruptcy Code, pursuant to a confirmed chapter 11 plan, or as otherwise authorized by the Court.  The Sale Proceeds will provide critical liquidity to fund the Circus' bankruptcy case through confirmation of a chapter 11 plan and will help fund distributions thereunder.  In any event, the Circus is not aware of any liens on the Circus Assets that secure valid claims.

b.    <u>Requested Findings as to Successor Liability</u>:  The proposed Sale Order includes findings of fact and conclusions of law limiting the Successful Bidder's successor liability.  As noted below, the Circus will provide actual notice of the Bidding Procedures, the Auctions, and the sale of the Circus Assets to each of the Notice Parties, which includes all known creditors of the Circus' estate.  The Circus submits that such notice is adequate for the Court to make findings in connection with the Sale Order that the Successful Bidder shall have no liability with respect to the Circus' operations or obligations based on any theory of successor or vicarious liability.  The Circus believes that such release from successor liability will attract more interest in the Circus Assets and higher purchase prices.

c.    <u>Requested Findings as to Fraudulent Conveyance</u>:  The proposed Sale Order includes findings of fact and conclusions of law with respect to the consideration provided by the Successful Bidder and the elements of a fraudulent transfer.  The Circus believes that the bidding process and the Auctions will support the Court's findings and conclusions that the consideration paid constitutes reasonably equivalent value and is fair and reasonable, and that the Circus and the Successful Bidder acted in good faith and without any intent to hinder, delay, or defraud any of the Circus' present or future creditors.  The Circus believes that such findings are necessary to maximize the value of the Circus Assets.

d.    <u>Relief from Bankruptcy Rule 6004(h)</u>:  The Circus seeks relief from the fourteen-day stay imposed by Bankruptcy Rule 6004(h) because, as set forth herein, the Circus believes that in order to maximize participation in the bidding process and garner the highest value for the Circus Assets, it is critical to close the proposed sale as soon as practicable.

## Board Approval to Sell the Circus Assets

24.     On October 16, 2016, the Circus' board of directors (the "**Board**") held a duly-called special meeting to consider whether to pursue a sale of the Circus Assets.  The Board comprises 25 voting members, 15 of whom attended the meeting and constituted a quorum under the Circus' by-laws.[3]

25.     At the meeting, the Board discussed whether a sale of the Circus Assets would be prudent, and determined to authorize the execution and filing of motions with the Court seeking approval of a sale of the Circus Assets.  Particularly, the Board noted that selling the Circus Assets would allow the Circus to maximize value to its creditors, facilitate the sale of the Walden Property where the Circus Assets are currently stored, and possibly permit the Circus' mission to be carried on in the hands of successful purchaser(s) intent on preserving an operating enterprise and restarting performances in New York City.

26.     In accordance with applicable law, the Board adopted and approved resolutions, which are attached to the Circus' bankruptcy petition, authorizing the execution and filing of motions with the Court seeking approval of a sale of the Circus Assets.  The resolutions were approved by 15 members of the Board, which satisfies the applicable approval requirements under the New York Not-for-Profit Corporations Law.[4]  Further, pursuant to the

---

[3]     Under the Circus' by-laws, a quorum at a meeting of the Board consists of (a) a majority of those directors who hold such of the offices of Chair, Vice Chair, President, Secretary, Treasurer, Artistic Director and Executive Director as are at that time filled plus (b) a majority of the Executive Committee present at a meeting of the Board of Directors, unless a greater or lesser number is required by law or by the certificate of incorporation.  A copy of the Circus' by-laws is attached to the First Day Declaration as Exhibit C.

[4]     The Circus does not have any members, and accordingly, member approval of the proposed transaction is not required.

Bidding Procedures, the Circus, through the Board, retains the power to select the ultimate Successful Bidder.

**Proposed Notice Procedures**

27.     The Circus also requests approval of the proposed form and manner of notice of the Bid Deadline, the Auctions and the Sale Approval Hearing.  Specifically, within three (3) business days after entry of the Bidding Procedures Order, the Circus will serve notice of the Bid Deadline, the Auctions and the Sale Approval Hearing, substantially in the form attached to the Bidding Procedures Order as Exhibit 2 (the "**Sale Notice**"), by first class mail (and by email where possible) on: (a) the Office of the United States Trustee for the Southern District of New York, (b) the U.S. Attorney for the Southern District of New York, (c) the New York State Attorney General, (d) all known creditors of the Circus, (e) any entity known or reasonably believed to have asserted a security interest in or lien against the Circus Assets, (f) the New York City Department of Cultural Affairs, (g) any entity that has expressed a bona fide interest in acquiring the Circus Assets, (h) all taxing authorities having jurisdiction over the Circus Assets, including the Internal Revenue Service, (i) the United States Environmental Protection Agency, (j) the New York State Department of Environmental Conservation, (k) the Office of the Mayor of New York City, (l) counsel to the Creditors' Committee, and (l) all parties who have requested notice in the Circus' chapter 11 case pursuant to Bankruptcy Rule 2002.

28.     Additionally, as soon as practicable following the determination of the Successful Bid, the Circus shall file a notice with the Court identifying the Successful Bidder and the place and time of the Phase II Auction, if any, and serve such notice by telecopy, email, or overnight delivery, upon the following entities: (a) the Office of the United States Trustee for the Southern District of New York, (b) the U.S. Attorney for the Southern District of New York,

(c) the New York State Attorney General, (d) the New York City Department of Cultural Affairs, (e) the United States Environmental Protection Agency, (f) the New York State Department of Environmental Conservation, (g) the Office of the Mayor of New York City, (h) counsel to the Creditors' Committee, (i) all Qualified Bidders, and (j) all parties who have requested notice in the Circus' chapter 11 case pursuant to Bankruptcy Rule 2002.

29.    Further, a copy of the Sale Order shall be served on the New York State Attorney General, who shall also receive written notice that the last sale of the Circus Assets has closed, if the sale of the Circus Assets has been abandoned or if it is still pending 90 days after entry of the Sale Order.

### Retention of Stampler

**A.    Stampler's Proposed Services**

30.    The Circus seeks to retain Stampler to coordinate and oversee the marketing, collection and evaluation of bids, and ultimate sale by auction of the Circus Assets in accordance with the two-stage process set forth in the Bidding Procedures. Specifically, during the first phase, Stampler will solicit bids for the sale of all or substantially all of the Circus Assets directly from interested parties identified by the Circus, while simultaneously conducting a targeted marketing campaign utilizing advertisements and notices with online trade publications, telemarketing, e-marketing, social networking, a dedicated webpage, and/or other advance auction promotion in order to identify additional bulk bidders. Stampler will also assemble due diligence packages, including assets lists, bidding terms, and other pertinent information, that will be distributed to prospective bidders upon request. Stampler will then collect all Good Faith Deposits received, which will be maintained in a segregated trust account pending consummation of the sale, and if two or more Qualified Bids for the Circus Assets are received, Stampler will conduct the Phase I Auction. Stampler will consult with the Circus

regarding selection of the Successful Bidder and oversee final settlement and disbursements. During the second phase of the bidding process, any Circus Assets not purchased through the Phase I Auction will be sold by Stampler through a subsequent public auction in a manner and at a time and place to be determined by the Circus, in consultation with Stampler.  No later than twenty-one (21) days after the last sale of the Circus Assets is closed, Stampler will provide the Debtor with the Sale Report, which shall be filed with the Court and served on the United States Trustee, the Creditors' Committee, and any other parties requesting notice pursuant to Bankruptcy Rule 2002.

**B.      Stampler's Qualifications**

31.      After soliciting bids from several reputable auctioneers, the Circus determined that Stampler provided the most compelling proposal with respect to economics, timing, and capabilities to sell Circus Assets through an expedited and targeted marketing and auction process.

32.      Stampler provides a turn-key, full service operation that handles all aspects of sale projects from initial consultation to contract to marketing and promotion, through final settlement and disbursements.  Since 1960, Stampler has conducted over 5,000 auctions throughout the United States within a broad range of industries and asset classes, including machinery and equipment, vehicles, general merchandise, real estate, and fine arts.  Stampler has overseen significant projects for Northeastern Airlines, Government Securities Corporation, Chuck E. Cheese Stores, Robert Hall Stores, WT Grants, Allied Steel, and Ames Department Stores, among others.  Further, Stampler has a proven record of success selling assets through bankruptcy.

33.      Stampler has procured a blanket bond in the amount of $500,000 covering all cases in which Stampler acts, which bond is in favor of the United States and was issued by a

surety company approved by the U.S. Department of Treasury. A copy of the bond is attached to the Stampler Declaration as Exhibit A.

### C.    Stampler's Compensation

34.    Pursuant to the Agreement, if retained, Stampler shall receive a commission equal to 10% of the gross sale proceeds from the Phase I Auction and the Phase II Auction, if held; however, Stampler would not seek reimbursement of any expenses incurred in connection with the marketing and execution of the Phase I Auction process. Should the Phase II Auction be necessary, Stampler will request reimbursement of expenses related thereto, which Stampler estimates will aggregate approximately $5,000 to $10,000. In the event that both the Phase I Auction and the Phase II Auction are canceled, Stampler would receive a $10,000 "no sale" fee and reimbursement of all actual and reasonable expenses incurred by Stampler in connection with marketing and preparing the Phase I Auction and the Phase II Auction. Lastly, Stampler shall receive 50% of any Good Faith Deposits forfeited by a bidder up to an amount equal to 10% of such bidder's proposed purchase price.

35.    After the Sale Report has been filed and served in accordance with the Bidding Procedures, all compensation owed to Stampler under the Agreement may be paid by the Circus without further notice or hearing, unless a party in interest files an objection to such payment within 14 days of the filing and service of the Sale Report.

36.    Having solicited, received and considered several proposals from prospective auctioneers, the Circus believes that Stampler's proposed compensation under the Agreement are reasonable, appropriate and consistent with established market practice. Accordingly, the Circus respectfully requests that the Court approve Stampler's proposed compensation under the Agreement and waive Local Bankruptcy Rules 6004-1 and 6005-1, to the extent necessary to implement such relief.

D.      **Stampler's Disinterestedness**

37.     To the best of the Circus' knowledge, and except as disclosed herein and in the Stampler Declaration: (a) Stampler is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Circus' estate, and (b) Stampler does not have any connection to the Circus, its creditors or its related parties.

38.     Stampler has informed the Circus that it will periodically review its files during the pendency of this chapter 11 case to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new relevant facts or relationships are discovered or arise, Stampler will use reasonable efforts to identify such further developments and will file promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

## Relief Requested

39.     By this motion, the Circus seeks entry of two orders.  <u>First</u>, the Circus requests entry of the Bidding Procedures Order, substantially in the form attached hereto as **Exhibit A**: (a) approving the Bidding Procedures; (b) authorizing the Circus to employ and retain Stampler as auctioneer pursuant to the terms of the Agreement; (c) scheduling (i) a deadline to submit bids for the Circus Assets of **February 3, 2017**, (ii) the date of the Phase I Auction for **February 7, 2017**, and (iii) the date of the Sale Approval Hearing for **February 14, 2017**; (d) approving the form and manner of notice of the deadline to submit bids for the Circus Assets, the date and time of the Phase I Auction and the date and time of the Sale Approval Hearing; and (e) granting certain related relief.

40.     <u>Second</u>, upon conclusion of the Sale Approval Hearing, the Circus requests entry of the Sale Order, substantially in the form attached hereto as **Exhibit C**,

(a) authorizing and approving the sale of the Circus Assets to the Successful Bidder and
(b) granting certain related relief.

**Basis for Relief Requested**

41.     For the reasons set forth herein and in the supporting declarations, the
Circus submits that approval of the sale of the Circus Assets in accordance with the Bidding
Procedures, as well as Stampler's retention as auctioneer, will serve the best interests of the
Circus and its estate, creditors, stakeholders, and other parties in interest, and is authorized under
the Bankruptcy Code, the Bankruptcy Rules and the New York Not-for-Profit Corporation Law.
Accordingly, the Circus respectfully requests entry of the Bidding Procedures Order and the Sale
Order.

**A.     The Sale of the Circus Assets Is Supported by the Circus' Sound Business Judgment
and Should Be Authorized**

42.     Ample justification exists for approval of the proposed sale of the Circus
Assets.  Section 363 of the Bankruptcy Code authorizes a debtor in possession to "use, sell, or
lease, other than in the ordinary course of business, property of the estate," after notice and a
hearing.  11 U.S.C. § 363(b)(1).  Courts interpreting section 363(b) have held that transactions
should be approved when they are supported by sound business reasons.  See Comm. of Equity
Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983); In re
Global Crossing Ltd., 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003).

43.     "Where the debtor articulates a reasonable basis for its business decisions
(as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain
objections to the debtor's conduct."  Comm. of Asbestos-Related Litigants and/or Creditors v.
Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).
When a valid business justification exists, the law vests the debtor's decision to use property out

22

of the ordinary course of business with a strong presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

44.     The Court also may grant the requested relief pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, which provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

45.     Here, the Circus has articulated clear business justifications for the sale of the Circus Assets pursuant to the Bidding Procedures. In light of the Circus' current financial distress and the recent cancellation of the Circus' performance season, the Circus has determined that the Circus Assets are no longer necessary to support its operations. Moreover, the Circus intends to sell the Walden Property where the Circus Assets are currently located and such sale will require removal of the Circus Assets. Also, the Circus will be able to use the funds from the sale of the Circus Assets to satisfy creditors' claims.

46.     The circumstances warrant an expeditious and efficient marketing and sale process to preserve the value of the Circus Assets in the hands of prospective buyers intending to preserve an operating enterprise and restart performances in the fall, and to facilitate the sale of the Walden Property. Thus, the proposed sale process provides the best mechanism to maximize value under the circumstances, while providing an opportunity for the Circus' mission to be continued in the hands of the Successful Bidder, and is a valid exercise of the Circus' business judgment.

47.     The Agreement contemplates exploring the Circus' extensive contacts within the circus industry for interested buyers of the Circus' enterprise, while conducting additional, targeted marketing of the Circus Assets, followed by a competitive bidding process and auction that will necessarily maximize value and ensure that the Circus obtain a fair and reasonable price.  Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship, 526 U.S. 434, 457 (1999) ("[T]he best way to determine value is exposure to a market."); see also VFB LLC v. Campbell Soup Co., 482 F.3d 624, 633 (3d Cir. 2007) ("Absent some reason to distrust it, the market price is 'a more reliable measure of the stock's value than the subjective estimates of one or two expert witnesses.'"); In re Boston Generating, LLC, 440 B.R. 302, 325 (Bankr. S.D.N.Y. 2010) (finding that "it is generally accepted . . . that absent a showing that there has been a clear market failure, behavior in the marketplace is the best indicator of . . . value"); In re Granite Broad. Corp., 369 B.R. 120, 143 (Bankr. S.D.N.Y. 2007) ("[T]here is no dispute that in many circumstances the best evidence of value is what a third party is willing to pay in an arm's length transaction.").  Thus, the Circus respectfully requests that the sale of the Circus Assets to the Successful Bidder be approved.

**B.      The Bidding Procedures Are Reasonable and Appropriate and Should Be Approved**

48.     Pursuant to Bankruptcy Rule 6004, sales of property outside the ordinary course of business may be by private sale or public auction.  Fed. R. Bankr. P. 6004(f)(1).  The Circus, in consultation with Stampler, has determined that the sale of the Circus Assets, pursuant to the Bidding Procedures, will ensure that the bidding process is fair and reasonable and will yield the maximum value for its estate and creditors.

49.     Courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate

and therefore are appropriate in the context of bankruptcy sales.  See In re Montgomery Ward
Holding Corp., Case No. 97-1409 (PJW) (Bankr. D. Del. Aug. 6, 1997) (DI 377); In re Fruehauf
Trailer Corp., Case No. 96-01563 (PJW) (Bankr. D. Del. Jan. 31, 1997) (D.I. 439); see also In re
Integrated Res., 147 B.R. at 659 (such procedures "encourage bidding and to maximize the value
of the debtor's assets"); In re Financial News Network, Inc., 126 B.R. 152, 156 (S.D.N.Y. 1991)
(as amended) ("court-imposed rules for the disposition of assets . . . [should] provide an adequate
basis for comparison of offers, and [should] provide for an [sic] fair and efficient resolution of
bankrupt estates").

50.    The Bidding Procedures provide a sales approach that extracts the highest
value for the Circus Assets with the least cost burden.  The Phase I Auction will accumulate and
evaluate proposals from potential bulk bidders without any cost to the Circus' estate and
hopefully achieve the Circus' ultimate goal – consummating a sale of substantially all of the
Circus Assets to a bidder committed to preserving an operating enterprise and restarting
performances in New York City.  The Phase II Auction preserves the Circus' ability to sell any
remaining Circus Assets following the Phase I Auction in order to facilitate the sale of the
Walden Property, which requires removal of the Circus Assets.

51.    The Bidding Procedures' expedited schedule for conducting the Auctions
and the Sale Approval Hearing is also warranted and reasonable.  As set forth above, the Circus
presently faces significant liquidity constraints, but has managed to obtain sufficient funding to
conduct the proposed sale process.  Moreover, the realizable value of the Circus Assets likely
declines as the fall performance season approaches.  Thus, an expedited 363 sale process that
provides adequate time for targeted marketing and soliciting of bids is the best means to
maximize value under the circumstances.

52.     Accordingly, the Circus requests that the Court approve the Bidding Procedures.

**C.     The Sale of the Circus Assets in Accordance with the Bidding Procedures Is Consistent with Section 511 of the New York Not-for-Profit Corporation Law**

53.     Under section 363(d) of the Bankruptcy Code, a not-for-profit corporation, like the Circus, may sell property "only in accordance with nonbankruptcy law applicable to the transfer of property by a debtor that is such a corporation . . . ." 11 U.S.C. § 363(d)(1). Further, section 541(f) of the Bankruptcy Code provides that "[n]otwithstanding any other provision of this title, property that is held by a debtor that is a corporation described in section 501(c)(3) of the Internal Revenue Code of 1986 and exempt from tax under section 501(a) of such Code may be transferred to an entity that is not such a corporation, but only under the same conditions as would apply if the debtor had not filed a case under this title." 11 U.S.C. § 541(f).

54.     The Circus is a Type B not-for-profit corporation incorporated under section 201 of the New York Not-for-Profit Corporation Law. Approval of sales of "all or substantially all" of the assets of New York not-for-profit corporations is governed by section 511 of the New York Not-for-Profit Corporation Law. N.Y. N-PCL § 511. Accordingly, pursuant to section 363(d) and section 541(f) of the Bankruptcy Code, a sale of the Assets must also comply with section 511 of the New York Not-for-Profit Corporation Law to the extent such sale constitutes a sale of "substantially all" of the Circus' assets.

55.     Because the Circus is insolvent, section 511 would ordinarily require the approval of the New York Supreme Court for a sale of substantially all of the Circus' assets. N.Y. N-PCL §§ 510(a)(3); 511-a(a); 511(d). However, section 1221(e) of the Bankruptcy Abuse Prevention and Consumer Protection Act requires that this Court – not the state court – must approve the transfer of property. Pub. L. No. 109-8, § 1221(e) (2005) ("Nothing in this section

shall be construed to require the court in which a case under chapter 11 of title 11, United States Code, is pending to remand or refer any proceeding, issue, or controversy to any other court or to require the approval of any other court for the transfer of property."); see also Bench Decision Regarding Debtor's Sale Motion, at 3–5, In re HHH Choices Health Plan, LLC, Nos. 15-11158-MEW, 15-13265-MEW, 16-10028-MEW (ECF No. 359) (Bankr. S.D.N.Y. Aug. 23, 2016) ("[M]y interpretation of section 363 is that any determination that would be made by a state court, under section 511 of the Not-For-Profit Corporation Law, in the absence of a bankruptcy case, is now a determination to be made by [the bankruptcy court], and not the state court."); 3 *Collier on Bankruptcy* ¶ 363.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2016) ("The applicability of such nonbankruptcy law restrictions does not impair the jurisdiction of the bankruptcy courts to apply them in particular cases, and the bankruptcy court is not required to defer to another forum.").

56.    The Circus submits that the sale of the Circus Assets is consistent with the standards set forth in section 511 of the New York Not-for-Profit Corporation Law and should be approved by this Court.  Under section 511(d) of the New York Not-for-Profit Corporation Law, a proposed sale of substantially all of a corporation's assets should be approved if: (1) "the consideration and terms of the transaction are fair and reasonable to the corporation," and (2) "the purposes of the corporation or the interests of its members will be promoted" by the transaction.  See N.Y. N-PCL § 511(d).  Here, the proposed sales of the Circus Assets may not constitute a sale of "substantially all" of the Circus' assets; however, to the extent that such sales do rise to this level, both criteria under section 511(d) are met.

57.    First, the consideration to be paid for the Circus Assets will be necessarily fair and reasonable to the Circus because it will be the product of thoughtful and targeted

marketing and a competitive bidding process designed to maximize value. "Whether a transaction is fair and equitable to the seller usually involves consideration of whether the proposed sale is at a price that is consistent with fair market value." Bench Decision Regarding Debtor's Sale Motion, at 5–6, In re HHH Choices Health Plan, LLC, Nos. 15-11158-MEW, 15-13265-MEW, 16-10028-MEW (ECF No. 359) (Bankr. S.D.N.Y. Aug. 23, 2016) (citing Wolkoff v. Church of St. Rita, 505 N.Y.S.2d 327 (Sup. Ct. 1986); Church of God v. Fourth Church of Christ, Scientist, 431 N.Y.S.2d 834 (App. Div. 1981)). The Bidding Procedures ensure that the Circus will receive fair market value for the Circus Assets because Stampler will market the Circus Assets to the most relevant pool of prospective buyers – the Circus' extensive industry contacts – and then advertise and promote the sale of the Circus Assets in several forms of media, followed by a competitive auction process. Indeed, prior to the filing of this motion, the Circus has already received several proposals from parties interested in buying the Circus' operating enterprise, some of whom have already submitted proposals and conducted considerable due diligence. Further, any sales of the Circus Assets in accordance with the Bidding Procedures will be negotiated at arm's length and in good faith.

58.    Second, the sale of the Circus Assets provides the last real opportunity for the unique experience of the Circus to return to the communities it once served. Moreover, the sale will facilitate the Circus' anticipated sale of the Walden Property by removing the Circus Assets from those premises, and generate cash proceeds that can be used to satisfy certain outstanding debts in accordance with these proceedings. New York courts have held that use of sale proceeds to pay off a corporation's debts constitutes a permissible purpose that promotes the interest of a non-profit pursuant to section 511 of the New York Not-for-Profit Corporation Law. See Bench Decision Regarding Debtor's Sale Motion, at 9, In re HHH Choices Health Plan,

LLC, Nos. 15-11158-MEW, 15-13265-MEW, 16-10028-MEW (ECF No. 359) (Bankr. S.D.N.Y. Aug. 23, 2016) ("As the New York courts have held, it furthers the purposes and interests of any corporation, including a not-for-profit corporation, to pay its debts."); Friends World Coll. v. Nicklin, 671 N.Y.S.2d 489, 490 (App. Div. 1998) (affirming order approving sale of property pursuant to Not–For–Profit Corporation Law § 511 where "the transaction promoted the interest of the College by enabling it to pay its debts"); In re Sculpture Ctr., Inc., No. 113773/01, 2001 WL 1568739, at *4 (N.Y. Sup. Ct. Aug. 24, 2001) (holding that a transaction furthered the purposes of a not-for-profit corporation by enabling debt payments, even though some sculpture classes would be terminated).

59.    Therefore, the sale of the Circus Assets in accordance with the Bidding Procedures should be authorized and approved pursuant to section 511 of the New York Not-for-Profit Corporation Law.[5]

## D.    The Circus Assets Should Be Sold Free and Clear of All Liens, Claims, Encumbrances, and Other Interests

60.    In the interest of attracting the best bids for the Circus Assets, the Circus submits that the sale of the Circus Assets should be free and clear of any and all liens, claims, encumbrances, and other interests in accordance with section 363(f) of the Bankruptcy Code, with any such liens, claims and encumbrances attaching to the proceeds of such sale.

61.    Under section 363(f) of the Bankruptcy Code, a debtor may sell property "free and clear of any interest in such property of an entity other than the estate." 11 U.S.C. § 363(f). In particular, that section authorizes a debtor to sell property free and clear if:

---

[5]    Sections 509 through 511 of the New York Not-for-Profit Corporation Law also identify certain corporate governance requirements for approving a sale of substantially all of the assets of a not-for-profit corporation and informational requirements for any related sale petition. The Debtor submits that this motion and the Debtor's other filings made with this Court satisfy these requirements.

     (1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;

     (2)     such entity consents;

     (3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

     (4)     such interest is in bona fide dispute; or

     (5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); see also In re Gen. Bearing Corp., 136 B.R. 361, 366 (Bankr. S.D.N.Y. 1992) (listing requirements).    Because section 363(f) of the Bankruptcy Code is stated in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the assets "free and clear" of interests.  See In re Kellstrom Indus., Inc., 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions is met, the debtor has the authority to conduct the sale free and clear of all liens.") (citing Citicorp Homeowners Servs., Inc., v. Elliot (In re Elliot), 94 B.R. 343, 345 (E.D. Pa. 1988)); In re Dundee Equity Corp., 1992 WL 53743, at *4 (Bankr. S.D.N.Y. March 6, 1992) ("Section 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met."); see also Michigan Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.), 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) ("[T]he sale free and clear of the interest concerned can occur if any one of the conditions of section 363(f) have been met.").

     62.     The sale of the Circus Assets free and clear of all liens, claims, encumbrances, and other interests is appropriate under section 363(f) of the Bankruptcy Code. The Circus proposes to sell the Circus Assets in a commercially reasonable manner and believes that the value of the proceeds from such sale will fairly reflect the value of the Circus Assets.  To

the extent that any interest holder does not object to the proposed sale of the Circus Assets in accordance with the Bidding Procedures, that entity should be deemed to have consented to the relief sought herein, thereby satisfying section 363(f)(2) of the Bankruptcy Code.  Any entity holding interests in the Circus Assets will receive notice of this motion and the hearing with respect thereto.  Accordingly, all parties in interest will be given sufficient opportunity to object to the relief requested herein.  Failure to object should be deemed consent.  See Futuresource LLC v. Reuters Ltd., 312 F.3d 281, 285–86 (7th Cir. 2002) ("It is true that the Bankruptcy Code limits the conditions under which an interest can be extinguished by a bankruptcy sale, but one of those conditions is the consent of the interest holder, and lack of objection (provided of course there is notice) counts as consent.  It could not be otherwise; transaction costs would be prohibitive if everyone who might have an interest in the bankrupt's assets had to execute a formal consent before they could be sold." (internal citations omitted)).

63.    Further, any party with an interest in the Circus Assets shall have a corresponding security interest in the proceeds received by the Circus therefrom (with all of the Circus' claims, defenses and objections with respect to the amount, validity, or priority of each such interest and the underlying liabilities expressly preserved).  See MacArthur Co. v. Johns-Manville Corp., 837 F.2d 89, 94 (2d Cir. 1988) ("It has long been recognized that when a debtor's assets are disposed of free and clear of third-party interests, the third party is adequately protected if his interest is assertable against the proceeds of the disposition.").  Therefore, any lien holders are adequately protected and could be compelled to accept a monetary satisfaction of their interest.  As such, the requirements of section 363(f) of the Bankruptcy Code would be satisfied for a sale of the Circus Assets free and clear of all liens, claims, encumbrances, and other interests.

E.      **Purchasers of the Circus Assets Are Entitled to the Protections of Section 363(m) of the Bankruptcy Code**

64.      Section 363(m) provides that "[t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith. . . ."  11 U.S.C. § 363(m).

65.      The Bankruptcy Code does not define "good faith," but courts generally find that where there is no evidence of fraud, impropriety or collusion, a purchaser that purchases in "good faith," "for value," and "without notice of adverse claims," and that conducts itself with integrity in the course of sales proceedings is a good faith purchaser.  Bay Harbour Mgmt., L.C. v. Lehman Bros. Holdings Inc. (In re Lehman Bros. Holdings, Inc.), 415 B.R. 77, 83-84 (Bankr. S.D.N.Y. 2009); see also Mark Bell Furniture Warehouse, Inc. v. D.M. Reid Assocs. (In re Mark Bell Furniture Warehouse, Inc.), 992 F.2d 7, 8 (1st Cir. 1993); Hardage v. Herring Nat'l Bank, 837 F.2d 1319, 1323 (5th Cir. 1988); In re Abbotts Dairies, Inc., 788 F.2d 143, 147 (3d Cir. 1986).

66.      The Circus submits, and will present evidence at the Sale Approval Hearing, if necessary, that the selection of the Successful Bidder shall be the product of arm's length, good faith negotiations in an anticipated competitive sale process.  Accordingly, the Circus requests that the Court make a finding at the Sale Approval Hearing and in the Sale Order that the Successful Bidder has purchased the Circus Assets in good faith and is entitled to the full protections of section 363(m) of the Bankruptcy Code.

**F.**    **The Court Should Authorize the Circus to Retain and Employ Stampler as Auctioneer Pursuant to the Terms of the Agreement <u>Nunc</u> <u>Pro</u> <u>Tunc</u> to the Date of the Agreement**

67.    The Circus seeks to retain Stampler as auctioneer pursuant to section

327(a) of the Bankruptcy Code, which provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

68.    Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

69.    The Circus submits that, for all the reasons stated above and in the

Stampler Declaration, this motion complies with Bankruptcy Rule 2014(a) and the retention of

Stampler as auctioneer to the Circus is warranted.    The Circus solicited, reviewed, and

considered several proposals from prospective auctioneers, and determined that Stampler was

well-qualified to execute an effective marketing and auction process for the Circus Assets.

Further, Stampler's proposed compensation under the Agreement is reasonable, appropriate and

consistent with established market practice.    Also, Stampler's blanket bond in the amount of

$500,000 should be sufficient to insure the faithful and prompt performance of Stampler's duties

and accounting for all monies and property that may come into the auctioneer's possession.

Lastly, as stated in the Stampler Declaration, Stampler is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Circus' estate and has no connection to the Circus, its creditors or its related parties, except as may be disclosed in the Stampler Declaration.

70.    Pursuant to the Circus' request, Stampler began marketing and soliciting bids for the Circus Assets immediately upon executing the Agreement.  Accordingly, the Circus requests that Stampler's retention be effective _nunc pro tunc_ to such execution date to acknowledge the valuable services that Stampler has provided and continues to provide.

## G.    The Notice Procedures are Reasonable and Appropriate

71.    Pursuant to Bankruptcy Rule 2002(a) and (c), the Circus is required to notify creditors of the proposed sale of the Circus Assets, including a disclosure of the time and place of the Auctions, the terms and conditions of the proposed sale, and the deadline for filing objections.  The Circus submits that the notice procedures described above fully comply with Bankruptcy Rule 2002 and are reasonably calculated to provide timely and adequate notice of the proposed sale of the Circus Assets, the Bidding Procedures, the Auctions, and the Sale Approval Hearing to the Circus' creditors and all other parities in interest that are entitled to notice, as well all those parties that have expressed a bona fide interest in acquiring the Circus Assets.  Based upon the foregoing, the Circus respectfully requests that the Court approve the notice procedure proposed above, including the form and manner of service of the Sale Notice.

## G.    The Court Should Waive the Bankruptcy Rule 6004(h) Stay

72.    The Circus requests that the Court waive the fourteen-day stay provision of Bankruptcy Rule 6004(h).  The purpose of this rule is to provide sufficient time for an objecting party to appeal before a sale order can be implemented.  _See_ Advisory Committee

Notes to Bankruptcy Rule 6004. Although Bankruptcy Rule 6004(h) is silent as to when a court should "order otherwise" and eliminate or reduce the fourteen-day stay period, *Collier on Bankruptcy* suggests that the period should be eliminated to allow a sale or other transaction to close immediately "when there has been no objection to the procedure." 10 *Collier on Bankruptcy*, ¶ 6004.11 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2016). Furthermore, Collier suggests that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, that the stay should be reduced to the amount of time actually necessary to file such appeal and to seek a stay. Id. As set forth above, an expeditious marketing and sale of the Circus Assets is critical to maximize participation in the bidding process and, ultimately, the value of the Circus Assets. Moreover, the sale of the Walden Property, which the Circus anticipates will be imminently approved, will require removal of the Circus Assets. Time is clearly of the essence. Accordingly, the Circus requests that the Court waive the Bankruptcy Rule 6004(h) stay or, in the alternative, if an objection to the proposed sale of the Circus Assets is filed, reduce the stay period to the minimum amount of time needed by the objecting party to file its appeal.

## **Motion Practice**

73.    This motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to this motion. Accordingly, the Circus submits that this motion satisfies Local Bankruptcy Rule 9013-1(a).

## **Notice**

74.    Pursuant to Bankruptcy Rules 2002, 2014, and 6004, Local Bankruptcy Rule 9013-1(b), the Sale Guidelines, and section 511 of the New York Not-for-Profit Corporation Law, notice of this Motion shall be given to (a) the Office of the United States

Trustee for the Southern District of New York; (b) the U.S. Attorney for the Southern District of

New York; (c) the New York State Attorney General; (d) counsel for the Creditors' Committee;

(e) any entity known or reasonably believed to have asserted a security interest in or lien against

the Circus Assets; (f) the New York City Department of Cultural Affairs; (g) any entity that has

expressed a bona fide interest in acquiring the Circus Assets; (h) the Internal Revenue Service;

(i) the United States Environmental Protection Agency; (j) the New York State Department of

Environmental Conservation; (k) the Office of the Mayor of New York City; and (l) all parties

who have requested notice in the Circus' chapter 11 case pursuant to Bankruptcy Rule 2002

(collectively, the "**Notice Parties**").  Due to the nature of the relief requested herein, the Circus

respectfully submits that no further notice of this motion is required.

### No Prior Request

75.     No prior request for the relief sought herein has been made by the Circus

to this or any other court.

WHEREFORE, the Circus respectfully requests that the Court (a) enter the Bidding Procedures Order, substantially in the form attached hereto as **Exhibit A**, and the Sale Order, substantially in the form attached hereto as **Exhibit C**, granting the relief requested herein, and (b) grant such other and further relief as is just and proper.

Dated:   December 23, 2016
    New York, New York

*/s/ Christopher Updike*

M. Natasha Labovitz
Christopher Updike
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Telephone:      (212) 909-6000
Facsimile:      (212) 909-6836
Email:          nlabovitz@debevoise.com
                cupdike@debevoise.com

Counsel to the Debtor
and Debtor in Possession

## Exhibit A

**Proposed Bidding Procedures Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re:

**THE BIG APPLE CIRCUS, LTD.**

                                    **Debtor.**

**Chapter 11**

**Case No. 16-13297 (SHL)**

---

### ORDER (I) APPROVING BIDDING PROCEDURES FOR THE SALE OF THE DEBTOR'S CIRCUS ASSETS, (II) AUTHORIZING THE EMPLOYMENT AND RETENTION OF STAMPLER AUCTIONS AS AUCTIONEER, (III) SCHEDULING AUCTION AND SALE APPROVAL HEARING, (IV) APPROVING THE FORM AND MANNER OF SALE, AND (V) GRANTING RELATED RELIEF

Upon the motion, dated December 23, 2016 (the "**Motion**"),[1] of The Big Apple Circus, Ltd. (the "**Circus**" or the "**Debtor**"), the debtor and debtor in possession in the above-captioned case, pursuant to sections 105(a), 327(a), 328, 363, 503, 541, 1107(a), and 1108 of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 2002, 2014, 6004, 6005, 9006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), rules 2014-1, 6004-1, 6005-1, and 9013-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**"), the "Amended Guidelines for the Conduct of Assets Sales" promulgated by General Order M-383 of this Court (the "**Sale Guidelines**"), and the applicable provisions of the New York Not-for-Profit Corporation Law, seeking entry of an order an order (a) approving bidding and auction procedures in connection with the sale of the Debtor's Circus Assets, (b) authorizing the Circus to employ and retain Stampler Auctions ("**Stampler**") as auctioneer pursuant to the terms of the "Agreement" by and between the Circus and Stampler, attached to the Motion as Exhibit B, (c) scheduling an auction and sale approval

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

hearing, (d) approving the form and manner of the sale notice, and (e) granting certain related relief, all as further set forth in the Motion; and upon consideration of the First Day Declaration and the Stampler Declaration; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that such relief is (a) in the best interests of the Debtor, its estate, its creditors and all parties in interest and (b) consistent with the applicable requirements of the New York Not-for-Profit Corporation Law; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor:

### IT IS HEREBY FOUND AND DETERMINED THAT:

A.    This Court has jurisdiction to hear and determine the Motion and grant relief requested herein pursuant to 28 U.S.C. §§ 157 and 1334.  Consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    The statutory and legal predicates for the relief requested in the Motion are section 105(a), 327(a), 328, 363, 503, and 541, Bankruptcy Rules 2002, 2014, 6004, 6005, 9006, and 9014, and Local Bankruptcy Rules 2014-1, 6004-1, and 6005-1.

C.    Good and sufficient notice of the relief granted herein has been given under the circumstances, and no other or further notice is required.  A reasonable opportunity to object or be heard regarding the relief granted herein has been afforded to parties entitled to notice pursuant to the Bankruptcy Rules and the Local Bankruptcy Rules and all other interested parties.

D.      The Debtor has demonstrated compelling and sound business justifications for this Court to grant the relief requested in the Motion, including, without limitation, (i) approval of the Bidding Procedures, (ii) authorization for the Debtor to retain Stampler as auctioneer, and (iii) approval of the form and manner of notice of the sale of the Circus Assets.

E.      The Bidding Procedures, attached hereto as **Exhibit 1** and incorporated herein by reference as if fully set forth herein, are fair, reasonable and appropriate and represent the best method for maximizing the value of the Debtor's estate and honoring the Debtor's mission.

F.      The Sale Notice, substantially in the form attached hereto as **Exhibit 2** and incorporated herein by reference as if fully set forth herein, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the sale of the Circus Assets, the Bid Deadline, the Auctions and the Sale Approval Hearing.

G.      Based upon the representations made in the Motion and the Stampler Declaration, Stampler does not hold or represent an interest adverse to the Debtor's estate, and is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is granted to the extent set forth herein.

2.      All objections and responses to entry of this Order that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections or responses, are overruled on the merits and denied with prejudice.

## Bidding Procedures

3.        The Bidding Procedures, attached hereto as **Exhibit 1**, are approved.  The

Bidding Procedures shall govern the submission, receipt, and analysis of bids for the Circus

Assets.

4.        As further described in the Bidding Procedures, any entity wanting to

participate in the Phase I Auction must submit a Qualified Bid in writing to (a) Stampler

Auctions, 6740 Taft Street, Hollywood, Florida 33024, Attention: Harry Stampler

(stamplerauctions@aol.com and info@stamplerauctions.com); (b) The Big Apple Circus, Ltd.,

One MetroTech Center North, Floor 3, Brooklyn, New York 11201, Attention: Will Maitland

Weiss (wmweiss@bigapplecircus.org); (c) counsel for the Debtor, Debevoise & Plimpton LLP,

919 Third Avenue, New York, New York 10022, Attention: Christopher Updike

(bigapplecircus@debevoise.com); (d) counsel for the statutory committee of unsecured creditors

(the "**Creditors' Committee**"), Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 34th

Floor, New York, New York 10017-2024, Attention: Robert J. Feinstein

(rfeinstein@pszjlaw.com); and (e) the Office of the Attorney General, Division of Social Justice,

Charities Bureau, 120 Broadway, New York, New York, 10271, Attention: James G. Sheehan

(james.sheehan@AG.ny.gov); **so as to be actually received on or before February 3, 2017 at

5:00 p.m. (Eastern Time)** (the "**Bid Deadline**"), which deadline may be extended by the

Debtor, in consultation with Stampler.

5.        If two or more Qualified Bids are received on or before the Bid Deadline,

the Debtor shall conduct the Phase I Auction commencing on **February 7 at 11:00 a.m.

(Eastern Time)**, at the offices of Debevoise & Plimpton LLP, 919 Third Avenue, New York,

New York 10022, to determine the Successful Bid.  The Phase I Auction may be adjourned or

rescheduled without further notice by an announcement of the adjourned date at the Phase I

Auction.  The Debtor reserves the right to cancel the Phase I Auction.  Absent irregularities in the conduct of the Phase I Auction, or reasonable and material confusion during the bidding, the Court will not consider bids after the Phase I Auction has been closed.

6.      The Sale Approval Hearing shall be held on **February 14, 2017 at 10:00 a.m. (Eastern Time)** at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 701, New York, New York 10004, before the Honorable Sean H. Lane, United States Bankruptcy Judge.  The Sale Approval Hearing may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Approval Hearing.

## **Notice Procedures**

7.      The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is approved.

8.      All parties in interest shall receive or be deemed to have received good and sufficient notice of the Motion, the Bidding Procedures, the Auctions, the sale of the Circus Assets, and the Sale Approval Hearing, and no other or further notice of the foregoing shall be required if:

(a)      Within three (3) business days after entry of this Order, the Debtor serves the Sale Notice by first class mail (and by electronic mail transmission where possible) on: (i) the Office of the United States Trustee for the Southern District of New York, (ii) the U.S. Attorney for the Southern District of New York, (iii) the New York State Attorney General, (iv) all known creditors of the Debtor, (v) any entity known or reasonably believed to have asserted a security interest in or lien against the Circus Assets, (vi) the New York City Department of Cultural Affairs, (vii) any entity that has expressed a bona fide interest in acquiring the Circus Assets, (viii) all taxing authorities having jurisdiction over the Circus Assets, including the Internal Revenue Service, (ix) the United States Environmental Protection Agency, (x) the New York State Department of Environmental Conservation, (xi) the Office of the Mayor of New York City, (xii) counsel to the Creditors' Committee, and (xiii) all parties who

have requested notice in the Debtor's chapter 11 case pursuant to Bankruptcy Rule 2002; and

(b)    As soon as practicable following the determination of the Successful Bid, the Debtor files a notice with the Court identifying the Successful Bidder and the place and time of the Phase II Auction, if any, and serve such notice by telecopy, electronic mail transmission, or overnight delivery, upon the following entities: (i) the Office of the United States Trustee for the Southern District of New York, (ii) the U.S. Attorney for the Southern District of New York, (iii) the New York State Attorney General, (iv) the New York City Department of Cultural Affairs, (v) the United States Environmental Protection Agency, (vi) the New York State Department of Environmental Conservation, (vii) the Office of the Mayor of New York City, (viii) counsel to the Creditors' Committee, (ix) all Qualified Bidders, and (x) all parties who have requested notice in the Debtor's chapter 11 case pursuant to Bankruptcy Rule 2002.

9.    The Debtor may publish a summary of the Sale Notice on an appropriate industry website.  Further, a copy of the Sale Order shall be served on the New York State Attorney General, who shall also receive written notice that the last sale of the Circus Assets has closed, if the sale of the Circus Assets has been abandoned or if it is still pending 90 days after entry of the Sale Order.

**Sale Objection Procedures**

10.    All objections to approval of the sale of the Circus Assets to the Successful Bidder shall (a) be in writing, (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules, (c) set forth the name of the objector, (d) state with particularity the legal and factual bases for such objection, and (e) be filed with the Bankruptcy Court, together with proof of service thereof, and served on the following parties **so as to be _actually_ _received_ no later than 4:00 p.m. (Eastern Time) on February 9, 2017** (the "**Objection Deadline**"): (a) the Debtor, The Big Apple Circus, Ltd., One MetroTech Center North, Brooklyn, NY 11201, Attn: Will Maitland Weiss; (b) counsel for the Debtor, Debevoise & Plimpton LLP, 919 Third Avenue, New York, NY 10022, Attn: M. Natasha Labovitz (nlabovitz@debevoise.com) and

Christopher Updike (cupdike@debevoise.com); (c) counsel for Creditors' Committee, Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, New York 10017-2024, Attention: Robert J. Feinstein (rfeinstein@pszjlaw.com); (d) the Office of the United States Trustee for the Southern District of New York, Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014, Attn: Richard Morrissey (richard.morrissey@usdoj.gov); (e) the Office of the United States Attorney for the Southern District of New York, 86 Chambers Street, 3rd Floor, New York, NY 10007; (f) the New York State Attorney General, Department of Social Justice, Charities Bureau, 120 Broadway, Floor 3, New York, NY 10271, Attn: James Sheehan (james.sheehan@ag.ny.gov); (g) the New York City Department of Cultural Affairs, 31 Chambers Street, Floor 2, New York, New York 10017, Attn: Jimmy Van Bramer; and (h) the Internal Revenue Service, 290 Broadway, New York, NY 10007, Attn: District Director.

11.    Failure of any entity to file an objection on or before the Objection Deadline shall be deemed to constitute consent to the sale of the Circus Assets to the Successful Bidder and other relief requested in the Sale Motion, and be a bar to the assertion, at the Sale Approval Hearing or thereafter, of any objection to the Sale Motion, the Auctions, the sale of the Circus Assets, or the Debtor's consummation and performance of the terms of the asset purchase agreement entered into with the Successful Bidder, if authorized by the Court.

### **Retention of Stampler**

12.    The Debtor is authorized to employ and retain Stampler as auctioneer, nunc pro tunc to December 23, 2016, in accordance with the terms and conditions set forth in the Agreement, which is approved in all respects.  Except as otherwise set forth herein, the requirements of Local Bankruptcy Rules 6004-1(c) and 6005-1(b) are waived to the extent applicable.

13.     Notwithstanding anything to the contrary in the Local Bankruptcy Rules, after the Sale Report has been filed and served in accordance with the Bidding Procedures, all compensation owed to Stampler under the Agreement may be paid by the Circus without further notice or hearing, unless a party in interest files an objection to such payment within 14 days of the filing and service of the Sale Report.

### Related Relief

14.     The findings of fact and conclusions of law set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any finding of fact constitutes a conclusion of law, it is adopted as such, and to the extent any conclusion of law constitutes a finding of fact, it is adopted as such.

15.     All persons or entities (whether or not Qualified Bidders) that participate in the bidding process shall be deemed to have knowingly and voluntarily (a) submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Bidding Procedures, the Auctions, or the sale of the Circus Assets, (b) consented to the entry of a final order by this Court in connection with the Motion or this Order (including any disputes relating to the Bidding Procedures, the Auctions, or the sale of the Circus Assets) to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution, and (c) waived any right to a jury trial in connection with any disputes relating to any of the foregoing matters.

16.     The Debtor is authorized to take any and all actions necessary or appropriate to effectuate the relief granted herein, including any and all actions necessary to implement the Bidding Procedures.

17.    Notwithstanding Bankruptcy Rule 6004(h) or any other applicable Bankruptcy Rule, the terms and conditions of this Order are immediately effective and enforceable upon its entry

18.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a)

19.    To the extent the provisions of this Order are inconsistent with the provisions of any exhibit referenced herein or with the Motion, the provisions of this Order shall control and govern.

20.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order,

Dated: _____, 2017

_____
UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**Bidding Procedures**

**BIDDING PROCEDURES**

Set forth below are the bidding and auction procedures (the "**Bidding Procedures**") to be employed in connection with the sale of the Circus Assets (as defined below) of The Big Apple Circus, Ltd., the debtor and debtor in possession (the "**Debtor**") in its voluntary case (the "**Bankruptcy Case**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") pending in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") (Case No. 16-13297 (SHL)).  Pursuant to the Bidding Procedures, the Debtor and its auctioneer, Stampler Auctions ("**Stampler**"), shall solicit bids for the purchase of substantially all of the Circus Assets, conduct an auction for substantially all of the Circus Assets (the "**Phase I Auction**") if the Debtor receives two or more Qualified Bids (as defined below), and thereafter, seek entry of an order (the "**Sale Order**"), after notice and hearing (the "**Sale Approval Hearing**"), authorizing and approving the sale of the Circus Assets to the Successful Bidder(s) (as defined below).  Any Circus Assets not purchased through the Phase I Auction shall be sold through a subsequent public auction (the "**Phase II Auction**") in a manner and at a time and place to be determined by the Debtor, in consultation with Stampler.

On December 23, 2016, the Debtor filed with the Bankruptcy Court the "Debtor's Motion for Entry of (I) an Order (A) Approving Bidding Procedures For the Sale of the Debtor's Circus Assets, (B) Authorizing the Employment and Retention of Stampler Auctions as Auctioneer, (C) Scheduling Auction and Sale Approval Hearing, (D) Approving the Form and Manner of Sale Notice, and (E) Granting Related Relief, and (II) an Order (A) Approving the Sale of the Debtor's Circus Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests and (B) Granting Related Relief" (the "**Sale Motion**").  On January [__], 2017, the Bankruptcy Court entered an order approving the Bidding Procedures and scheduling **February 14, 2017 at 10:00 a.m. (Eastern Time)** as the date and time that the Sale Approval Hearing will be held.

A.    **Assets to be Sold**

The Debtor seeks to sell its circus equipment and other related personal property as well as the intellectual property associated with the Debtor's performance unit, as identified on **Exhibit A** hereto (collectively, the "**Circus Assets**").  Except as otherwise provided in definitive documentation with respect to any sale of the Circus Assets, all of the Debtor's rights, title and interest in and to the Circus Assets shall be sold free and clear of all liens, claims, encumbrances, rights, remedies, restrictions, pledges, interests, charges, options and contractual commitments of any kind or nature whatsoever, whether arising before or after the date that the Debtor filed the Bankruptcy Case in the Bankruptcy Court, whether at law or in equity, in accordance with section 363 of the Bankruptcy Code.

B.    **Bid Deadline**

Any entity wanting to participate in the Phase I Auction (a "**Potential Bidder**") must submit a Qualified Bid (as defined below) in writing to (i) Stampler Auctions, 6740 Taft Street, Hollywood, Florida 33024, Attention: Harry Stampler (stamplerauctions@aol.com and

info@stamplerauctions.com); (ii) The Big Apple Circus, Ltd., One MetroTech Center North, Floor 3, Brooklyn, New York 11201, Attention: Will Maitland Weiss (wmweiss@bigapplecircus.org); (iii) counsel for the Debtor, Debevoise & Plimpton LLP, 919 Third Avenue, New York, New York 10022, Attention: Christopher Updike (bigapplecircus@debevoise.com); (iv) counsel for the statutory committee of unsecured creditors (the "**Creditors' Committee**"), Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, New York 10017-2024, Attention: Robert J. Feinstein (rfeinstein@pszjlaw.com); and (v) the Office of the Attorney General, Division of Social Justice, Charities Bureau, 120 Broadway, New York, New York, 10271, Attention: James G. Sheehan (james.sheehan@AG.ny.gov); **so as to be <u>actually received</u> on or before February 3, 2017 at 5:00 p.m. (Eastern Time)** (the "**Bid Deadline**"), which deadline may be extended by the Debtor, in consultation with Stampler and the Creditors' Committee. No bids submitted after the Bid Deadline shall be considered by the Debtor.

### C.    <u>Bid Requirements</u>

Only bids for the Circus Assets that constitute "Qualified Bids" will be considered by the Debtor. A "Qualified Bid" is an offer to purchase the Circus Assets that: (i) identifies the Circus Assets to be purchased and the consideration to be paid for such Circus Assets, (ii) identifies the Potential Bidder and the officer(s) or authorized agent(s) who will appear on behalf of such Potential Bidder, (iii) explains the proposed use of the Circus Assets, (iv) provides evidence, satisfactory to the Debtor in its reasonable discretion, of the Potential Bidder's financial wherewithal and operational ability to consummate the proposed transaction, (v) provides that such offer is not subject to any due diligence or financing contingency or further board or similar approval, (vi) provides for a good faith deposit (a "**Good Faith Deposit**") to be submitted to the Debtor on or before the Bid Deadline in an amount equal to ten percent (10%) of the proposed purchase price, but in no event less than $50,000, (vii) provides that such offer is irrevocable until and unless the Debtor accepts higher or otherwise better Qualified Bid and the Potential Bidder is not selected as the Back-Up Bidder (as defined below); (viii) includes a copy of a board resolution or similar document demonstrating the authority of the Potential Bidder to submit an offer to purchase the Circus Assets on the terms proposed by such Potential Bidder; (ix) identifies any proposed revisions to the form of order approving the proposed transaction that was attached to the Sale Motion; and (x) includes a proposed asset purchase agreement or identifies any proposed revisions to the form of asset purchase agreement provided by the Debtor, if provided.

As soon as practicable after a Potential Bidder submits a bid, the Debtor will determine whether such bid is a Qualified Bid and will notify such Potential Bidder of such determination. The Debtor reserves the right, in consultation with the Creditors' Committee, to consider bids for less than a substantial portion of the Circus Assets and bids that do not conform to one or more of the requirements specified in this "Bid Requirements" section, and may deem such bids to be Qualified Bids notwithstanding such requirements. The Debtor, in consultation with the Creditors' Committee, may aggregate separate bids from unaffiliated Potential Bidders to create one Qualified Bid, <u>provided</u>, <u>however</u>, that all such Potential Bidders shall remain subject to the provisions of section 363(n) of the Bankruptcy Code regarding collusive bidding.

### D.    Due Diligence

Through and including the Bid Deadline, the Debtor will afford Potential Bidders the opportunity to conduct a due diligence investigation regarding the Circus Assets in the manner determined by the Debtor, in its business judgment, to be reasonable and appropriate, subject to execution of an appropriate confidentiality agreement, as necessary. The Debtor shall not be obligated to furnish access to any information of any kind whatsoever regarding the Circus Assets after the Bid Deadline.

### E.    The Phase I Auction

If two or more Qualified Bids are received on or before the Bid Deadline, the Debtor shall conduct the Phase I Auction commencing on **February 7, 2017 at 11:00 a.m. (Eastern Time)**, at the offices of Debevoise & Plimpton LLP, 919 Third Avenue, New York, New York 10022, to determine the highest or otherwise best bid for the Circus Assets (the "**Successful Bid**"). The Phase I Auction may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Phase I Auction. The Debtor, in consultation with the Creditors' Committee, reserves the right to cancel the Phase I Auction.

### F.    Phase I Procedures

Only the Debtor, Stampler, any entity that has submitted a Qualified Bid (a "**Qualified Bidder**"), the Office of the United States Trustee for the Southern District of New York (the "**United States Trustee**"), the New York State Attorney General, the Creditors' Committee, and such entities' respective advisors are eligible to participate in the Phase I Auction. All participants shall appear in person, by telephone, or through a duly authorized representative. Prior to the Phase I Auction, the Debtor, in consultation with the Creditors' Committee, shall select the Qualified Bid that, in its business judgment, reflects the highest or otherwise best bid for the Circus Assets as the starting bid (the "**Starting Auction Bid**") and advise all participants in the Phase I Auction of the terms of the Starting Auction Bid. Qualified Bidders may then submit bids that are better and higher than the Starting Auction Bid in increments to be announced at the Phase I Auction (collectively, the "**Overbid Increments**"). The Debtor reserves the right, in consultation with Stampler and the Creditors' Committee and in the Debtor's business judgment, to announce reductions or increases to the Overbid Increments at any time during the Phase I Auction. The Phase I Auction may include individual negotiations with the Qualified Bidders and/or open bidding in the presence of all other Qualified Bidders. Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale. The Debtor, in consultation with the Creditors' Committee, shall have the right to conduct any number of auctions during the Phase I Auction to accommodate Qualified Bids for certain, but less than all, of the Circus Assets if the Debtor determines, in its business judgment, that such process would be in the best interests of the Debtor's estate. The Debtor, in consultation with the Creditors' Committee, shall determine whether any Qualified Bid is the Successful Bid pursuant to the "Determination of Successful Bid" section below.

As soon as practicable following the determination of the Successful Bid, the Debtor shall file the Successful Bidder Notice with the Bankruptcy Court identifying the

Qualified Bidder that submits the Successful Bid (the "**Successful Bidder**") and serve such notice by telecopy, electronic mail transmission, or overnight delivery, upon the following entities: (i) the United States Trustee, (ii) counsel to the Creditors' Committee, (iii) the New York State Attorney General, (iv) all other parties that have filed notices of appearance in the Bankruptcy Case, and (v) all Qualified Bidders that have submitted a Qualified Bid.

The Debtor, in consultation with the Creditors' Committee, may adjourn, continue, or terminate the Phase I Auction, and reserve the right to adopt other and further rules and procedures for the Phase I Auction that, in its business judgment will better promote the goals of the Phase I Auction. Absent irregularities in the conduct of the Phase I Auction, or reasonable and material confusion during the bidding, the Court will not consider bids after the Phase I Auction has been closed.

### G.  Determination of Successful Bid

The Debtor shall review each Qualified Bid that has been submitted and determine, in the Debtor's reasonable discretion, in consultation with the Creditors' Committee, whether any Qualified Bid is the Successful Bid. In making such determination, the Debtor shall consider any factor that it deems relevant, including, without limitation, the purchase price, the Debtor's mission, and those factors affecting the speed and certainty of consummating the proposed sale of the Circus Assets.

As soon as practicable following notification of the determination of the Successful Bid, but in no event later than the fifth (5th) business day after such notification, the Successful Bidder must execute a definitive agreement to purchase the Circus Assets (an "**Asset Purchase Agreement**"), to the extent not previously executed, in all respects acceptable to the Debtor.

The presentation of the Successful Bid to the Court for approval does not constitute the Debtor's acceptance of such bid. The Debtor will be deemed to have accepted the Successful Bid only when such bid has been approved by the Court pursuant to the Sale Order and the sale of the Circus Assets proposed in such bid has been consummated.

### H.  Back-Up Bidder

If the Phase I Auction is conducted, the Qualified Bidder(s) with the next highest or otherwise best Qualified Bid for the Circus Assets at the Phase I Auction (the "**Back-Up Bid**") shall be required to serve as the back-up bidder(s) (the "**Back-Up Bidder**") for such Circus Assets and keep such Back-Up Bid(s) open and irrevocable until the first to occur of (i) thirty (30) days after the completion of the Phase I Auction, (ii) consummation of the transaction with the Successful Bidder, or (iii) the Back-Up Bidder's receipt of notice from the Debtor of the release by the Debtor of the Back-Up Bidder's obligations. Following the Sale Approval Hearing, if the Successful Bidder fails to consummate the approved transaction because of a breach or failure to perform on the part of such Successful Bidder or otherwise, the Back-Up Bidder will be deemed to be the new Successful Bidder, and the Debtor will be authorized, but not required, to consummate the sale with the Back-Up Bidder without further order of the Court.

4

## I.    Reservation of Rights

### 1.    Determination of Successful Bid

The Debtor reserves the right to (a) determine, in its reasonable discretion, whether any Qualified Bid is a Successful Bid and (b) reject, at any time prior to entry of the Sale Order by the Bankruptcy Court, without liability, any bid that the Debtor, in its reasonable discretion determines to be (i) inadequate or insufficient, (ii) not in conformity with these Bidding Procedures, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, or applicable state law, or (iii) contrary to the best interests of the Debtor and its estate.  At or before the Sale Approval Hearing, the Debtor may impose such other terms and conditions on the sale of the Circus Assets as the Debtor, in consultation with the Creditors' Committee, may determine to be in the best interests of the Debtor and its estate.

### 2.    Modification of Bidding Procedures

The Debtor reserves the right to modify the Bidding Procedures without the need for any further order of the Bankruptcy Court, including, without limitation, (a) extending the deadlines set forth in the Bidding Procedures, (b) adjourning the Phase I Auction and the Sale Approval Hearing, and (c) withdrawing or adding any assets from the sale process at any time prior to or during the Phase I Auction.

## J.    Disposition of Good Faith Deposits

All Good Faith Deposits shall be held in a segregated trust account by Stampler. Good Faith Deposits shall be returned without interest to each bidder not selected by the Debtor as the Successful Bidder or the Back-Up Bidder by no later than the tenth (10th) business day following the conclusion of the Phase I Auction.  The Good Faith Deposit of the Back-Up Bidder shall be held by Stampler until ten (10) business days after the closing of sale transaction with the Successful Bidder or termination of the Back-Up Bid as provided above.  If the Successful Bidder fails to consummate the purchase of the Circus Assets, or any part thereof, because of a breach, default or unexcused failure to perform on the part of such Successful Bidder, the Debtor will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, and such Good Faith Deposit shall irrevocably become property of the Debtor without affecting or reducing any of the Debtor's other rights or claims against such Successful Bidder. If a Successful Bidder consummates the purchase of the Circus Assets, the Good Faith Deposit deposited by such Successful Bidder shall be applied as a credit toward the purchase price for the Circus Assets.

## K.    As Is, Where Is

The sale of the Circus Assets shall be on an "as is, where is, and with all faults" basis and without representations or warranties of any kind, nature, or description by the Debtor, its estate, or its agents or representatives.  Except as otherwise expressly provided in these Bidding Procedures or any applicable Asset Purchase Agreement, by submitting a bid, each Potential Bidder that submits a bid shall be deemed to acknowledge and represent that it (i) has

had an opportunity to conduct any and all reasonable due diligence regarding the Circus Assets prior to making its bid, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Circus Assets in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Circus Assets, or the completeness of any information provided in connection therewith.

### L.    Sale Approval Hearing

The sale of the Circus Assets and applicable Asset Purchase Agreement shall be presented for authorization and approval by the Bankruptcy Court at the Sale Approval Hearing, which is scheduled to be held on **February 14, 2017 at 10:00 a.m. (Eastern Time)** at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 701, New York, New York 10004, before the Honorable Sean H. Lane, United States Bankruptcy Judge.  The Sale Approval Hearing may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Approval Hearing.

### M.    Phase II Procedures

Following the consummation of the sale of the Circus Assets to the Successful Bidder or cancellation of the Phase I Auction, Stampler will conduct the Phase II Auction, which may be a live public auction, for any remaining unsold Circus Assets.  No later than twenty-one (21) days after the last sale of the Circus Assets is closed, Stampler will provide the Debtor with a report of such sale(s) (the "**Sale Report**"), which Sale Report shall be filed with the Court and served on the United States Trustee, the Creditors' Committee, and any other parties requesting notice pursuant to Bankruptcy Rule 2002.  The Sale Report will include: (a) the time, date, and place of each sale; (b) the gross dollar amount of each sale; (c) if the Circus Assets were sold in lots, a description of the items in each lot, and any bulk bids received; (d) an itemized statement of Stampler's expenditures, disbursements, and commissions; (e) the names and addresses (to include city, state, country, and zip code) of all purchasers; (f) the approximate number of people attending the sale; (g) the items for which there were no bids and the disposition of those items; (h) a statement of the manner and extent of advertising of the sale; (i) a statement of the manner and extent of the availability of the Circus Assets for inspection; and (j) any other information that the United States Trustee may request.

### N.    Jurisdiction

The Bankruptcy Court shall retain exclusive jurisdiction over any matter or dispute relating to the sale of the Circus Assets, these Bidding Procedures, any applicable Asset Purchase Agreement, and any other matter that in any way relates to the foregoing.  All entities that submit a bid for the purchase of the Circus Assets shall be deemed to have consented to the core jurisdiction of, and venue in, the Bankruptcy Court and to have waived any right to a jury trial in connection with any disputes relating to the sale of the Circus Assets, the Bidding Procedures, any applicable Asset Purchase Agreement, and any other matter that in any way relates to the foregoing.

**<u>Exhibit A</u>**

# BIG APPLE CIRCUS - CIRCUS ASSETS

**VEHICLES**

**POWER UNITS**

**Tractors/Vans/Pickups**

| BAC # | Type of Vehicle | Year | MFG/Model | Vehicle Vin # | Body Type | |
|---|---|---|---|---|---|---|
| TR1 | Teal MACK | 1995 | MACK | 1M1AA13Y8SW053621 | Tractor | |
| TR6 | Green MACK | 2007 | MACK | 1M1AK06Y37N020378 | Tractor | |
| TRC2 | White Yard Dog | 2009 | Capacity | 4LMBF51129L020774 | Truck | |
| V4 | White Van | 1999 | Ford E350 | 1FBSS31LXXHB12348 | Club-Van | |
| V5 | Red Van | 2002 | Ford E350 | 1FBSS31L42HA26462 | Club-Van | |
| V6 | White Van | 2003 | Ford E350 | 1FBSS31L83HA27583 | Club-Van | |
| V7 | Silver Van | 2007 | Ford E350 | 1FBSS31L57DA45844 | Club-Van | |
| SU02 | Jeep Cherokee | 2008 | Jeep | 1J8GR48K48C198814 | SUV | |
| PK4 | Red Ford | 1997 | Ford F350 | 1FTJX35F1VEB63832 | Pickup | |
| PK9 | Blue Ford | 1996 | Ford F350 | 1FTJW35F0TEA77184 | Pickup | |
| PK10 | Red Ford | 1997 | Ford F350 | 1FTJX35F3VEA67734 | Pickup | |
| PK15 | Black Ford (stick) | 1997 | Ford F350 | 1FTJW35F3VEC70254 | Pickup | |
| PK24 | White Ford | 2007 | Ford F350 | 1FTWW33P67EA01606 | Pickup | |
| PK25 | White Ford | 2007 | Ford F350 | 1FTWW33P87EA01607 | Pickup | |
| PK26 | White Ford | 2007 | Ford F350 | 1FTWW33PX7EA01608 | Pickup | |
| PK27 | Blue Ford | 2006 | Ford F350 | 1FTWW33PX6EA84231 | Pickup | |
| GD007 | Freightliner | 1998 | Utility | 1FV6GLBC2WH923450 | Pickup | |

## VEHICLES (continued)

### NON-POWER UNITS  (RV Travel Trailers/5th Wheel)

| BAC # | Type of Vehicle | Year | MFG/Model | Vehicle Vin # | Body Type | |
|---|---|---|---|---|---|---|
| RV21 | Chateau | 1995 | Chateau | 4CH7HT80SM002970 | RV Trlr | |
| RV26 | Citation | 2001 | Citation | 1CNTD85211M002226 | RV Trlr | |
| RV30 | Citation | 2005 | Citation | 1CNTD77285M003094 | RV Trlr | |
| RV31 | Citation | 2005 | Citation | 1CNTD85255M003093 | RV Trlr | |
| RV32 | Citation | 2005 | Citation | 1CNTD772X5M003095 | RV Trlr | |
| RV33 | Gulfstream | 2006 | Conquest | 1NL1GTN2761072726 | RV Trlr | |
| RV34 | Gulfstream | 2006 | Conquest | 1NL1GTN2961072727 | RV Trlr | |
| RV37 | Starwood | 2008 | Starwood LE | 4K01A1H298E176764 | RV Trlr | |
| RV38 | Marathon | 2007 | Marathon | 1M93M0Z3871019282 | 5th Whl | |
| RV39 | Gulfstream | 2008 | StreamLite | 1NL1XTP2781024577 | RV Trlr | |
| RV40 | Holiday Rambler | 2006 | Savoy | 1KB1B1M286E166137 | RV Trlr | |
| RV41 | Sunline | 1995 | Solaris | 1LC2S2N2XSL298040 | RV Trlr | |
| RV42 | Springdale | 2005 | Springdale | 4YDT266205C117017 | RV Trlr | |

## VEHICLES (continued)
### NON-POWER UNITS (Semi Trailers)

| BAC # | Discription of Vehicle | Year | MFG/Model | Vehicle Vin # | Body Type |
|-------|------------------------|------|-----------|---------------|-----------|
| S1  | Sleeper 1         | 1992 | Fruehauf    | 1H2V04828NB017943 | Semi |
| S2  | Sleeper 2         | 2001 | Uni-Glide   | 1U9CT48291V019035 | Semi |
| S3  | Sleeper 3         | 1993 | Great Dane  | 1GRAA962XPS013308 | Semi |
| S4  | Sleeper 4         | 2005 | Great Dane  | 1GRAA96226B701558 | Semi |
| S5  | Sleeper 5         | 2005 | Great Dane  | 1GRAA96246B701559 | Semi |
| S7  |                   | 1998 | Kentucky    | 1KKVD5324WL111832 | Semi |
| S8  |                   | 1991 | Great Dane  | 1GRAA062XMS081003 | Semi |
| S9  |                   | 1988 | Great Dane  | 1GRAA9624JB145634 | Semi |
| S10 | Cookhouse         | 1997 | Beckman     | 1BTT53209WAB12283 | Semi |
| S16 |                   | 1988 | Great Dane  | 1GRAA9623JB122605 | Semi |
| S19 |                   | 1988 | Great Dane  | 1GRAA9626JB145604 | Semi |
| S20 |                   | 1988 | Great Dane  | 1GRAA9622JB145647 | Semi |
| S23 |                   | 1988 | Great Dane  | 1GRAA9625JB122623 | Semi |
| S24 |                   | 1988 | Great Dane  | 1GRAA9621JB145607 | Semi |
| S25 |                   | 1988 | Great Dane  | 1GRAA9627JB145627 | Semi |
| S26 |                   | 1988 | Great Dane  | 1GRAA9624JB145648 | Semi |
| S27 |                   | 1994 | Great Dane  | 1GRAA9025RS071404 | Semi |
| S28 |                   | 1994 | Great Dane  | 1GRAA9628RB130016 | Semi |
| S29 |                   | 2001 | Uni-Glide   | 1U9CT53281V019010 | Semi |
| S30 | Horse Trailer     | 2003 | Pegasus     | 1P9AC48223E338182 | Semi |
| S31 | Seat Box Trailer  | 2004 | Stoughton   | 1DW1A48264S710801 | Semi |

## VEHICLES (continued)
### NON-POWER UNITS (Semi-Flatbed Trailers)
### Flatbed Trailers

| BAC # | Discription of Vehicle | Year | MFG/Model | Vehicle Vin # | Body Type | |
|---|---|---|---|---|---|---|
| F3 | | 1988 | Dorsey | 1DTP36Z20JA184050 | Semi DD | |
| F4 | | 1988 | Dorsey | 1DTP36Z22JA184051 | Semi DD | |
| F5 | | 1988 | Dorsey | 1DTP36Z24JA184049 | Semi DD | |
| F6 | | 1999 | Uniglide | 1U9CT5024XV019194 | Semi DD | |
| F8 | | 2006 | Fontaine | 13N1532C861532416 | Semi FB | |
| F9 | | 2006 | Fontaine | 13N1532C661532415 | Semi FB | |
| F19 | | 1990 | Fontaine | 13N248200L1550429 | Semi FB | |
| F20 | | 1993 | Fontaine | 13N248204P1557809 | Semi FB | |
| F34 | | 1998 | Fruehauf | 1JJF482F6WS531027 | Semi DD | |
| F35 | | 1998 | Dorsey | 1DTP16Z24WG051916 | Semi FB | |
| F36 | | 2008 | Kaufman | 5VGFR50228L002083 | Semi DD | |
| F37 | | 2008 | Pitts | 5JYDF48288P080942 | Semi FB | |
| F38 | | 2008 | Pitts | 5JYDF482X8P080943 | Semi FB | |
| F39 | | 2000 | Dorsey | 1DTP80Z24YG055220 | Semi FB | |
| **Utility Trailers** | | | | | | |
| UT26 | Donniker/Port-o-Sans | 1998 | Modular | 1M9BA452981235538 | Trailer | |
| UT29 | Bobcat/Trailboss | 1996 | Trailboss | 1T9DP2923T1118842 | Trailer | |
| Frklft | Forklift | 2001 | Eagle Pitcher | 5BB01210 | Forklift | |
| | **Code Legend** | | | | | |
| | TR    Tractor | DD | Drop Deck | S    Semi Trailer | | |
| | TK    Truck | V | Van | F    Flatbed Trailer | | |
| | PK    Pickup | MH | Motorhome | UT    Utility Trailer | | |

## EQUIPMENT

| | | | | | |
|---|---|---|---|---|---|
| Framed Circus Posters | | | | | |
| | | | | | |
| 28 cases Toy Trucks | | | | | |
| 24 cases Juggling Balls | | | | | |
| 10 cases Sippy Cups | | | | | |
| 6 cases Push Puzzles | | | | | |
| 9 cases Umbrellas | | | | | |
| 1 case Slinkys | | | | | |
| 1500 Red Paper Goody Bags | | | | | |
| 2000 Small White Goody Bags | | | | | |
| | | | | | |
| Welder | | | | | |
| Drill Press | | | | | |
| (2) Band Saws | | | | | |
| (2) Circular Saws | | | | | |
| Mounted Circular Saw | | | | | |
| Electric Sander | | | | | |
| Paint Guns | | | | | |
| Assorted Tools | | | | | |
| Fresh water pumps | | | | | |
| Gray Water Pumps | | | | | |
| Truck Jack | | | | | |
| Transmission Jack | | | | | |
| (3) Road Boxes with Tools | | | | | |
| Hard Hats and Vests | | | | | |
| Sledge Hammers | | | | | |
| Paint | | | | | |
| Wardrobe Washer & Dryer | | | | | |
| (2) Projectors | | | | | |
| Traffic cones | | | | | |
| Palletainer of Fire Extinguishers | | | | | |
| | | | | | |
| Drum Set | | | | | |
| Electric Drum Set | | | | | |
| Bandstand Chairs | | | | | |
| Music Stands | | | | | |

## EQUIPMENT (continued)

| | | | | | |
|---|---|---|---|---|---|
| 2 Big Apple Circus-branded Big Top performance tents (one blue, one white) | | | | | |
| (3) Palletainers with extra elex cable & feeder | | | | | |
| (2) acrobat platforms | | | | | |
| Spot Operator Chairs | | | | | |
| Spot Operator Towers | | | | | |
| Spot Tower Legs | | | | | |
| Emergency Lights  & Exit Signs | | | | | |
| (2) Palletainers of Elex Extension Cords & Feeders | | | | | |
| Blue reception tent | | | | | |
| Old Ring Carpets | | | | | |
| Aluminum trusses for backstage curtain | | | | | |
| Big Top stable parts | | | | | |
| Steel Cables & steel pipe | | | | | |
| Fencing | | | | | |
| Pallet of sand bags | | | | | |
| (4) X holders for Masts | | | | | |
| Seat steel stringers, frames, braces, kick boards | | | | | |
| Seating system floorboards | | | | | |
| Backstage flooring | | | | | |
| Cupola/Mast | | | | | |
| (4) mast plate feet | | | | | |
| (2) pallets of wood blocks | | | | | |
| Ladders | | | | | |
| Floor Boards/Metal Containers | | | | | |
| Ring Curb | | | | | |
| Palletainer of show lights & lenses | | | | | |
| Aluminum channeling from ring crew area | | | | | |

## EQUIPMENT (continued)

| | | | | |
|---|---|---|---|---|
| Bandstand - Floor- Truss- pieces, etc | | | | |
| Steel stringers for grandstand seats and boxes | | | | |
| Asstd sizes of Concrete blocks for Lincoln Center counter weight system | | | | |
| Asstd sizes of Steel Plates for Lincoln Center for counter weight system | | | | |
| Floorboards for seating system | | | | |
| Stables | | | | |
| Ramps for stables | | | | |
| Rubber flooring for stables | | | | |
| Leftover carpet rolls from Lincoln Center rotunda tent | | | | |
| Side poles | | | | |
| Tent stakes | | | | |
| (2) pallets of yellow cable covers  for ELEX cables | | | | |
| Crash mats | | | | |
| Old portafloor | | | | |
| Palletainer of orange cable covers for phone cables | | | | |
| | | | | |
| (2) Palletainers of fresh water hoses | | | | |
| Palletainer of 3" waste water hose | | | | |
| Large hoses for gray water system | | | | |
| (2) Palletainers of large yellow cable covers for hoses | | | | |
| | | | | |
| 3 Red Guard booths | | | | |
| Little Box Office Kiosk | | | | |
| 2 Membership Booths | | | | |

## EQUIPMENT (continued)

| | | | | | |
|---|---|---|---|---|---|
| Novelty Wagon | | | | | |
| Bar | | | | | |
| Concession Table | | | | | |
| Bar- Beer | | | | | |
| Coffee Counter Stand | | | | | |
| (2) Condiment Stands | | | | | |
| Donut Machine | | | | | |
| Hot Dog Stand | | | | | |
| Pretzel Stand | | | | | |
| (4) Convection Ovens [2 stacked] | | | | | |
| (5) Warmers | | | | | |
| Tilt Skillet | | | | | |
| Deli Slicer | | | | | |
| Keurig Coffee Machine | | | | | |
| (11) Trash Bins | | | | | |
| (2) Soda Coolers | | | | | |
| Push Cart | | | | | |
| Freezer | | | | | |
| (2) Table Top Warmers | | | | | |
| Soda Machine | | | | | |
| Coffee Grinder and Machine | | | | | |
| Salad Bar | | | | | |
| 5 cases Kids Meal Boxes | | | | | |
| 8 cases Adults Meal Boxes | | | | | |
| | | | | | |
| 30-35 racks of old costumes | | | | | |
| 3-4 wardrobe road boxes | | | | | |
| Assorted Shoes | | | | | |
| Assorted Hats | | | | | |
| Assorted Fabric | | | | | |
| Assorted Props | | | | | |

Updated: 12/23/2016

## EQUIPMENT (continued)

| | | | | |
|---|---|---|---|---|
| **CONTAINER A** | | | | |
| "Legendarium" Set | | | | |
| **CONTAINER B** | | | | |
| "Bello's Back" Set | | | | |
| **CONTAINER C** | | | | |
| Assorted Floors | | | | |
| **CONTAINER D** | | | | |
| Large 12' x 12' Juggling Floor | | | | |
| **Container E** | | | | |
| Stage Show "Oops" Props | | | | |
| Mylar Rolls | | | | |
| Foam Rubber Rolls | | | | |
| | | | | |
| Old calliope - broken | | | | |
| | | | | |
| 30+ Tables | | | | |
| TVs for lounges & lobby tents | | | | |
| Black Couches | | | | |
| Café Tables | | | | |
| Red Chairs | | | | |
| Lounge Table | | | | |
| Misc. Tables and Chairs | | | | |
| | | | | |
| (3) Generators | | | | |
| (18) Diesel Heaters for Big Top | | | | |
| (2) Waste Oil Heaters by Elogic 340 H w/ 500 gallon tanks by Dunn | | | | |
| (1) 500 gallon auxiliary oil tank for waste oil to be used with heaters | | | | |
| (1) 800 gallon auxiliary oil tank for waste oil to be used with heaters | | | | |
| (3) 275 gallon diesel storage tanks on outside | | | | |
| (2) 200 gallon containers of absorbent for fuel spills | | | | |

| Laptop Computers | | | | | |
|---|---|---|---|---|---|
| | Hp Pavilion Entertainment PC- Vista opersting system | | | | |
| | ThinkPad- XP operating system | | | | |
| | Dell Inspirion 1150- XP | | | | |
| | Dell Inspirion 15- Windows 8 | | | | |
| | Dell Inspirion 17-Windows 7 | | | | |
| | Sony Vaio- Vista | | | | |
| | Sony Vaio-XP | | | | |
| | Toshiba Satellite P205- Vista | | | | |
| Desktop Computers | | | | | |
| | HP Compaq d530 CMT- XP | | | | |
| | HP Compaq dc 5100 MT-XP | | | | |
| | HP Compaq dc 5700 Microtower- XP | | | | |
| | HP Pavillion p6-2127c- Windows 7 | | | | |
| | Gateway DX4870- Windows 7 | | | | |
| | Apple Computer-Mac | | | | |
| Printers | | | | | |
| | Epson Stylus Pro 3800-color | | | | |
| | Epson WF 2540- fax, copy scan | | | | |
| | Epson Workforce Pro-color | | | | |
| | HP Laserjet CP1215-color | | | | |
| | HP Officejet Pro 8600 Multi-Function Ctr. MFC9970CDW-fax, copy, scan | | | | |
| Misc. | | | | | |
| | Money Counter- Royal Sovereign RBC-2100 | | | | |
| | Cash Drawers- 2 small, 4 large | | | | |
| | Boca Printer | | | | |
| | Counterfeit Detector | | | | |
| | Apple Square | | | | |
| | Dock for Apple Square | | | | |
| | Apple Square Stands | | | | |
| | Thermal Receipt Printer | | | | |
| | Tabletop Microphone | | | | |
| | Acer Projector | | | | |
| | Doc u Seal Laminator | | | | |
| | 8" Samsung Galaxy 4 Tablet | | | | |
| | Assorted keyboards, mice etc. | | | | |
| | Arris Router | | | | |
| Phones | | | | | |
| Orange Tractor with lawn mower and snow plow/bucket | | | | | |

## INTELLECTUAL PROPERTY

| IP TYPE | | REG. NUMBER | DATE | TYPE OF WORK | TITLE | NOTES |
|---|---|---|---|---|---|---|
| Copyright | | TXu000522895 | 4/16/1992 | Text | The Big Apple Circus Clown Care Unit : a report on its development, impact, implications for research, and possible future directions / by Jill Vorenberg Alberts | |
| Copyright | | TX0003319701 | 4/16/1992 | Text | The big apple circus Clown Care Unit : training manual | |
| Patent | | | | | | No patent registrations found. |
| URL | | | | | www.bigapplecircus.org | |

## INTELLECTUAL PROPERTY (continued)

| | SERIAL NUMBER | REG. NUMBER | REG. DATE | WORD MARK | LIVE/DEAD | NOTES |
|---|---|---|---|---|---|---|
| Trademark | 85504649 | 4249048 | | CLOWN CARE | LIVE | |
| Trademark | 77545625 | 3591055 | | CIRCUSCHARGE | DEAD | |
| Trademark | 75768904 | 2351980 | | BEYOND THE RING | DEAD | |
| Trademark | 75751059 | 2375024 | | CIRCUS TO GO! | LIVE | |
| Trademark | 75545678 | 2372094 | | CIRCUS OF THE SENSES | LIVE | |
| Trademark | 75475480 | 2260868 | 7/13/1999 | CIRCUS FOR ALL | LIVE | entertainment in the nature of circusperformances |
| Trademark | 75473498 | 2259308 | 7/6/1999 | CIRCUS FOR ALL | LIVE | charitable services, namely, fund raising activities to support a service which provides free and discounted tickets to circusperformances to children with economic disadvantages or physical disabilities. |
| Trademark | 75473496 | 2228887 | | CIRCUS THE WAY IT WAS MEANT TO BE | DEAD | |
| Trademark | 75473495 | 2228886 | | FAMILY ENTERTAINMENT THE WAY IT WAS MEANT TO BE | DEAD | |
| Trademark | 74128964 | 1672160 | | CLOWN CARE UNIT | DEAD | |
| Trademark | 74643455 | 2037681 | | BIG APPLE CIRCUS | LIVE | toys and games, namely, [ board games, ] jigsaw puzzles, [ parlor games, ] plush toys, toy vehicles |
| Trademark | 74643454 | 2053297 | | BIG APPLE CIRCUS | DEAD | clothing, namely belts, hats, caps, shorts, jeans, ties, coats, vests, sweaters, shirts, jerseys, shoes and sandals |

Updated: 12/23/2016

## INTELLECTUAL PROPERTY (continued)

| | | | | | | |
|---|---|---|---|---|---|---|
| Trademark | 74643453 | 2041171 | | BIG APPLE CIRCUS | DEAD | piece goods, namely towels, bath linens, bed linens, table linens, kitchen towels, cloth flags, cloth pennants and cloth banners |
| Trademark | 74643452 | 2037680 | | BIG APPLE CIRCUS | DEAD | household and novelty items, namely, cups, dishes, glass beverageware, commemorative plates, and decorative plates |
| Trademark | 74643451 | 2049670 | | BIG APPLE CIRCUS | LIVE | paper goods, namely, magazines and brochures regarding circuses, paper flags, paper pennants and paper banners, calendars, bumper stickers, decals, coloring books, comic books, [ scrap books ], address books, [ photo albums, appointment books, gift wrapping paper and stationery, playing cards ] |

16-13297-shl    Doc 59    Filed 12/23/16    Entered 12/23/16 13:07:21    Main Document
Pg 68 of 139

Updated: 12/23/2016

## INTELLECTUAL PROPERTY (continued)

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | entertainment services in the nature of circusperformances. Mark Drawing Code  (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS Design Search Code  03.03.01 - Elephants; Mammoths; Mastodons 03.03.24 - Stylized Elephants, hippopotami, rhinoceri, giraffes, alpacas, camels, llamas 03.03.26 - Costumed Elephants, hippopotami, rhinoceri, giraffes, alpacas, camels, llamas 21.01.07 - Blocks, toy; Building blocks (toy); Building pieces (toy) 21.03.01 - Balls including playground balls, beach balls, billiard balls, tennis balls, bingo balls and lottery balls; Beach balls; Billiard balls; Bingo balls; Lottery balls; Paddle balls; Playground balls; Table tennis balls; Tennis balls 26.05.21 - Triangles that are completely or partially shaded 27.03.05 - Objects forming letters or numerals |
| Trademark | 74498648 | 1893391 | | BIG APPLE CIRCUS | DEAD | |
| Trademark | 73280891 | 1236748 | | BIG APPLE CIRCUS | LIVE | Entertainment Services in the Nature of a Circus |
| Social Media | | | | Facebook | | |
| Social Media | | | | Twitter | | |
| Social Media | | | | Pinterest | | |
| Social Media | | | | Youtube | | |
| Social Media | | | | Foursquare | | |
| Email Service Provider | | | | Constant Contact | | |
| Email Lists of ticket buyers and potential buyers for  each venue | | | | see separate attachment | | |

# BIG APPLE CIRCUS - CIRCUS ASSETS - EXCLUDED ITEMS

| | | | | | | |
|---|---|---|---|---|---|---|
| **VEHICLES** | | | | | | |
| | **BAC #** | **Type/Description of Vehicle** | **Year** | **Mileage** | **MFG/Model** | **Body** |
| | TR5 | Western Star | 2004 | 42,337 | WE/ST | Tractor |
| | PK22 | White Ford | 2003 | 58,884 | Ford F350 | Pickup |
| | PK23 | White Ford | 2003 | 53,249 | Ford F350 | Pickup |
| | | | | | | |
| Auxiliary tenting equipment, etc., - NYC Department of Cultural Affairs (see list below) | | | | | | |
| Computers in Brooklyn office | | | | | | |
| Phones in Brooklyn office | | | | | | |
| URL - www.bigapplecircus.com | | | | | | |

| AUXILIARY TENTING EQUIPMENT, ETC. - NYC DEPARTMENT OF CULTURAL AFFAIRS | | | | | | |
|---|---|---|---|---|---|---|
| DCA ITEM # | Description | | | | | Quantity |
| **Tent** | | | | | | |
| T1 | Vinyl tent | | | | | 1 |
| T2 | Biljax decks | | | | | 972 |
| T3 | Top Deck sections | | | | | 486 |
| | | | | | | |
| **Ceiling System** | | | | | | |
| C1 | Full Design 12' Moon pillow-cased fabric with frame | | | | | 20 |
| C2 | Full Deign 20' Moon pillow-cased fabric with frame | | | | | 4 |
| C3 | Full Design Pink Powered by Monn 9' dia Moon - Single skin with frame | | | | | 25 |
| C4 | Full Design 145'L x 9'H (48' Radius) Arc Projection Screen | | | | | 1 |
| C5 | Full Design 127'L x 9'H (78' Radius) Arc Projection Screen | | | | | 1 |
| | | | | | | |
| **Wall System** | | | | | | |
| W1 | 19.5' x 93" Half-Width Wall, Welded Asembly | | | | | 10 |
| W2 | 39" x 93" Full Wall, Welded Assembly | | | | | 174 |
| W3 | Door for EZ Fabric Walls | | | | | 14 |
| W4 | PreDesigned Oval Baseplate with Stud | | | | | 40 |
| W5 | PreDesigned 93.5" Adjustable Corner Column | | | | | 10 |
| W6 | PreDesigned 93.5" Four Way Corner Column | | | | | 14 |
| W7 | PreDesigned End Cap - 93.5" | | | | | 4 |
| W8 | Wall Stacking Connector | | | | | 176 |
| W9 | 39" x 46.5" Half-Height Wall, Locked Assembly | | | | | 178 |
| W10 | PreDesigned 93.5" Low Profile Accessory Column | | | | | 10 |
| W11 | PreDesigned EZ Fabric Cover | | | | | 348 |
| W12 | PreDesigned EZ Fabric Cover | | | | | 20 |
| W13 | PreDesigned EZ Fabric Cover | | | | | 356 |
| W14 | PreDesigned EZ Fabric Cover | | | | | 28 |
| AUXILIARY TENTING EQUIPMENT, ETC. - NYC DEPARTMENT OF CULTURAL AFFAIRS | | | | | | |
| DCA ITEM # | Description | | | | | Quantity |
| | | | | | | |
| **Wall System (continued)** | | | | | | |
| W15 | Full Design 127' Curved Groove Wall | | | | | 1 |
| W16 | Full Design 145' Curved Groove Wall | | | | | 1 |
| | | | | | | |
| **Lighting & AV System** | | | | | | |
| L1 | eW Color Blast Dimmable Warm | | | | | 124 |
| L2 | 10' Truss 12" | | | | | 12 |
| L3 | 10' Truss 14" tri | | | | | 8 |
| L4 | Hand Hoists 1/2 Ton | | | | | 19 |
| L5 | Source Four 36 Degree Unit Specials | | | | | 12 |
| L6 | Vari Lite VLX | | | | | 8 |
| L7 | 24 way Edison Distro | | | | | 1 |
| L8 | ETC Smart Pack 10 x 1.2K | | | | | 4 |
| L9 | Hog 500 | | | | | 1 |
| L10 | Lep Console 12 chan | | | | | 3 |
| L11 | Power Distribution | | | | | 3 |
| L12 | Feeder Cable Extension Set FS505W-100 | | | | | 4 |
| L13 | 55" LCD Commercial Display | | | | | 6 |

| | | | | | |
|---|---|---|---|---|---|
| L14 | HDMI Splitter | | | | 1 |
| L15 | Christie series M Projector 10k | | | | 2 |
| L16 | 1.5 Lens | | | | 2 |
| L17 | Ceiling Mount | | | | 2 |
| L18 | Dual HDMI Output | | | | 2 |
| L19 | DMX Interface | | | | 2 |
| L20 | Mac Playback System | | | | 1 |
| L21 | JBL Sound Package | | | | 2 |

**EQUIPMENT - AUDIENCEVIEW TICKETING CORPORATION**

| | | Description | | | | Quantity |
|---|---|---|---|---|---|---|
| | | Thermal Ticket Printers | | | | 15 |
| | | Laptop Computers | | | | 7 |
| | | Credit Card Readers | | | | 6 |
| | | Access Control Hardware | | | | |

## Exhibit 2

**Sale Notice**

**BID DEADLINE: February 3, 2017, at 5:00 p.m. (Eastern Time)**
**AUCTION DATE AND TIME: February 7, 2017, at 11:00 a.m. (Eastern Time)**
**OBJECTION DEADLINE: February 9, 2017, at 4:00 p.m. (Eastern Time)**
**SALE APPROVAL HEARING DATE AND TIME: February 14, 2017, at 10:00 a.m. (Eastern Time)**

M. Natasha Labovitz
Christopher Updike
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Telephone:    (212) 909-6000
Facsimile:    (212) 909-6836

Counsel to the Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | |
| **THE BIG APPLE CIRCUS, LTD.** | **Chapter 11** |
| **Debtor.** | **Case No. 16-13297 (SHL)** |

**NOTICE OF BID DEADLINE, AUCTION AND SALE APPROVAL HEARING IN CONNECTION WITH THE SALE OF THE DEBTOR'S CIRCUS ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.    The Big Apple Circus, Ltd. (the "**Circus**"), as debtor and debtor in possession in the above-captioned case, seeks to sell substantially all of its circus equipment and other related property associated with the Circus' performance unit (the "**Circus Assets**") free and clear of any and all liens, claims, encumbrances, and other interests.

2.    On [DATE], 2017, the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") entered an order (the "**Bidding Procedures Order**") approving procedures for submitting bids and conducting an auction for the sale of the Circus Assets (the "**Bidding Procedures**").

3.    All interested parties are invited to make offers to purchase the Circus Assets in accordance with the Bidding Procedures and the Bidding Procedures Order.  Copies of the Bidding Procedures, Bidding Procedures Order, and the Sale Motion (as defined below) may be obtained by (a) accessing the Bankruptcy Court's website at www.nysb.uscourts.gov (please note that a PACER password is needed to access documents on the Bankruptcy Court's website), (b) contacting the Office of the Clerk of the Court at One Bowling Green, New York, New York 10004, or (c) contacting the Circus' counsel (via mail, Debevoise & Plimpton LLP, 919 Third Avenue, New York, NY 10022, Attn: M. Natasha Labovitz and Christopher Updike or via email,

bigapplecircus@debevoise.com).    **All interested parties should carefully read the Bidding Procedures.**

4.    The deadline to submit offers to purchase all or substantially all of the Circus Assets is **February 3, 2017 at 5:00 p.m. (Eastern Time)** (the "**Bid Deadline**").  Pursuant to the Bidding Procedures and the Bidding Procedures Order, if two or more Qualified Bids (as defined in the Bidding Procedures) are received on or before the Bid Deadline, the Debtor shall conduct an auction (the "**Phase I Auction**") commencing on **February 7, 2017 at 11:00 a.m. (Eastern Time)**, at the offices of Debevoise & Plimpton LLP, 919 Third Avenue, New York, New York 10022, to determine the highest or otherwise best bid for the Circus Assets (the "**Successful Bid**").

5.    Only the Circus, the Circus' auctioneer, an entity that has submitted a Qualified Bid (a "**Qualified Bidder**"), the Office of the United States Trustee for the Southern District of New York, the New York State Attorney General, the official committee of unsecured creditors appointed in the Debtor's chapter 11 case (the "**Creditors' Committee**"), and such entities' respective advisors are eligible to participate in the Phase I Auction.  The Phase I Auction may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Phase I Auction.  The Debtor reserves the right to cancel the Phase I Auction.

6.    A hearing (the "**Sale Approval Hearing**") to consider the Circus' motion (the "**Sale Motion**") for entry of an order (the "**Sale Order**") approving the sale of all or substantially all of the Circus Assets to the bidder that submits the Successful Bid (the "**Successful Bidder**") will be held before the Honorable Sean H. Lane, United States Bankruptcy Judge, at the Bankruptcy Court located at One Bowling Green, Room 701, New York, New York 10004 on **February 14, 2017 at 10:00 a.m. (Eastern Time)**.  The Sale Approval Hearing may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Approval Hearing.

7.    Objections, if any, to approval of the sale of the Circus Assets to the Successful Bidder, must (a) be in writing, (b) comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, (c) set forth the name of the objector, (d) state with particularity the legal and factual bases for such objection, and (e) be filed with the Bankruptcy Court, together with proof of service thereof, and served on the following parties **so as to be actually received no later than 4:00 p.m. (Eastern Time) on February 9, 2017** (the "**Objection Deadline**"): (a) the Debtor, The Big Apple Circus, Ltd., One MetroTech Center North, Brooklyn, NY 11201, Attn: Will Maitland Weiss; (b) counsel for the Debtor, Debevoise & Plimpton LLP, 919 Third Avenue, New York, NY 10022, Attn: M. Natasha Labovitz (nlabovitz@debevoise.com) and Christopher Updike (cupdike@debevoise.com); (c) counsel for the Creditors' Committee, Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, New York 10017-2024, Attention: Robert J. Feinstein (rfeinstein@pszjlaw.com); (d) the Office of the United States Trustee for the Southern District of New York, Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014, Attn: Richard Morrissey (richard.morrissey@usdoj.gov); (e) the Office of the United States Attorney for the Southern District of New York, 86 Chambers Street, 3rd Floor, New York, NY 10007; (f) the New York State Attorney General, Department of Social Justice, Charities Bureau, 120 Broadway, Floor 3, New York, New York 10271, Attn: James Sheehan

(james.sheehan@ag.ny.gov); (g) the New York City Department of Cultural Affairs, 31 Chambers Street, Floor 2, New York, New York 10017, Attn: Jimmy Van Bramer; and (h) the Internal Revenue Service, 290 Broadway, New York, NY 10007, Attn: District Director.

8.      Following the consummation of the sale of the Circus Assets to the Successful Bidder or cancellation of the Phase I Auction, the Debtor will conduct a subsequent public auction (the "**Phase II Auction**" and together with the Phase I Auction, the "**Auctions**") for any remaining unsold Circus Assets in a manner and at a time and place to be determined by the Debtor, in consultation with its auctioneer.

9.      **FAILURE OF ANY ENTITY TO FILE AN OBJECTION ON OR BEFORE THE OBJECTION DEADLINE SHALL BE DEEMED TO CONSTITUTE CONSENT TO THE SALE OF THE CIRCUS ASSETS TO THE SUCCESSFUL BIDDER AND OTHER RELIEF REQUESTED IN THE SALE MOTION, AND BE A BAR TO THE ASSERTION, AT THE SALE APPROVAL HEARING OR THEREAFTER, OF ANY OBJECTION TO THE SALE MOTION, THE AUCTIONS, THE SALE OF THE CIRCUS ASSETS, OR THE DEBTOR'S CONSUMMATION AND PERFORMANCE OF THE TERMS OF THE ASSET PURCHASE AGREEMENT ENTERED INTO WITH THE SUCCESSFUL BIDDER, IF AUTHORIZED BY THE BANKRUPTCY COURT.**

10.     Unless a written objection to the Sale Motion, with proof of service, is timely filed and served by the Objection Deadline in accordance with this Notice, the Debtor may submit to the Bankruptcy Court the Sale Order in the form attached to the Sale Motion, which order may be entered by the Bankruptcy Court without further notice or hearing.  Upon entry of an order granting the Sale Motion, no further consents or approvals, including that of any other court or the New York State Attorney General, for the sale of the Circus Assets will be sought.

11.     This notice is subject to the full terms and conditions of the Sale Motion, the Bidding Procedures and the Bidding Procedures Order, and the Debtor encourages any interested parties to review such documents in their entirety.  To the extent that this notice is inconsistent with the Bidding Procedures Order, the terms of the Bidding Procedures Order shall govern.

Dated:  January _, 2017
        New York, New York

                                        /s/ _____
                                        M. Natasha Labovitz
                                        Christopher Updike
                                        DEBEVOISE & PLIMPTON LLP
                                        919 Third Avenue
                                        New York, New York 10022
                                        Telephone:    (212) 909-6000
                                        Facsimile:    (212) 909-6836
                                        Email:        nlabovitz@debevoise.com
                                                      cupdike@debevoise.com

                                        Counsel to the Debtor
                                        and Debtor in Possession

## **Exhibit B**

**Stampler Agreement**



**STAMPLER AUCTIONS**

AGREEMENT MADE THIS 27th DAY OF DECEMBER, 2016, BETWEEN THE BIG APPLE CIRCUS, LTD. BY WILL MAITLAND WEISS, EXECUTIVE DIRECTOR, HEREIN AFTER REFERRED TO AS THE "SELLER" AND STAMPLER AUCTIONS, HEREIN AFTER REFERRED TO AS THE "AUCTIONEER".

WITNESSETH – WHEREAS THE SELLER DESIRES TO SELL AT BANKRUPTCY AUCTION THE ASSETS HEREIN AFTER REFERRED TO AND FOR THAT PURPOSE TO EMPLOY THE AUCTIONEER. NOW, THEREFORE, IN CONSIDERATION OF THE MUTUAL COVENANTS AND AGREEMENTS HEREIN CONTAINED, THE PARTIES HERETO DO HEREBY AGREE AS FOLLOWS:

1. THE SELLER HEREBY AGREES TO EMPLOY THE AUCTIONEER TO MARKET AND SELL THE CIRCUS EQUIPMENT, TRUCKS, TRAILERS, RV's, TENTS, INTELLECTUAL PROPERTY AND OTHER PROPERTY IDENTIFIED ON EXHIBIT A HERETO (THE "ASSETS") IN ACCORDANCE WITH THE BIDDING AND AUCTION PROCEDURES ATTACHED HERETO AS EXHIBIT B (THE "BIDDING PROCEDURES"), AS APPROVED BY THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTERN DISTRICT OF NEW YORK (THE "BANKRUPTCY COURT").

2. THE AUCTIONEER HEREBY ACCEPTS SUCH EMPLOYMENT AND AGREES TO USE ITS BEST EFFORTS TO BRING ABOUT SUCH SALE OF THE ASSETS AT BANKRUPTCY AUCTION IN ACCORDANCE WITH THE PROVISIONS OF THIS CONTRACT, AND APPLICABLE LAW. STAMPLER AUCTIONS IS LICENSED, BONDED AND INSURED.

3. THE AUCTIONEER HEREBY SHALL CAUSE SUCH SALE TO BE MARKETED IN A COMMERCIALLY REASONABLE FASHION IN THE MANNER IN WHICH AUCTIONS ARE ORDINARILY ADVERTISED, AND IN ACCORDANCE WITH APPLICABLE LAW.

4. THE AUCTIONEER SHALL BE PAID BY THE SELLER A COMMISSION OF 10% OF THE GROSS SALE PROCEEDS FROM THE PHASE I AUCTION AND THE PHASE II AUCTION (EACH AS DEFINED IN THE BIDDING PROCEDURES, AND TOGETHER, THE "AUCTIONS").

5. THE AUCTIONEER WILL NOT SEEK REIMBURSEMENT FOR ANY EXPENSES, INCLUDING ADVERTISING, MARKETING, LABOR, TRAVEL ROOM AND BOARD, RELATED TO THE PHASE I AUCTION, BUT MAY SEEK REIMBURSEMENT FOR SUCH EXPENSES RELATED TO THE PHASE II AUCTION, IF HELD. PLEASE SEE THE ENCLOSED ESTIMATED BUDGET.

6. ANY AND ALL DEPOSITS FORFEITED BY A BIDDER SHALL BE DIVIDED EVENLY BETWEEN THE AUCTIONEER AND THE SELLER, BUT IN NO EVENT WILL THE AUCTIONEER RECEIVE MORE THAN 10% OF SUCH BIDDER'S PROPOSED PURCHASE PRICE.

7. THE SELLER REPRESENTS THAT IT IS THE SOLE OWNER AND ABSOLUTE OWNER OF THE ASSETS DESCRIBED IN THIS AGREEMENT AND THAT IT HAS FULL RIGHT TO OWN THE SAME. UPON BANKRUPTCY COURT APPROVAL THE SELLER SHALL HAVE GOOD MARKETABLE, DEFENSIBLE TITLE, FREE AND CLEAR OF ALL LIENS, ENCUMBRANCES, CLAIMS AND INTERESTS TO ALL ASSETS TO BE SOLD.

8. THE SELLER AGREES TO INDEMNIFY AND HOLD HARMLESS THE AUCTIONEER FROM ANY AND ALL CLAIMS AND ACTIONS RELATED TO OR ARISING OUT OF SERVICES PROVIDED BY THE AUCTIONEER HEREUNDER BROUGHT AGAINST THE AUCTIONEER OR SELLER BY ANY PURCHASER, CREDITOR, LIENOR, GOVERNMENT AGENCY, OR OTHER THIRD PARTY, EXCEPT TO THE EXTENT SUCH CLAIMS AND ACTIONS RESULT FROM THE AUCTIONEER'S BAD FAITH, WILLFUL MISCONDUCT, GROSS NEGLIGENCE, OR FRAUD.

9. BOTH PARTIES AGREE THAT IN THE EVENT OF ANY LEGAL ACTION:
   A. RIGHTS TO A JURY TRIAL ARE WAIVED.
   B. THE PREVAILING PARTY WILL BE ENTITLED TO A REIMBURSEMENT OF LEGAL FEES, COST, EXPENSES AND REASONABLE PAYMENT FOR TIME
   C. VENUE FOR ANY LITIGATION IS AGREED TO BE IN THE BANKRUPTCY COURT.

10. IN THE EVENT THAT BOTH OF THE AUCTIONS ARE CANCELED, THE AUCTIONEER SHALL BE ENTITLED TO (A) PAYMENT OF A "NO SALE FEE" IN AN AMOUNT EQUAL TO $10,000, AND (B) REIMBURSEMENT OF ANY AND ALL ACTUAL AND REASONABLE EXPENSES INCURRED BY THE AUCTIONEER IN CONNECTION WITH MARKETING AND PREPARING THE AUCTIONS.

11. THE AUCTIONEER IS REQUIRED BY THE AUCTION LICENSE LAW TO SETTLE ALL DEALS WITHIN 30 DAYS. OUR COMPANY POLICY IS TO SETTLE ALL DEALS BY TRUST ACCOUNT CHECK WITHIN 14 DAYS AFTER THE SALE WITH ALL PERTINENT BACK-UP ATTACHED TO A DETAILED SUMMARY AS APPLICABLE. AUCTIONEER WILL ADHERE TO LOCAL RULES AND ORDERS.

IN WITNESS WHEREOF THE PARTIES HAVE EXECUTED THIS AGREEMENT ON THE 27th DAY OF DECEMBER, 2016.

_____
WILL MAITLAND WEISS, EXECUTIVE DIRECTOR
BIG APPLE CIRCUS

_____
HARRY STAMPLER, PRESIDENT
STAMPLER AUCTIONS

**Stampler Auctions | *You'll Profit From Our Experience!*™**
6740 Taft Street | Hollywood FL 33024
**800.330.BIDS | 954.921.8888 | Fax 954.342.2080**
www.stamplerauctions.com | info@stamplerauctions.com

## BIG APPLE CIRCUS

### SECOND AMENDED PROPOSED AUCTION EXPENSE BUDGET

**INTERNET MARKETING**                                                    $    1,000
Utilizing banner ads in online trade publications
Subject to deadlines and budget
Examples:  Midway Marketplace / Amusement Today
Carnival Magazine / Circus Concepts / Aerial Essentials

**ADVANCE AUCTION PROMOTION**                                            $     200

**TELEMARKETING / FACSIMILE MARKETING / EMAIL MARKETING**       $     250

**INTERNET / WEBSITE ADVERTISING**                                      $     325
Stampler Website / Inventory Listing / Photo Gallery / Email Blasts
auctionzip.com / craigslist.com / gotoauction.com / adsinusa.com
nationalauctionlist.com / epageclassifieds.com / salesspider.com
supershopper.com / freeadstime.com / globalfreeclassifieds.com
backpage.com / thefreeadforum.com / 50statesclassifieds.com
publicauctionfinder.com / webclassifieds.us / wantedwants.com
freeclassifieds.com / usnetads.com / auctionguy.com / ileeg.com / more

**FACEBOOK**                                                             $     500
Campaign Ads & Auction Specific Boosts

**LABOR**                                                                $    N/C

**TRAVEL / ROOM & BOARD**                                               $    N/C

### NO REIMBURSEMENT OF EXPENSES WILL BE SOUGHT IN PHASE I

Should Phase II be necessary, Stampler Auctions will submit a Proposed
Auction Expense Budget specific to the assets being sold at that time.



## Exhibit A

# STATE OF FLORIDA
## DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION

FLORIDA BOARD OF AUCTIONEERS
1940 NORTH MONROE STREET
TALLAHASSEE        FL 32399-0783

(850) 487-1395

HARRY P STAMPLER INC
STAMPLER AUCTIONS
1914 TIGERTAIL BLVD.
DANIA          FL 33004

Congratulations!  With this license you become one of the nearly
one million Floridians licensed by the Department of Business and
Professional Regulation.  Our professionals and businesses range
from architects to yacht brokers, from boxers to barbeque restaurants,
and they keep Florida's economy strong.

Every day we work to improve the way we do business in order to
serve you better.  For information about our services, please log onto
**www.myfloridalicense.com**.  There you can find more information
about our divisions and the regulations that impact you, subscribe
to department newsletters and learn more about the Department's
initiatives.

Our mission at the Department is: License Efficiently, Regulate Fairly.
We constantly strive to serve you better so that you can serve your
customers.  Thank you for doing business in Florida,
and congratulations on your new license!



STATE OF FLORIDA
DEPARTMENT OF BUSINESS AND
PROFESSIONAL REGULATION

AB196          ISSUED:  09/13/2015

AUCTION BUSINESS
HARRY P STAMPLER INC
STAMPLER AUCTIONS

IS LICENSED under the provisions of Ch.468 FS.
Expiration date   NOV 30, 2017          L1509130002777

---

DETACH HERE

RICK SCOTT, GOVERNOR                                    KEN LAWSON, SECRETARY

**STATE OF FLORIDA**
**DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION**
**FLORIDA BOARD OF AUCTIONEERS**

**LICENSE NUMBER**

AB196

The AUCTION BUSINESS
Named below IS LICENSED
Under the provisions of Chapter 468 FS.
Expiration date: NOV 30, 2017



HARRY P STAMPLER INC
STAMPLER AUCTIONS
1914 TIGERTAIL BOULEVARD
DANIA          FL 33004



ISSUED:   09/13/2015      DISPLAY AS REQUIRED BY LAW      SEQ #  L1509130002777

# STATE OF FLORIDA
## DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION

FLORIDA BOARD OF AUCTIONEERS
1940 NORTH MONROE STREET
TALLAHASSEE       FL 32399-0783

(850) 487-1395

STAMPLER, HARRY P
1914 TIGERTAIL BLVD
DANIA          FL 33004

Congratulations! With this license you become one of the nearly one million Floridians licensed by the Department of Business and Professional Regulation. Our professionals and businesses range from architects to yacht brokers, from boxers to barbeque restaurants, and they keep Florida's economy strong.

Every day we work to improve the way we do business in order to serve you better. For information about our services, please log onto **www.myfloridalicense.com**. There you can find more information about our divisions and the regulations that impact you, subscribe to department newsletters and learn more about the Department's initiatives.

Our mission at the Department is: License Efficiently, Regulate Fairly. We constantly strive to serve you better so that you can serve your customers. Thank you for doing business in Florida, and congratulations on your new license!



STATE OF FLORIDA
DEPARTMENT OF BUSINESS AND
PROFESSIONAL REGULATION

AU295        ISSUED: 09/13/2015

AUCTIONEER
STAMPLER, HARRY P

IS LICENSED under the provisions of Ch 468 FS.
Expiration date : NOV 30, 2017        L1509130002758

---

DETACH HERE

RICK SCOTT, GOVERNOR                                    KEN LAWSON, SECRETARY

## STATE OF FLORIDA
### DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION
### FLORIDA BOARD OF AUCTIONEERS

**LICENSE NUMBER**

AU295

The AUCTIONEER
Named below IS LICENSED
Under the provisions of Chapter 468 FS.
Expiration date: NOV 30, 2017

STAMPLER, HARRY P
1914 TIGERTAIL BLVD
DANIA          FL 33004





ISSUED:   09/13/2015        DISPLAY AS REQUIRED BY LAW        SEQ # L1509130002758

**ACORD®**

# CERTIFICATE OF LIABILITY INSURANCE

| DATE (MM/DD/YYYY) |
|---|
| 09/27/2016 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT:  If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed.  If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | | CONTACT NAME: | Thomas C Cundy, Jr. | |
|---|---|---|---|---|
| TCC Associates, Inc. PO Box 11975 Fort Lauderdale, FL 33339-1975 Thomas C Cundy, Jr. | | PHONE (A/C, No, Ext): 954-565-1117 | | FAX (A/C, No): 954-565-1131 |
| | | E-MAIL ADDRESS: | | |
| | | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| INSURED    Harry P. Stampler, Inc. dba Stampler Auctions PO Box 2975 Ocala, FL 34478 | | INSURER A : RetailFirst Insurance Company | | |
| | | INSURER B : Nautilus Insurance Co | | |
| | | INSURER C : | | |
| | | INSURER D : | | |
| | | INSURER E : | | |
| | | INSURER F : | | |

**COVERAGES**          **CERTIFICATE NUMBER:**          **REVISION NUMBER:**

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| B | **GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ 1,000,000 |
| | X   COMMERCIAL GENERAL LIABILITY | | | NN684561 | 09/26/2016 | 09/26/2017 | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | CLAIMS-MADE   X   OCCUR | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $ Included |
| | X   POLICY    PRO- JECT    LOC | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ALL OWNED AUTOS    SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | HIRED AUTOS    NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (PER ACCIDENT) | $ |
| | | | | | | | | $ |
| | **UMBRELLA LIAB**    OCCUR | | | | | | EACH OCCURRENCE | $ |
| | **EXCESS LIAB**    CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | DED    RETENTION $ | | | | | | | $ |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y / N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? **(Mandatory in NH)** If yes, describe under DESCRIPTION OF OPERATIONS below | N / A | | 520-25539-0000 | 08/23/2016 | 08/23/2017 | X   WC STATU- TORY LIMITS    OTH- ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES  (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

Auctioneers

| CERTIFICATE HOLDER                                    US BANK | CANCELLATION |
|---|---|
| US Bankruptcy Court 51 SW 1 Avenue; #1204 Miami, FL 33130 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. AUTHORIZED REPRESENTATIVE |

© 1988-2010 ACORD CORPORATION.  All rights reserved.

ACORD 25 (2010/05)          The ACORD name and logo are registered marks of ACORD

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

.

Auctioneers Bond No: FS9044851-15

KNOW ALL BY THESE PRESENTS, THAT I/we, **Harry P. Stampler, Inc.,  6740 Taft Street, Hollywood, FL 33024-3903** as Principal and the Great American Insurance Company as Surety, are held and firmly bound unto the **United States of America, as Obligee** for the benefit of any trustee in bankruptcy appointed by said U. S. Trustee in the sum of **Five Hundred Thousand and no/100—($500,000.00) dollars** to the payment of which we jointly and severally bind ourselves, our heirs, administrators and assigns.

THE CONDITION OF THIS OBLIGATION IS SUCH THAT, Whereas the said **Harry P. Stampler, Inc.** as auctioneer is employed by a Trustee in bankruptcy and the aforesaid Auctioneer shall fully account to the Trustee employing him for all the assets coming into his possession and shall further account to such Trustee for all monies received by him from the sale of said assets, then this obligation shall be void, otherwise to remain in full force and effect.

IT IS FURTHER UNDERSTOOD THAT THIS BOND IS CONDITIONED UPON: (1) The faithful and prompt accounting for all monies and property, which may come into the possession of the Auctioneer; (2) Compliance with all rules, orders and decrees of the court, and (3) The faithful performance of duties in all respects.

IT IS THE INTENTION OF THE PARTIES HEREIN, to give this bond to the Office United States Trustee in behalf of and for the benefit of any and all trustees in bankruptcy who may employ the said **Harry P. Stampler, Inc.** as Auctioneer in the sales of assets in bankruptcy and that in any action to realize upon the bond herby given, any Trustee as aforesaid by bringing an action to realize thereon with the same right, force and effect in laws as though his name were explicitly written herein and to this we do hereby bind ourselves.

THIS BOND, however, is subject to the following conditions.  This bond shall terminate sixty (60) days after the receipt by the Office of the United States Trustee, 51 SW 1st Avenue, Suite 1204, Miami, FL 33130 of written notice from the Surety of its desire to terminate this bond, or upon receipt by the Surety of a written request from the United States Trustee to terminate this bond.  The said United States Trustee shall give to the Surety written notice of any loss hereunder as soon as possible after the said agency shall learn of such loss.

**THIS BOND becomes effective the 16th day of March, 2016 for a period ending the 16th day of March, 2017.**

The Surety shall not be liable under this bond for more than the aggregate sum of Five Hundred Thousand and no/100---($500,000.00) dollars regardless of the number of defaults by said Auctioneer as Principal under this bond.

This bond shall remain in full force and effect with respect to all cases pending in this court, on and after date hereof, in which the said principal has been retained as Auctioneer until the Surety has terminated further liability after sixty (60) days written notice.

Signed and sealed this 2nd,  day of March, 2016

**Harry P. Stampler, Inc.**

**By:**_____

**Harry P. Stampler**

Great American Insurance Company

By: _____

Madalyn H. Seiffert, Attorney-In-Fact

# GREAT AMERICAN INSURANCE COMPANY®

**Administrative Office: 301 E 4TH STREET ● CINCINNATI, OHIO 45202 ● 513-369-5000 ● FAX 513-723-2740**

The number of persons authorized by
this power of attorney is not more than    **EIGHT**

No. 0  20499

## POWER OF ATTORNEY

**KNOW ALL MEN BY THESE PRESENTS:** That the GREAT AMERICAN INSURANCE COMPANY, a corporation organized and existing under and by virtue of the laws of the State of Ohio, does hereby nominate, constitute and appoint the person or persons named below, each individually if more than one is named, its true and lawful attorney-in-fact, for it and in its name, place and stead to execute on behalf of the said Company, as surety, any and all bonds, undertakings and contracts of suretyship, or other written obligations in the nature thereof; provided that the liability of the said Company on any such bond, undertaking or contract of suretyship executed under this authority shall not exceed the limit stated below.

| Name | | Address | Limit of Power |
|---|---|---|---|
| MADALYN H. SEIFFERT | CARRIE J. KEY | ALL OF | ALL |
| BARRY C. SELLARS | KEITH H. DILLON | MARIETTA, GEORGIA | $100,000,000 |
| R. STAN HODGES, JR | EMMETT H. HALL | | |
| CAROLYN F. SMITH | CHRISTY LACKEY | | |

This Power of Attorney revokes all previous powers issued on behalf of the attorney(s)-in-fact named above.
IN WITNESS WHEREOF the GREAT AMERICAN INSURANCE COMPANY has caused these presents to be signed and attested by its appropriate officers and its corporate seal hereunto affixed this    18TH    day of    AUGUST    ,    2015    .

Attest

GREAT AMERICAN INSURANCE COMPANY

*Assistant Secretary*

*Divisional Senior Vice President*

DAVID C. KITCHIN (877-377-2405)

STATE OF OHIO, COUNTY OF HAMILTON - ss:
On this    18TH    day of    AUGUST    ,    2015   , before me personally appeared DAVID C. KITCHIN, to me known, being duly sworn, deposes and says that he resides in Cincinnati, Ohio, that he is a Divisional Senior Vice President of the Bond Division of Great American Insurance Company, the Company described in and which executed the above instrument; that he knows the seal of the said Company; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by authority of his office under the By-Laws of said Company, and that he signed his name thereto by like authority.



**Susan A. Kohorst**
**Notary Public, State of Ohio**
**My Commission Expires 05-18-2020**

This Power of Attorney is granted by authority of the following resolutions adopted by the Board of Directors of Great American Insurance Company by unanimous written consent dated June 9, 2008.

*RESOLVED: That the Divisional President, the several Divisional Senior Vice Presidents, Divisional Vice Presidents and Divisonal Assistant Vice Presidents, or any one of them, be and hereby is authorized, from time to time, to appoint one or more Attorneys-in-Fact to execute on behalf of the Company, as surety, any and all bonds, undertakings and contracts of suretyship, or other written obligations in the nature thereof; to prescribe their respective duties and the respective limits of their authority; and to revoke any such appointment at any time.*

*RESOLVED FURTHER: That the Company seal and the signature of any of the aforesaid officers and any Secretary or Assistant Secretary of the Company may be affixed by facsimile to any power of attorney or certificate of either given for the execution of any bond, undertaking, contract of suretyship, or other written obligation in the nature thereof, such signature and seal when so used being hereby adopted by the Company as the original signature of such officer and the original seal of the Company, to be valid and binding upon the Company with the same force and effect as though manually affixed.*

## CERTIFICATION

I, STEPHEN C. BERAHA, Assistant Secretary of Great American Insurance Company, do hereby certify that the foregoing Power of Attorney and the Resolutions of the Board of Directors of June 9, 2008 have not been revoked and are now in full force and effect.

Signed and sealed this    2nd    day of    March    ·    2016    ·

*Assistant Secretary*

# PointeNorth Insurance Group, LLC

PO Box 724728
Atlanta, GA  31139
(770)858-7540

# INVOICE

| Customer | Stampler, Harry P. |
| | 26542 |
| Date | 06/08/2016 |
| Customer Service | Hodges & Associates<br>Lynne Seiffert |
| Page | 1 of 1 |

| Payment Information | |
| --- | --- |
| Invoice Summary | 150.00 |
| Payment Amount | |
| Payment for: | Invoice#1008207 |
| MS9827464 | |

Stampler, Harry P.
Harry P. Stampler, Inc.
6740 Taft Street
Hollywood, FL 33024-3903

Thank You

✂ - - - - - - - - - - - - - - - - - - - - - Please detach and return with payment - - - - - - - - - - - - - - - - - - - -

Customer: Stampler, Harry P.

| Invoice | Effective | Transaction | Description | Amount |
| --- | --- | --- | --- | --- |
| 1008207 | 06/08/2016 | New business | Policy #MS9827464  06/08/2016-06/15/2018<br>Great American Insurance Company<br>$2K Third Party NY - New business<br>Due Date:  6/8/2016 | 150.00 |

| | Total |
| --- | --- |
| | 150.00 |

Thank You

| PointeNorth Insurance Group, LLC | | Date |
| --- | --- | --- |
| PO Box 724728<br>Atlanta, GA  31139 | (770)858-7540<br>info@pointenorthins.com | 06/08/2016 |

THIRD PARTY BOND

BOND NO: MS982-7464

KNOW ALL MEN BY THESE PRESENTS:

That we Harry Stampler                                    as Principal and the Great
American Insurance Company, a Corporation organized and existing under and by virtue of
the laws of the State of Ohio, with an office at 251 Salina Meadows Parkway, Syracuse,
New York 13212, as Surety are held and firmly bound unto the City of New York, as Obligee
or to any aggrieved person who may be injured by the Principal as hereinafter provided
in the penal sum of Two Thousand & No/100    ($ 2,000. )DOLLARS, lawful
money of the United States of America; for which payment, well and truly to be made, we
bind ourselves, our heirs, executors, administrators, successors and assigns, jointly
and severally, firmly by these presents.

Signed, sealed and dated this 8th day of June          2016

WHEREAS, the Principal has applied to the Department of Consumer Affairs of the City
of New York for a License to engage in an carry on the business and occupation of an
Auctioneer.

NOW, THEREFORE, the condition of the above obligation is such, that if the above
bounden Principal shall well and truly comply with the terms, convenants and conditions
of said License and any renewals thereof and shall well and truly carry on said business
in pursuance therof shall in all things obey and conform to the laws of the State of
New York, or local laws of the City of New York, resolutions of the City Council of the
said City of New York and the regulations of the Department of Consumer Affairs now in
force or which may hereafter be adopted relating to said business in the said City,
and shall indemnify and save harmless the Obligee or any aggrieved person from all loss
and damage that they shall suffer by reason of said Principal's failure to comply with
said laws, regulations and resolutions, then this obligation shall be null and void,
otherwise to remain in full force and effect.

It is agreed that this bond becomes effective on the date hereof and will continue in
force until terminated as hereinafter provided.  It is further agreed that the indemnity
provided hereunder shall be in the penal sum of this bond for every license year or
part thereof during which it shall continue in force, provided, however, that the
aggregate liability of Surety as to any one license year or part thereof shall not exceed
the said penal sum.

This bond may be terminated by written notice given by the Surety or Principal to each
other and to the Commission of Consumer Affairs for the City of New York by registered
mail at least sixty days prior to the termination date specified in such notice and
upon giving such notice, the Surety shall be discharged from all liability under this
bond for any act or omission of the Principal occurring after such termination date.

Any person aggrieved by the Principal's breach of the conditions of this bond may pro-
ceed against the Principal or Surety herein, or both to recover damages.  Successive
actions may be brought against this bond for successive breaches of its conditions;
provided, however, that the liability of the Surety for one or more breaches of the
conditions of this bond shall not exceed in the aggregate the penal sum hereof for any
license year or part of license year in which this bond terminated.

Harry Stampler                                    Great American Insurance Company
Principal

BY:                                               BY: Madalyn H. Seiffert
                                                  Madalyn H. Seiffert, Attorney-In-Fact

## ACKNOWLEDGMENT OF CORPORATE SURETY

STATE OF GEORGIA

COUNTY OF COBB

ON June 8, 2016 BEFORE ME PERSONALLY CAME MADALYN H. SEIFFERT TO ME KNOWN, WHO, BEING BY ME DULY SWORN, DID DEPOSE AND SAY; THAT SHE RESIDES IN THE CITY OF KENNESAW, GEORGIA; THAT SHE IS THE ATTORNEY-IN-FACT OF THE GREAT AMERICAN INSURANCE COMPANY.

THE CORPORATION WHICH EXECUTED THE WITHIN INSTRUMENT AS THE SURETY; AND ALSO KNOWN TO ME TO BE PERSON WHO EXECUTED IT ON BEHALF OF THE CORPORATION THEREIN NAMED; AND SHE ACKNOWLEDGED TO ME THAT SUCH CORPORATION EXECUTED THE SAME

_Judy Lee Cantrell_
Notary Public

JUDY LEE CANTRELL
MY COMMISSION EXPIRES
NOTARY PUBLIC
MARCH 4, 2020
COBB COUNTY, GEORGIA

THIRD PARTY BOND

BOND NO: MS153-49-07

KNOW ALL MEN BY THESE PRESENTS:

That we **Harry P. Stampler, Inc d/b/a Stampler Auctions** as Principal and the Great American Insurance Company, a Corporation organized and existing under and by virture of the laws of the State of Ohio, with an office at 251 Salina Meadows Parkway, Syracuse, New York 13212, as Surety are held and firmly bound unto the City of New York, as Obligee or to any aggrieved person who may be injured by the Principal as hereinafter provided in the penal sum of **Two Thousand & 00/100 ($ 2,000.00 )** DOLLARS, lawful money of the United States of America; for which payment, well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

Signed, sealed and dated this **13th** day of **December**, **2016**.

WHEREAS, the Principal has applied to the Department of Consumer Affairs of the City of New York for a License to engage in an carry on the business and occupation of an Auctioneer.

NOW, THEREFORE, the condition of the above obligation is such, that if the above bounden Principal shall well and truly comply with the terms, convenants and conditions of said License and any renewals thereof and shall well and truly carry on said business in pursuance therof shall in all things obey and conform to the laws of the State of New York, or local laws of the City of New York, resolutions of the City Council of the said City of New York and the regulations of the Department of Consumer Affairs now in force or which may hereafter be adopted relating to said business in the said City, and shall indemnify and save harmless the Obligee or any aggrieved person from all loss and damage that they shall suffer by reason of said Principal's failure to comply with said laws, regulations and resolutions, then this obligation shall be null and void, otherwise to remain in full force and effect.

It is agreed that this bond becomes effective on the date hereof and will continue in force until terminated as hereinafter provided. It is further agreed that the indemnity provided hereunder shall be in the penal sum of this bond for every license year or part thereof during which it shall continue in force, provided, however, that the aggregate liability of Surety as to any one license year or part thereof shall not exceed the said penal sum.

This bond may be terminated by written notice given by the Surety or Principal to each other and to the Commission of Consumer Affairs for the City of New York by registered mail at least sixty days prior to the termination date specified in such notice and upon giving such notice, the Surety shall be discharged from all liability under this bond for any act or omission of the Principal occurring after such termination date.

Any person aggrieved by the Principal's breach of the conditions of this bond may proceed against the Principal or Surety herein, or both to recover damages. Successive actions may be brought against this bond for successive breaches of its conditions; provided, however, that the liability of the Surety for one or more breaches of the conditions of this bond shall not exceed in the aggregate the penal sum hereof for any license year or part of license year in which this bond terminated.

Great American Insurance Company

_____
Principal

BY: _____

BY: _____
Madalyn H. Seiffert, Attorney In-Fact

ACKNOWLEDGMENT OF CORPORATE SURETY

STATE OF GEORGIA

COUNTY OF COBB

ON December 13, 2016  BEFORE ME PERSONALLY CAME MADALYN  H.
SEIFFERT TO ME KNOWN, WHO, BEING BY ME DULY SWORN, DID DEPOSE
AND SAY; THAT SHE RESIDES IN THE CITY OF KENNESAW, GEORGIA; THAT
SHE IS THE ATTORNEY-IN-FACT OF THE GREAT AMERICAN INSURANCE
COMPANY.

THE CORPORATION WHICH EXECUTED THE WITHIN INSTRUMENT AS THE
SURETY; AND ALSO KNOWN TO ME TO BE PERSON WHO EXECUTED IT ON
BEHALF OF THE CORPORATION THEREIN NAMED; AND SHE
ACKNOWLEDGED TO ME THAT SUCH CORPORATION EXECUTED THE SAME

_Judy Lee Cantrell_
Notary Public

# GREAT AMERICAN INSURANCE COMPANY®

**Administrative Office: 301 E 4TH STREET • CINCINNATI, OHIO 45202 • 513-369-5000 • FAX 513-723-2740**

The number of persons authorized by
this power of attorney is not more than    EIGHT

No. 0 20805

## POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS: That the GREAT AMERICAN INSURANCE COMPANY, a corporation organized and existing under and by virtue of the laws of the State of Ohio, does hereby nominate, constitute and appoint the person or persons named below, each individually if more than one is named, its true and lawful attorney-in-fact, for it and in its name, place and stead to execute on behalf of the said Company, as surety, any and all bonds, undertakings and contracts of suretyship, or other written obligations in the nature thereof; provided that the liability of the said Company on any such bond, undertaking or contract of suretyship executed under this authority shall not exceed the limit stated below.

| Name | Address | Limit of Power |
|---|---|---|
| FREDERICK R. MITCHELL    CHRISTY LACKEY | ALL OF | ALL |
| MADALYN H. SEIFFERT    KARIN MAYNARD | MARIETTA, GEORGIA | $100,000,000 |
| BARRY C. SELLARS | | |
| R. STAN HODGES, JR | | |
| CAROLYN F. SMITH | | |
| KEITH H. DILLON | | |

This Power of Attorney revokes all previous powers issued on behalf of the attorney(s)-in-fact named above.

IN WITNESS WHEREOF the GREAT AMERICAN INSURANCE COMPANY has caused these presents to be signed and attested by its appropriate officers and its corporate seal hereunto affixed this        15TH        day of        JULY        , 2016 .

Attest                                                                 GREAT AMERICAN INSURANCE COMPANY



*Assistant Secretary*

DAVID C. KITCHIN (877-377-2405)

*Divisional Senior Vice President*

STATE OF OHIO, COUNTY OF HAMILTON - ss:

On this        15TH        day of        JULY        , 2016 , before me personally appeared DAVID C. KITCHIN, to me known, being duly sworn, deposes and says that he resides in Cincinnati, Ohio, that he is a Divisional Senior Vice President of the Bond Division of Great American Insurance Company, the Company described in and which executed the above instrument; that he knows the seal of the said Company; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by authority of his office under the By-Laws of said Company, and that he signed his name thereto by like authority.

**Susan A. Kohorst**
**Notary Public, State of Ohio**
**My Commission Expires 05-18-2020**

*Susan A Kohorst*

This Power of Attorney is granted by authority of the following resolutions adopted by the Board of Directors of Great American Insurance Company by unanimous written consent dated June 9, 2008.

*RESOLVED: That the Divisional President, the several Divisional Senior Vice Presidents, Divisional Vice Presidents and Divisonal Assistant Vice Presidents, or any one of them, be and hereby is authorized, from time to time, to appoint one or more Attorneys-in-Fact to execute on behalf of the Company, as surety, any and all bonds, undertakings and contracts of suretyship, or other written obligations in the nature thereof; to prescribe their respective duties and the respective limits of their authority; and to revoke any such appointment at any time.*

*RESOLVED FURTHER: That the Company seal and the signature of any of the aforesaid officers and any Secretary or Assistant Secretary of the Company may be affixed by facsimile to any power of attorney or certificate of either given for the execution of any bond, undertaking, contract of suretyship, or other written obligation in the nature thereof, such signature and seal when so used being hereby adopted by the Company as the original signature of such officer and the original seal of the Company, to be valid and binding upon the Company with the same force and effect as though manually affixed.*

## CERTIFICATION

I, STEPHEN C. BERAHA, Assistant Secretary of Great American Insurance Company, do hereby certify that the foregoing Power of Attorney and the Resolutions of the Board of Directors of June 9, 2008 have not been revoked and are now in full force and effect.

Signed and sealed this        **13th**        day of        **December**        , **2016** .



*Assistant Secretary*

# INVOICE

**PointeNorth Insurance Group, LLC**

PO Box 724728
Atlanta, GA 31139
(770)858-7540

| Customer | Stampler, Harry P. | |
|---|---|---|
| | | 26542 |
| Date | 12/13/2016 | |
| Customer Service | Hodges & Associates Lynne Seiffert | |
| Page | 1 of 1 | |

| Payment Information | |
|---|---|
| Invoice Summary | 150.00 |
| Payment Amount | |
| Payment for: | Invoice#1077936 |
| MS1534907 | |

Thank You

Stampler, Harry P.
Harry P. Stampler, Inc.
6740 Taft Street
Hollywood, FL 33024-3903

✂ - - - - - - - - - - - - - - - - - - Please detach and return with payment - - - - - - - - - - - - - - - - - - - - - - - -

Customer: Stampler, Harry P.

| Invoice | Effective | Transaction | Description | Amount |
|---|---|---|---|---|
| 1077936 | 12/13/2016 | New business | Policy #MS1534907 12/13/2016-12/13/2018<br>Great American Insurance Company<br>$2K Third Party NYC - New business<br>Due Date: 12/13/2016 | 150.00 |

| | Total |
|---|---|
| | 150.00 |

Thank You

| **PointeNorth Insurance Group, LLC** | | Date |
|---|---|---|
| PO Box 724728 | (770)858-7540 | 12/13/2016 |
| Atlanta, GA 31139 | info@pointenorthins.com | |

## Exhibit B

## BIDDING PROCEDURES

Set forth below are the bidding and auction procedures (the "**Bidding Procedures**") to be employed in connection with the sale of the Circus Assets (as defined below) of The Big Apple Circus, Ltd., the debtor and debtor in possession (the "**Debtor**") in its voluntary case (the "**Bankruptcy Case**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") pending in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") (Case No. 16-13297 (SHL)).  Pursuant to the Bidding Procedures, the Debtor and its auctioneer, Stampler Auctions ("**Stampler**"), shall solicit bids for the purchase of substantially all of the Circus Assets, conduct an auction for substantially all of the Circus Assets (the "**Phase I Auction**") if the Debtor receives two or more Qualified Bids (as defined below), and thereafter, seek entry of an order (the "**Sale Order**"), after notice and hearing (the "**Sale Approval Hearing**"), authorizing and approving the sale of the Circus Assets to the Successful Bidder(s) (as defined below).  Any Circus Assets not purchased through the Phase I Auction shall be sold through a subsequent public auction (the "**Phase II Auction**") in a manner and at a time and place to be determined by the Debtor, in consultation with Stampler.

On December 23, 2016, the Debtor filed with the Bankruptcy Court the "Debtor's Motion for Entry of (I) an Order (A) Approving Bidding Procedures For the Sale of the Debtor's Circus Assets, (B) Authorizing the Employment and Retention of Stampler Auctions as Auctioneer, (C) Scheduling Auction and Sale Approval Hearing, (D) Approving the Form and Manner of Sale Notice, and (E) Granting Related Relief, and (II) an Order (A) Approving the Sale of the Debtor's Circus Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests and (B) Granting Related Relief' (the "**Sale Motion**").  On January [__], 2017, the Bankruptcy Court entered an order approving the Bidding Procedures and scheduling **February 14, 2017 at 10:00 a.m. (Eastern Time)** as the date and time that the Sale Approval Hearing will be held.

### A.    Assets to be Sold

The Debtor seeks to sell its circus equipment and other related personal property as well as the intellectual property associated with the Debtor's performance unit, as identified on **Exhibit A** hereto (collectively, the "**Circus Assets**").  Except as otherwise provided in definitive documentation with respect to any sale of the Circus Assets, all of the Debtor's rights, title and interest in and to the Circus Assets shall be sold free and clear of all liens, claims, encumbrances, rights, remedies, restrictions, pledges, interests, charges, options and contractual commitments of any kind or nature whatsoever, whether arising before or after the date that the Debtor filed the Bankruptcy Case in the Bankruptcy Court, whether at law or in equity, in accordance with section 363 of the Bankruptcy Code.

### B.    Bid Deadline

Any entity wanting to participate in the Phase I Auction (a "**Potential Bidder**") must submit a Qualified Bid (as defined below) in writing to (i) Stampler Auctions, 6740 Taft Street, Hollywood, Florida 33024, Attention: Harry Stampler (stamplerauctions@aol.com and

info@stamplerauctions.com); (ii) The Big Apple Circus, Ltd., One MetroTech Center North, Floor 3, Brooklyn, New York 11201, Attention: Will Maitland Weiss (wmweiss@bigapplecircus.org); (iii) counsel for the Debtor, Debevoise & Plimpton LLP, 919 Third Avenue, New York, New York 10022, Attention: Christopher Updike (bigapplecircus@debevoise.com); (iv) counsel for the statutory committee of unsecured creditors (the "**Creditors' Committee**"), Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, New York 10017-2024, Attention: Robert J. Feinstein (rfeinstein@pszjlaw.com); and (v) the Office of the Attorney General, Division of Social Justice, Charities Bureau, 120 Broadway, New York, New York, 10271, Attention: James G. Sheehan (james.sheehan@AG.ny.gov); **so as to be <u>actually received</u> on or before February 3, 2017 at 5:00 p.m. (Eastern Time)** (the "**Bid Deadline**"), which deadline may be extended by the Debtor, in consultation with Stampler and the Creditors' Committee. No bids submitted after the Bid Deadline shall be considered by the Debtor.

### C.    <u>Bid Requirements</u>

Only bids for the Circus Assets that constitute "Qualified Bids" will be considered by the Debtor. A "Qualified Bid" is an offer to purchase the Circus Assets that: (i) identifies the Circus Assets to be purchased and the consideration to be paid for such Circus Assets, (ii) identifies the Potential Bidder and the officer(s) or authorized agent(s) who will appear on behalf of such Potential Bidder, (iii) explains the proposed use of the Circus Assets, (iv) provides evidence, satisfactory to the Debtor in its reasonable discretion, of the Potential Bidder's financial wherewithal and operational ability to consummate the proposed transaction, (v) provides that such offer is not subject to any due diligence or financing contingency or further board or similar approval, (vi) provides for a good faith deposit (a "**Good Faith Deposit**") to be submitted to the Debtor on or before the Bid Deadline in an amount equal to ten percent (10%) of the proposed purchase price, but in no event less than $50,000, (vii) provides that such offer is irrevocable until and unless the Debtor accepts higher or otherwise better Qualified Bid and the Potential Bidder is not selected as the Back-Up Bidder (as defined below); (viii) includes a copy of a board resolution or similar document demonstrating the authority of the Potential Bidder to submit an offer to purchase the Circus Assets on the terms proposed by such Potential Bidder; (ix) identifies any proposed revisions to the form of order approving the proposed transaction that was attached to the Sale Motion; and (x) includes a proposed asset purchase agreement or identifies any proposed revisions to the form of asset purchase agreement provided by the Debtor, if provided.

As soon as practicable after a Potential Bidder submits a bid, the Debtor will determine whether such bid is a Qualified Bid and will notify such Potential Bidder of such determination. The Debtor reserves the right, in consultation with the Creditors' Committee, to consider bids for less than a substantial portion of the Circus Assets and bids that do not conform to one or more of the requirements specified in this "Bid Requirements" section, and may deem such bids to be Qualified Bids notwithstanding such requirements. The Debtor, in consultation with the Creditors' Committee, may aggregate separate bids from unaffiliated Potential Bidders to create one Qualified Bid, <u>provided</u>, <u>however</u>, that all such Potential Bidders shall remain subject to the provisions of section 363(n) of the Bankruptcy Code regarding collusive bidding.

D.    **Due Diligence**

Through and including the Bid Deadline, the Debtor will afford Potential Bidders the opportunity to conduct a due diligence investigation regarding the Circus Assets in the manner determined by the Debtor, in its business judgment, to be reasonable and appropriate, subject to execution of an appropriate confidentiality agreement, as necessary. The Debtor shall not be obligated to furnish access to any information of any kind whatsoever regarding the Circus Assets after the Bid Deadline.

E.    **The Phase I Auction**

If two or more Qualified Bids are received on or before the Bid Deadline, the Debtor shall conduct the Phase I Auction commencing on **February 7, 2017 at 11:00 a.m. (Eastern Time)**, at the offices of Debevoise & Plimpton LLP, 919 Third Avenue, New York, New York 10022, to determine the highest or otherwise best bid for the Circus Assets (the "**Successful Bid**"). The Phase I Auction may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Phase I Auction. The Debtor, in consultation with the Creditors' Committee, reserves the right to cancel the Phase I Auction.

F.    **Phase I Procedures**

Only the Debtor, Stampler, any entity that has submitted a Qualified Bid (a "**Qualified Bidder**"), the Office of the United States Trustee for the Southern District of New York (the "**United States Trustee**"), the New York State Attorney General, the Creditors' Committee, and such entities' respective advisors are eligible to participate in the Phase I Auction. All participants shall appear in person, by telephone, or through a duly authorized representative. Prior to the Phase I Auction, the Debtor, in consultation with the Creditors' Committee, shall select the Qualified Bid that, in its business judgment, reflects the highest or otherwise best bid for the Circus Assets as the starting bid (the "**Starting Auction Bid**") and advise all participants in the Phase I Auction of the terms of the Starting Auction Bid. Qualified Bidders may then submit bids that are better and higher than the Starting Auction Bid in increments to be announced at the Phase I Auction (collectively, the "**Overbid Increments**"). The Debtor reserves the right, in consultation with Stampler and the Creditors' Committee and in the Debtor's business judgment, to announce reductions or increases to the Overbid Increments at any time during the Phase I Auction. The Phase I Auction may include individual negotiations with the Qualified Bidders and/or open bidding in the presence of all other Qualified Bidders. Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale. The Debtor, in consultation with the Creditors' Committee, shall have the right to conduct any number of auctions during the Phase I Auction to accommodate Qualified Bids for certain, but less than all, of the Circus Assets if the Debtor determines, in its business judgment, that such process would be in the best interests of the Debtor's estate. The Debtor, in consultation with the Creditors' Committee, shall determine whether any Qualified Bid is the Successful Bid pursuant to the "Determination of Successful Bid" section below.

As soon as practicable following the determination of the Successful Bid, the Debtor shall file the Successful Bidder Notice with the Bankruptcy Court identifying the

3

Qualified Bidder that submits the Successful Bid (the "**Successful Bidder**") and serve such notice by telecopy, electronic mail transmission, or overnight delivery, upon the following entities: (i) the United States Trustee, (ii) counsel to the Creditors' Committee, (iii) the New York State Attorney General, (iv) all other parties that have filed notices of appearance in the Bankruptcy Case, and (v) all Qualified Bidders that have submitted a Qualified Bid.

The Debtor, in consultation with the Creditors' Committee, may adjourn, continue, or terminate the Phase I Auction, and reserve the right to adopt other and further rules and procedures for the Phase I Auction that, in its business judgment will better promote the goals of the Phase I Auction.  Absent irregularities in the conduct of the Phase I Auction, or reasonable and material confusion during the bidding, the Court will not consider bids after the Phase I Auction has been closed.

## G.    Determination of Successful Bid

The Debtor shall review each Qualified Bid that has been submitted and determine, in the Debtor's reasonable discretion, in consultation with the Creditors' Committee, whether any Qualified Bid is the Successful Bid.  In making such determination, the Debtor shall consider any factor that it deems relevant, including, without limitation, the purchase price, the Debtor's mission, and those factors affecting the speed and certainty of consummating the proposed sale of the Circus Assets.

As soon as practicable following notification of the determination of the Successful Bid, but in no event later than the fifth (5th) business day after such notification, the Successful Bidder must execute a definitive agreement to purchase the Circus Assets (an "**Asset Purchase Agreement**"), to the extent not previously executed, in all respects acceptable to the Debtor.

The presentation of the Successful Bid to the Court for approval does not constitute the Debtor's acceptance of such bid.  The Debtor will be deemed to have accepted the Successful Bid only when such bid has been approved by the Court pursuant to the Sale Order and the sale of the Circus Assets proposed in such bid has been consummated.

## H.    Back-Up Bidder

If the Phase I Auction is conducted, the Qualified Bidder(s) with the next highest or otherwise best Qualified Bid for the Circus Assets at the Phase I Auction (the "**Back-Up Bid**") shall be required to serve as the back-up bidder(s) (the "**Back-Up Bidder**") for such Circus Assets and keep such Back-Up Bid(s) open and irrevocable until the first to occur of (i) thirty (30) days after the completion of the Phase I Auction, (ii) consummation of the transaction with the Successful Bidder, or (iii) the Back-Up Bidder's receipt of notice from the Debtor of the release by the Debtor of the Back-Up Bidder's obligations.  Following the Sale Approval Hearing, if the Successful Bidder fails to consummate the approved transaction because of a breach or failure to perform on the part of such Successful Bidder or otherwise, the Back-Up Bidder will be deemed to be the new Successful Bidder, and the Debtor will be authorized, but not required, to consummate the sale with the Back-Up Bidder without further order of the Court.

### I.    Reservation of Rights

1.    Determination of Successful Bid

The Debtor reserves the right to (a) determine, in its reasonable discretion, whether any Qualified Bid is a Successful Bid and (b) reject, at any time prior to entry of the Sale Order by the Bankruptcy Court, without liability, any bid that the Debtor, in its reasonable discretion determines to be (i) inadequate or insufficient, (ii) not in conformity with these Bidding Procedures, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, or applicable state law, or (iii) contrary to the best interests of the Debtor and its estate.  At or before the Sale Approval Hearing, the Debtor may impose such other terms and conditions on the sale of the Circus Assets as the Debtor, in consultation with the Creditors' Committee, may determine to be in the best interests of the Debtor and its estate.

2.    Modification of Bidding Procedures

The Debtor reserves the right to modify the Bidding Procedures without the need for any further order of the Bankruptcy Court, including, without limitation, (a) extending the deadlines set forth in the Bidding Procedures, (b) adjourning the Phase I Auction and the Sale Approval Hearing, and (c) withdrawing or adding any assets from the sale process at any time prior to or during the Phase I Auction.

### J.    Disposition of Good Faith Deposits

All Good Faith Deposits shall be held in a segregated trust account by Stampler. Good Faith Deposits shall be returned without interest to each bidder not selected by the Debtor as the Successful Bidder or the Back-Up Bidder by no later than the tenth (10th) business day following the conclusion of the Phase I Auction.  The Good Faith Deposit of the Back-Up Bidder shall be held by Stampler until ten (10) business days after the closing of sale transaction with the Successful Bidder or termination of the Back-Up Bid as provided above.  If the Successful Bidder fails to consummate the purchase of the Circus Assets, or any part thereof, because of a breach, default or unexcused failure to perform on the part of such Successful Bidder, the Debtor will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, and such Good Faith Deposit shall irrevocably become property of the Debtor without affecting or reducing any of the Debtor's other rights or claims against such Successful Bidder. If a Successful Bidder consummates the purchase of the Circus Assets, the Good Faith Deposit deposited by such Successful Bidder shall be applied as a credit toward the purchase price for the Circus Assets.

### K.    As Is, Where Is

The sale of the Circus Assets shall be on an "as is, where is, and with all faults" basis and without representations or warranties of any kind, nature, or description by the Debtor, its estate, or its agents or representatives.  Except as otherwise expressly provided in these Bidding Procedures or any applicable Asset Purchase Agreement, by submitting a bid, each Potential Bidder that submits a bid shall be deemed to acknowledge and represent that it (i) has

had an opportunity to conduct any and all reasonable due diligence regarding the Circus Assets prior to making its bid, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Circus Assets in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Circus Assets, or the completeness of any information provided in connection therewith.

### L.    Sale Approval Hearing

The sale of the Circus Assets and applicable Asset Purchase Agreement shall be presented for authorization and approval by the Bankruptcy Court at the Sale Approval Hearing, which is scheduled to be held on **February 14, 2017 at 10:00 a.m. (Eastern Time)** at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 701, New York, New York 10004, before the Honorable Sean H. Lane, United States Bankruptcy Judge.  The Sale Approval Hearing may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Approval Hearing.

### M.    Phase II Procedures

Following the consummation of the sale of the Circus Assets to the Successful Bidder or cancellation of the Phase I Auction, Stampler will conduct the Phase II Auction, which may be a live public auction, for any remaining unsold Circus Assets.  No later than twenty-one (21) days after the last sale of the Circus Assets is closed, Stampler will provide the Debtor with a report of such sale(s) (the "**Sale Report**"), which Sale Report shall be filed with the Court and served on the United States Trustee, the Creditors' Committee, and any other parties requesting notice pursuant to Bankruptcy Rule 2002.  The Sale Report will include: (a) the time, date, and place of each sale; (b) the gross dollar amount of each sale; (c) if the Circus Assets were sold in lots, a description of the items in each lot, and any bulk bids received; (d) an itemized statement of Stampler's expenditures, disbursements, and commissions; (e) the names and addresses (to include city, state, country, and zip code) of all purchasers; (f) the approximate number of people attending the sale; (g) the items for which there were no bids and the disposition of those items; (h) a statement of the manner and extent of advertising of the sale; (i) a statement of the manner and extent of the availability of the Circus Assets for inspection; and (j) any other information that the United States Trustee may request.

### N.    Jurisdiction

The Bankruptcy Court shall retain exclusive jurisdiction over any matter or dispute relating to the sale of the Circus Assets, these Bidding Procedures, any applicable Asset Purchase Agreement, and any other matter that in any way relates to the foregoing.  All entities that submit a bid for the purchase of the Circus Assets shall be deemed to have consented to the core jurisdiction of, and venue in, the Bankruptcy Court and to have waived any right to a jury trial in connection with any disputes relating to the sale of the Circus Assets, the Bidding Procedures, any applicable Asset Purchase Agreement, and any other matter that in any way relates to the foregoing.

**Exhibit A**

# BIG APPLE CIRCUS - CIRCUS ASSETS

| VEHICLES | | | | | | |
|---|---|---|---|---|---|---|
| **POWER UNITS** | | | | | | |
| **Tractors/Vans/Pickups** | | | | | | |
| | | | | | | |
| **BAC #** | **Type of Vehicle** | **Year** | **MFG/Model** | **Vehicle Vin #** | **Body Type** | |
| TR1 | Teal MACK | 1995 | MACK | 1M1AA13Y8SW053621 | Tractor | |
| TR6 | Green MACK | 2007 | MACK | 1M1AK06Y37N020378 | Tractor | |
| TRC2 | White Yard Dog | 2009 | Capacity | 4LMBF51129L020774 | Truck | |
| V4 | White Van | 1999 | Ford E350 | 1FBSS31LXXHB12348 | Club-Van | |
| V5 | Red Van | 2002 | Ford E350 | 1FBSS31L42HA26462 | Club-Van | |
| V6 | White Van | 2003 | Ford E350 | 1FBSS31L83HA27583 | Club-Van | |
| V7 | Silver Van | 2007 | Ford E350 | 1FBSS31L57DA45844 | Club-Van | |
| SU02 | Jeep Cherokee | 2008 | Jeep | 1J8GR48K48C198814 | SUV | |
| PK4 | Red Ford | 1997 | Ford F350 | 1FTJX35F1VEB63832 | Pickup | |
| PK9 | Blue Ford | 1996 | Ford F350 | 1FTJW35F0TEA77184 | Pickup | |
| PK10 | Red Ford | 1997 | Ford F350 | 1FTJX35F3VEA67734 | Pickup | |
| PK15 | Black Ford (stick) | 1997 | Ford F350 | 1FTJW35F3VEC70254 | Pickup | |
| PK24 | White Ford | 2007 | Ford F350 | 1FTWW33P67EA01606 | Pickup | |
| PK25 | White Ford | 2007 | Ford F350 | 1FTWW33P87EA01607 | Pickup | |
| PK26 | White Ford | 2007 | Ford F350 | 1FTWW33PX7EA01608 | Pickup | |
| PK27 | Blue Ford | 2006 | Ford F350 | 1FTWW33PX6EA84231 | Pickup | |
| GD007 | Freightliner | 1998 | Utility | 1FV6GLBC2WH923450 | Pickup | |

## VEHICLES (continued)

### NON-POWER UNITS  (RV Travel Trailers/5th Wheel)

| BAC # | Type of Vehicle | Year | MFG/Model | Vehicle Vin # | Body Type | |
|-------|-----------------|------|-----------|---------------|-----------|---|
| RV21 | Chateau | 1995 | Chateau | 4CH7HT80SM002970 | RV Trlr | |
| RV26 | Citation | 2001 | Citation | 1CNTD85211M002226 | RV Trlr | |
| RV30 | Citation | 2005 | Citation | 1CNTD77285M003094 | RV Trlr | |
| RV31 | Citation | 2005 | Citation | 1CNTD85255M003093 | RV Trlr | |
| RV32 | Citation | 2005 | Citation | 1CNTD772X5M003095 | RV Trlr | |
| RV33 | Gulfstream | 2006 | Conquest | 1NL1GTN2761072726 | RV Trlr | |
| RV34 | Gulfstream | 2006 | Conquest | 1NL1GTN2961072727 | RV Trlr | |
| RV37 | Starwood | 2008 | Starwood LE | 4K01A1H298E176764 | RV Trlr | |
| RV38 | Marathon | 2007 | Marathon | 1M93M0Z3871019282 | 5th Whl | |
| RV39 | Gulfstream | 2008 | StreamLite | 1NL1XTP2781024577 | RV Trlr | |
| RV40 | Holiday Rambler | 2006 | Savoy | 1KB1B1M286E166137 | RV Trlr | |
| RV41 | Sunline | 1995 | Solaris | 1LC2S2N2XSL298040 | RV Trlr | |
| RV42 | Springdale | 2005 | Springdale | 4YDT266205C117017 | RV Trlr | |

## VEHICLES (continued)
### NON-POWER UNITS (Semi Trailers)

| BAC # | Discription of Vehicle | Year | MFG/Model | Vehicle Vin # | Body Type |
|-------|------------------------|------|-----------|---------------|-----------|
| S1 | Sleeper 1 | 1992 | Fruehauf | 1H2V04828NB017943 | Semi |
| S2 | Sleeper 2 | 2001 | Uni-Glide | 1U9CT48291V019035 | Semi |
| S3 | Sleeper 3 | 1993 | Great Dane | 1GRAA962XPS013308 | Semi |
| S4 | Sleeper 4 | 2005 | Great Dane | 1GRAA96226B701558 | Semi |
| S5 | Sleeper 5 | 2005 | Great Dane | 1GRAA96246B701559 | Semi |
| S7 | | 1998 | Kentucky | 1KKVD5324WL111832 | Semi |
| S8 | | 1991 | Great Dane | 1GRAA062XMS081003 | Semi |
| S9 | | 1988 | Great Dane | 1GRAA9624JB145634 | Semi |
| S10 | Cookhouse | 1997 | Beckman | 1BTT53209WAB12283 | Semi |
| S16 | | 1988 | Great Dane | 1GRAA9623JB122605 | Semi |
| S19 | | 1988 | Great Dane | 1GRAA9626JB145604 | Semi |
| S20 | | 1988 | Great Dane | 1GRAA9622JB145647 | Semi |
| S23 | | 1988 | Great Dane | 1GRAA9625JB122623 | Semi |
| S24 | | 1988 | Great Dane | 1GRAA9621JB145607 | Semi |
| S25 | | 1988 | Great Dane | 1GRAA9627JB145627 | Semi |
| S26 | | 1988 | Great Dane | 1GRAA9624JB145648 | Semi |
| S27 | | 1994 | Great Dane | 1GRAA9025RS071404 | Semi |
| S28 | | 1994 | Great Dane | 1GRAA9628RB130016 | Semi |
| S29 | | 2001 | Uni-Glide | 1U9CT53281V019010 | Semi |
| S30 | Horse Trailer | 2003 | Pegasus | 1P9AC48223E338182 | Semi |
| S31 | Seat Box Trailer | 2004 | Stoughton | 1DW1A48264S710801 | Semi |

## VEHICLES (continued)

### NON-POWER UNITS (Semi-Flatbed Trailers)

#### Flatbed Trailers

| BAC # | Discription of Vehicle | Year | MFG/Model | Vehicle Vin # | Body Type | |
|---|---|---|---|---|---|---|
| F3 | | 1988 | Dorsey | 1DTP36Z20JA184050 | Semi DD | |
| F4 | | 1988 | Dorsey | 1DTP36Z22JA184051 | Semi DD | |
| F5 | | 1988 | Dorsey | 1DTP36Z24JA184049 | Semi DD | |
| F6 | | 1999 | Uniglide | 1U9CT5024XV019194 | Semi DD | |
| F8 | | 2006 | Fontaine | 13N1532C861532416 | Semi FB | |
| F9 | | 2006 | Fontaine | 13N1532C661532415 | Semi FB | |
| F19 | | 1990 | Fontaine | 13N248200L1550429 | Semi FB | |
| F20 | | 1993 | Fontaine | 13N248204P1557809 | Semi FB | |
| F34 | | 1998 | Fruehauf | 1JJF482F6WS531027 | Semi DD | |
| F35 | | 1998 | Dorsey | 1DTP16Z24WG051916 | Semi FB | |
| F36 | | 2008 | Kaufman | 5VGFR50228L002083 | Semi DD | |
| F37 | | 2008 | Pitts | 5JYDF48288P080942 | Semi FB | |
| F38 | | 2008 | Pitts | 5JYDF482X8P080943 | Semi FB | |
| F39 | | 2000 | Dorsey | 1DTP80Z24YG055220 | Semi FB | |

#### Utility Trailers

| | | | | | | |
|---|---|---|---|---|---|---|
| UT26 | Donniker/Port-o-Sans | 1998 | Modular | 1M9BA452981235538 | Trailer | |
| UT29 | Bobcat/Trailboss | 1996 | Trailboss | 1T9DP2923T1118842 | Trailer | |
| Frklft | Forklift | 2001 | Eagle Pitcher | 5BB01210 | Forklift | |

| | Code Legend | | | | | |
|---|---|---|---|---|---|---|
| | TR    Tractor | DD | Drop Deck | S | Semi Trailer | |
| | TK    Truck | V | Van | F | Flatbed Trailer | |
| | PK    Pickup | MH | Motorhome | UT | Utility Trailer | |

| EQUIPMENT | | | | | |
|---|---|---|---|---|---|
| Framed Circus Posters | | | | | |
| | | | | | |
| 28 cases Toy Trucks | | | | | |
| 24 cases Juggling Balls | | | | | |
| 10 cases Sippy Cups | | | | | |
| 6 cases Push Puzzles | | | | | |
| 9 cases Umbrellas | | | | | |
| 1 case Slinkys | | | | | |
| 1500 Red Paper Goody Bags | | | | | |
| 2000 Small White Goody Bags | | | | | |
| | | | | | |
| Welder | | | | | |
| Drill Press | | | | | |
| (2) Band Saws | | | | | |
| (2) Circular Saws | | | | | |
| Mounted Circular Saw | | | | | |
| Electric Sander | | | | | |
| Paint Guns | | | | | |
| Assorted Tools | | | | | |
| Fresh water pumps | | | | | |
| Gray Water Pumps | | | | | |
| Truck Jack | | | | | |
| Transmission Jack | | | | | |
| (3) Road Boxes with Tools | | | | | |
| Hard Hats and Vests | | | | | |
| Sledge Hammers | | | | | |
| Paint | | | | | |
| Wardrobe Washer & Dryer | | | | | |
| (2) Projectors | | | | | |
| Traffic cones | | | | | |
| Palletainer of Fire Extinguishers | | | | | |
| | | | | | |
| Drum Set | | | | | |
| Electric Drum Set | | | | | |
| Bandstand Chairs | | | | | |
| Music Stands | | | | | |

## EQUIPMENT (continued)

| | | | | |
|---|---|---|---|---|
| 2 Big Apple Circus-branded Big Top performance tents (one blue, one white) | | | | |
| (3) Palletainers with extra elex cable & feeder | | | | |
| (2) acrobat platforms | | | | |
| Spot Operator Chairs | | | | |
| Spot Operator Towers | | | | |
| Spot Tower Legs | | | | |
| Emergency Lights  & Exit Signs | | | | |
| (2) Palletainers of Elex Extension Cords & Feeders | | | | |
| Blue reception tent | | | | |
| Old Ring Carpets | | | | |
| Aluminum trusses for backstage curtain | | | | |
| Big Top stable parts | | | | |
| Steel Cables & steel pipe | | | | |
| Fencing | | | | |
| Pallet of sand bags | | | | |
| (4) X holders for Masts | | | | |
| Seat steel stringers, frames, braces, kick boards | | | | |
| Seating system floorboards | | | | |
| Backstage flooring | | | | |
| Cupola/Mast | | | | |
| (4) mast plate feet | | | | |
| (2) pallets of wood blocks | | | | |
| Ladders | | | | |
| Floor Boards/Metal Containers | | | | |
| Ring Curb | | | | |
| Palletainer of show lights & lenses | | | | |
| Aluminum channeling from ring crew area | | | | |

## EQUIPMENT (continued)

| | | | | |
|---|---|---|---|---|
| Bandstand - Floor- Truss- pieces, etc | | | | |
| Steel stringers for grandstand seats and boxes | | | | |
| Asstd sizes of Concrete blocks for Lincoln Center counter weight system | | | | |
| Asstd sizes of Steel Plates for Lincoln Center for counter weight system | | | | |
| Floorboards for seating system | | | | |
| Stables | | | | |
| Ramps for stables | | | | |
| Rubber flooring for stables | | | | |
| Leftover carpet rolls from Lincoln Center rotunda tent | | | | |
| Side poles | | | | |
| Tent stakes | | | | |
| (2) pallets of yellow cable covers  for ELEX cables | | | | |
| Crash mats | | | | |
| Old portafloor | | | | |
| Palletainer of orange cable covers for phone cables | | | | |
| | | | | |
| (2) Palletainers of fresh water hoses | | | | |
| Palletainer of 3" waste water hose | | | | |
| Large hoses for gray water system | | | | |
| (2) Palletainers of large yellow cable covers for hoses | | | | |
| | | | | |
| 3 Red Guard booths | | | | |
| Little Box Office Kiosk | | | | |
| 2 Membership Booths | | | | |

| **EQUIPMENT (continued)** | | | | | |
|---|---|---|---|---|---|
| Novelty Wagon | | | | | |
| Bar | | | | | |
| Concession Table | | | | | |
| Bar- Beer | | | | | |
| Coffee Counter Stand | | | | | |
| (2) Condiment Stands | | | | | |
| Donut Machine | | | | | |
| Hot Dog Stand | | | | | |
| Pretzel Stand | | | | | |
| (4) Convection Ovens [2 stacked] | | | | | |
| (5) Warmers | | | | | |
| Tilt Skillet | | | | | |
| Deli Slicer | | | | | |
| Keurig Coffee Machine | | | | | |
| (11) Trash Bins | | | | | |
| (2) Soda Coolers | | | | | |
| Push Cart | | | | | |
| Freezer | | | | | |
| (2) Table Top Warmers | | | | | |
| Soda Machine | | | | | |
| Coffee Grinder and Machine | | | | | |
| Salad Bar | | | | | |
| 5 cases Kids Meal Boxes | | | | | |
| 8 cases Adults Meal Boxes | | | | | |
| | | | | | |
| 30-35 racks of old costumes | | | | | |
| 3-4 wardrobe road boxes | | | | | |
| Assorted Shoes | | | | | |
| Assorted Hats | | | | | |
| Assorted Fabric | | | | | |
| Assorted Props | | | | | |

| **EQUIPMENT (continued)** | | | | | |
|---|---|---|---|---|---|
| **CONTAINER A** | | | | | |
| "Legendarium" Set | | | | | |
| **CONTAINER B** | | | | | |
| "Bello's Back" Set | | | | | |
| **CONTAINER C** | | | | | |
| Assorted Floors | | | | | |
| **CONTAINER D** | | | | | |
| Large 12' x 12' Juggling Floor | | | | | |
| **Container E** | | | | | |
| Stage Show "Oops" Props | | | | | |
| Mylar Rolls | | | | | |
| Foam Rubber Rolls | | | | | |
| | | | | | |
| Old calliope - broken | | | | | |
| | | | | | |
| 30+ Tables | | | | | |
| TVs for lounges & lobby tents | | | | | |
| Black Couches | | | | | |
| Café Tables | | | | | |
| Red Chairs | | | | | |
| Lounge Table | | | | | |
| Misc. Tables and Chairs | | | | | |
| | | | | | |
| (3) Generators | | | | | |
| (18) Diesel Heaters for Big Top | | | | | |
| (2) Waste Oil Heaters by Elogic 340 H w/ 500 gallon tanks by Dunn | | | | | |
| (1) 500 gallon auxiliary oil tank for waste oil to be used with heaters | | | | | |
| (1) 800 gallon auxiliary oil tank for waste oil to be used with heaters | | | | | |
| (3) 275 gallon diesel storage tanks on outside | | | | | |
| (2) 200 gallon containers of absorbent for fuel spills | | | | | |

| Laptop Computers | | | | | |
|---|---|---|---|---|---|
| | Hp Pavilion Entertainment PC- Vista opersting system | | | | |
| | ThinkPad- XP operating system | | | | |
| | Dell Inspirion 1150- XP | | | | |
| | Dell Inspirion 15- Windows 8 | | | | |
| | Dell Inspirion 17-Windows 7 | | | | |
| | Sony Vaio- Vista | | | | |
| | Sony Vaio-XP | | | | |
| | Toshiba Satellite P205- Vista | | | | |
| Desktop Computers | | | | | |
| | HP Compaq d530 CMT- XP | | | | |
| | HP Compaq dc 5100 MT-XP | | | | |
| | HP Compaq dc 5700 Microtower- XP | | | | |
| | HP Pavillion p6-2127c- Windows 7 | | | | |
| | Gateway DX4870- Windows 7 | | | | |
| | Apple Computer-Mac | | | | |
| Printers | | | | | |
| | Epson Stylus Pro 3800-color | | | | |
| | Epson WF 2540- fax, copy scan | | | | |
| | Epson Workforce Pro-color | | | | |
| | HP Laserjet CP1215-color | | | | |
| | HP Officejet Pro 8600 Multi-Function Ctr. MFC9970CDW-fax, copy, scan | | | | |
| Misc. | | | | | |
| | Money Counter- Royal Sovereign RBC-2100 | | | | |
| | Cash Drawers- 2 small, 4 large | | | | |
| | Boca Printer | | | | |
| | Counterfeit Detector | | | | |
| | Apple Square | | | | |
| | Dock for Apple Square | | | | |
| | Apple Square Stands | | | | |
| | Thermal Receipt Printer | | | | |
| | Tabletop Microphone | | | | |
| | Acer Projector | | | | |
| | Doc u Seal Laminator | | | | |
| | 8" Samsung Galaxy 4 Tablet | | | | |
| | Assorted keyboards, mice etc. | | | | |
| | Arris Router | | | | |
| Phones | | | | | |
| Orange Tractor with lawn mower and snow plow/bucket | | | | | |

## INTELLECTUAL PROPERTY

| IP TYPE | | REG. NUMBER | DATE | TYPE OF WORK | TITLE | NOTES |
|---|---|---|---|---|---|---|
| Copyright | | TXu000522895 | 4/16/1992 | Text | The Big Apple Circus Clown Care Unit : a report on its development, impact, implications for research, and possible future directions / by Jill Vorenberg Alberts | |
| Copyright | | TX0003319701 | 4/16/1992 | Text | The big apple circus Clown Care Unit : training manual | |
| Patent | | | | | | No patent registrations found. |
| URL | | | | | www.bigapplecircus.org | |

## INTELLECTUAL PROPERTY (continued)

| | SERIAL NUMBER | REG. NUMBER | REG. DATE | WORD MARK | LIVE/DEAD | NOTES |
|---|---|---|---|---|---|---|
| Trademark | 85504649 | 4249048 | | CLOWN CARE | LIVE | |
| Trademark | 77545625 | 3591055 | | CIRCUSCHARGE | DEAD | |
| Trademark | 75768904 | 2351980 | | BEYOND THE RING | DEAD | |
| Trademark | 75751059 | 2375024 | | CIRCUS TO GO! | LIVE | |
| Trademark | 75545678 | 2372094 | | CIRCUS OF THE SENSES | LIVE | |
| Trademark | 75475480 | 2260868 | 7/13/1999 | CIRCUS FOR ALL | LIVE | entertainment in the nature of circusperformances |
| Trademark | 75473498 | 2259308 | 7/6/1999 | CIRCUS FOR ALL | LIVE | charitable services, namely, fund raising activities to support a service which provides free and discounted tickets to circusperformances to children with economic disadvantages or physical disabilities. |
| Trademark | 75473496 | 2228887 | | CIRCUS THE WAY IT WAS MEANT TO BE | DEAD | |
| Trademark | 75473495 | 2228886 | | FAMILY ENTERTAINMENT THE WAY IT WAS MEANT TO BE | DEAD | |
| Trademark | 74128964 | 1672160 | | CLOWN CARE UNIT | DEAD | |
| Trademark | 74643455 | 2037681 | | BIG APPLE CIRCUS | LIVE | toys and games, namely, [ board games, ] jigsaw puzzles, [ parlor games, ] plush toys, toy vehicles |
| Trademark | 74643454 | 2053297 | | BIG APPLE CIRCUS | DEAD | clothing, namely belts, hats, caps, shorts, jeans, ties, coats, vests, sweaters, shirts, jerseys, shoes and sandals |

## INTELLECTUAL PROPERTY (continued)

| | | | | | | |
|---|---|---|---|---|---|---|
| Trademark | 74643453 | 2041171 | | BIG APPLE CIRCUS | DEAD | piece goods, namely towels, bath linens, bed linens, table linens, kitchen towels, cloth flags, cloth pennants and cloth banners |
| Trademark | 74643452 | 2037680 | | BIG APPLE CIRCUS | DEAD | household and novelty items, namely, cups, dishes, glass beverageware, commemorative plates, and decorative plates |
| Trademark | 74643451 | 2049670 | | BIG APPLE CIRCUS | LIVE | paper goods, namely, magazines and brochures regarding circuses, paper flags, paper pennants and paper banners, calendars, bumper stickers, decals, coloring books, comic books, [ scrap books ], address books, [ photo albums, appointment books, gift wrapping paper and stationery, playing cards ] |

## INTELLECTUAL PROPERTY (continued)

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | entertainment services in the nature of circusperformances. Mark Drawing Code  (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS Design Search Code  03.03.01 - Elephants; Mammoths; Mastodons 03.03.24 - Stylized Elephants, hippopotami, rhinoceri, giraffes, alpacas, camels, llamas 03.03.26 - Costumed Elephants, hippopotami, rhinoceri, giraffes, alpacas, camels, llamas 21.01.07 - Blocks, toy; Building blocks (toy); Building pieces (toy) 21.03.01 - Balls including playground balls, beach balls, billiard balls, tennis balls, bingo balls and lottery balls; Beach balls; Billiard balls; Bingo balls; Lottery balls; Paddle balls; Playground balls; Table tennis balls; Tennis balls 26.05.21 - Triangles that are completely or partially shaded 27.03.05 - Objects forming letters or numerals |
| Trademark | 74498648 | 1893391 | | BIG APPLE CIRCUS | DEAD | |
| Trademark | 73280891 | 1236748 | | BIG APPLE CIRCUS | LIVE | Entertainment Services in the Nature of a Circus |
| Social Media | | | | Facebook | | |
| Social Media | | | | Twitter | | |
| Social Media | | | | Pinterest | | |
| Social Media | | | | Youtube | | |
| Social Media | | | | Foursquare | | |
| Email Service Provider | | | | Constant Contact | | |
| Email Lists of ticket buyers and potential buyers for  each venue | | | | see separate attachment | | |

# BIG APPLE CIRCUS - CIRCUS ASSETS - EXCLUDED ITEMS

**VEHICLES**

| | BAC # | Type/Description of Vehicle | Year | Mileage | MFG/Model | Body |
|---|---|---|---|---|---|---|
| | TR5 | Western Star | 2004 | 42,337 | WE/ST | Tractor |
| | PK22 | White Ford | 2003 | 58,884 | Ford F350 | Pickup |
| | PK23 | White Ford | 2003 | 53,249 | Ford F350 | Pickup |
| | | | | | | |
| Auxiliary tenting equipment, etc., - NYC Department of Cultural Affairs (see list below) | | | | | | |
| Computers in Brooklyn office | | | | | | |
| Phones in Brooklyn office | | | | | | |
| URL - www.bigapplecircus.com | | | | | | |

## AUXILIARY TENTING EQUIPMENT, ETC. - NYC DEPARTMENT OF CULTURAL AFFAIRS

| DCA ITEM # | Description | | | Quantity |
|---|---|---|---|---|
| **Tent** | | | | |
| T1 | Vinyl tent | | | 1 |
| T2 | Biljax decks | | | 972 |
| T3 | Top Deck sections | | | 486 |
| | | | | |
| **Ceiling System** | | | | |
| C1 | Full Design 12' Moon pillow-cased fabric with frame | | | 20 |
| C2 | Full Deign 20' Moon pillow-cased fabric with frame | | | 4 |
| C3 | Full Design Pink Powered by Monn 9' dia Moon - Single skin with frame | | | 25 |
| C4 | Full Design 145'L x 9'H (48' Radius) Arc Projection Screen | | | 1 |
| C5 | Full Design 127'L x 9'H (78' Radius) Arc Projection Screen | | | 1 |
| | | | | |
| **Wall System** | | | | |
| W1 | 19.5' x 93" Half-Width Wall, Welded Asembly | | | 10 |
| W2 | 39" x 93" Full Wall, Welded Assembly | | | 174 |
| W3 | Door for EZ Fabric Walls | | | 14 |
| W4 | PreDesigned Oval Baseplate with Stud | | | 40 |
| W5 | PreDesigned 93.5" Adjustable Corner Column | | | 10 |
| W6 | PreDesigned 93.5" Four Way Corner Column | | | 14 |
| W7 | PreDesigned End Cap - 93.5" | | | 4 |
| W8 | Wall Stacking Connector | | | 176 |
| W9 | 39" x 46.5" Half-Height Wall, Locked Assembly | | | 178 |
| W10 | PreDesigned 93.5" Low Profile Accessory Column | | | 10 |
| W11 | PreDesigned EZ Fabric Cover | | | 348 |
| W12 | PreDesigned EZ Fabric Cover | | | 20 |
| W13 | PreDesigned EZ Fabric Cover | | | 356 |
| W14 | PreDesigned EZ Fabric Cover | | | 28 |

## AUXILIARY TENTING EQUIPMENT, ETC. - NYC DEPARTMENT OF CULTURAL AFFAIRS

| DCA ITEM # | Description | | | Quantity |
|---|---|---|---|---|
| **Wall System (continued)** | | | | |
| W15 | Full Design 127' Curved Groove Wall | | | 1 |
| W16 | Full Design 145' Curved Groove Wall | | | 1 |
| | | | | |
| **Lighting & AV System** | | | | |
| L1 | eW Color Blast Dimmable Warm | | | 124 |
| L2 | 10' Truss 12" | | | 12 |
| L3 | 10' Truss 14" tri | | | 8 |
| L4 | Hand Hoists 1/2 Ton | | | 19 |
| L5 | Source Four 36 Degree Unit Specials | | | 12 |
| L6 | Vari Lite VLX | | | 8 |
| L7 | 24 way Edison Distro | | | 1 |
| L8 | ETC Smart Pack 10 x 1.2K | | | 4 |
| L9 | Hog 500 | | | 1 |
| L10 | Lep Console 12 chan | | | 3 |
| L11 | Power Distribution | | | 3 |
| L12 | Feeder Cable Extension Set FS505W-100 | | | 4 |
| L13 | 55" LCD Commercial Display | | | 6 |

| | | | | | |
|---|---|---|---|---|---|
| L14 | HDMI Splitter | | | | 1 |
| L15 | Christie series M Projector 10k | | | | 2 |
| L16 | 1.5 Lens | | | | 2 |
| L17 | Ceiling Mount | | | | 2 |
| L18 | Dual HDMI Output | | | | 2 |
| L19 | DMX Interface | | | | 2 |
| L20 | Mac Playback System | | | | 1 |
| L21 | JBL Sound Package | | | | 2 |

**EQUIPMENT - AUDIENCEVIEW TICKETING CORPORATION**

| | | Description | | | | Quantity |
|---|---|---|---|---|---|---|
| | | Thermal Ticket Printers | | | | 15 |
| | | Laptop Computers | | | | 7 |
| | | Credit Card Readers | | | | 6 |
| | | Access Control Hardware | | | | |

**<u>Exhibit C</u>**

**Proposed Sale Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**THE BIG APPLE CIRCUS, LTD.**<br><br>                          **Debtor.** | **Chapter 11**<br><br>**Case No. 16-13297 (SHL)** |

**ORDER (I) APPROVING THE SALE OF THE**
**DEBTOR'S CIRCUS ASSETS FREE AND CLEAR OF**
**LIENS, CLAIMS, ENCUMBRANCES, AND OTHER**
**INTERESTS AND (II) GRANTING RELATED RELIEF**

Upon the motion, dated December 23, 2016 (the "**Motion**"), of The Big Apple Circus, Ltd. (the "**Circus**" or the "**Debtor**"), the debtor and debtor in possession in the above-captioned case, pursuant to sections 105(a), 363, 541, 1107(a), and 1108 of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 2002, 6004, 9006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), rules 6004-1, 6005-1, and 9013-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**"), the "Amended Guidelines for the Conduct of Assets Sales" promulgated by General Order M-383 of this Court (the "**Sale Guidelines**"), and the applicable provisions of the New York Not-for-Profit Corporation Law, seeking entry of an order (a) approving the sale of certain circus assets free and clear of all liens, claims, encumbrances, and other interests to [NAME] (the "**Buyer**") pursuant to the terms and conditions of that certain Asset Purchase Agreement, dated [DATE], attached hereto as **Exhibit 1** (the "**Agreement**");[1] and (b) granting certain related relief, all as more fully described in the Motion and the Agreement; and the Court having entered an order on [DATE] [Docket No. __] (the "**Bidding Procedures Order**") approving, among other things,

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Agreement.

(a) bidding and auction procedures (the "**Bidding Procedures**"), attached to the Bidding Procedures Order as <u>Exhibit 1</u>, in connection with the sale of substantially all of the Debtor's Circus Assets (as defined in the Motion), and (b) scheduling an auction for such assets (the "**Phase I Auction**") and a hearing to consider the relief requested in the Motion (the "**Sale Approval Hearing**"); and the Phase I Auction having been held on February 7, 2017, and the Sale Approval Hearing having been held on February 14, 2017; and upon the record of the Sale Approval Hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief requested in the Motion is in the best interests of the Debtor, its estate and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion and at the Sale Approval Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor:

**IT IS HEREBY FOUND AND DETERMINED THAT:**

<u>**Jurisdiction and Venue**</u>

A.      This Court has jurisdiction to hear and determine the Motion and grant relief requested herein pursuant to 28 U.S.C. §§ 157 and 1334.  Consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

<u>**Statutory Predicates**</u>

B.      The statutory and legal predicates for the relief requested in the Motion are sections 105, 363, and 541 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9006, and 9014, and Local Bankruptcy Rules 6004-1 and 6005-1.

2

## Final Order

C.      This Order constitutes a final and appealable order within the meaning of

28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h), and to any extent necessary

under Bankruptcy Rule 9014 and rule 54(b) of the Federal Rules of Civil Procedure, as made

applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for

delay in the implementation of this Order, and expressly directs entry of judgment as set forth

herein.

## Compliance with Bidding Procedures Order

D.      As demonstrated by (i) the testimony and other evidence proffered or

adduced at the Sale Approval Hearing and (ii) the representations of counsel made on the record

at the Sale Approval Hearing, the Debtors have thoroughly and fairly marketed the Acquired

Assets and conducted the related sale process in good faith and in compliance in all respects with

the Bidding Procedures and the Bidding Procedures Order.  All interested persons and entities

have been afforded a full, fair and reasonable opportunity to (i) conduct due diligence

investigations, (ii) submit higher or otherwise better bids to purchase the Acquired Assets, and

(iii) object or be heard with respect to the Motion and the relief granted by this Order.  The

Bidding Procedures were non-collusive, in good faith, substantially and procedurally fair to all

parties, and obtained the highest value for the Acquired Assets for the Debtor and its creditors

and estate.

## Notice

E.      As evidenced by the affidavits of service and publication previously filed

with the Court, proper, timely, adequate, and sufficient notice of the Motion, the Auction, the

Sale Approval Hearing, and the sale of the Acquired Assets (the "**Sale**") has been provided in

accordance with sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9014, all applicable Local Bankruptcy Rules, the applicable provisions of the New York Not-for-Profit Corporation Law, and in compliance with the Bidding Procedures Order. Such notice was good, sufficient and appropriate under the particular circumstances, and no other or further notice of the Motion, the Auction, Sale Approval Hearing, or the Sale is required.

F.    Actual written notice of the Motion, the Auction, the Sale Approval Hearing, and the Sale, and a fair and reasonable opportunity to object or be heard with respect to the Motion and the relief granted by this Order has been afforded to all interested persons and entities, including, without limitation, (i) the Office of the United States Trustee for the Southern District of New York, (ii) the U.S. Attorney for the Southern District of New York, (iii) the New York State Attorney General, (iv) all known creditors of the Debtor, (v) any entity known or reasonably believed to have asserted a security interest in or lien against the Circus Assets, (vi) the New York City Department of Cultural Affairs, (vii) any entity that has expressed a bona fide interest in acquiring the Circus Assets, (viii) all taxing authorities having jurisdiction over the Circus Assets, including the Internal Revenue Service, (ix) the United States Environmental Protection Agency, (x) the New York State Department of Environmental Conservation, (xi) the Office of the Mayor of New York City, (xii) counsel to the Creditors' Committee, and (xiii) all parties who have requested notice in the Debtor's chapter 11 case pursuant to Bankruptcy Rule 2002

G.    On [DATE], the Debtor served notice of the selection of the Buyer as the successful bidder for the Acquired Assets [and the place and time of the Phase II Auction (as defined in the Bidding Procedures)] on (i) the Office of the United States Trustee for the Southern District of New York, (ii) the U.S. Attorney for the Southern District of New York,

(iii) the New York State Attorney General, (iv) the New York City Department of Cultural Affairs, (v) the United States Environmental Protection Agency, (vi) the New York State Department of Environmental Conservation, (vii) the Office of the Mayor of New York City, (viii) counsel to the Creditors' Committee, (ix) all Qualified Bidders, and (x) all parties who have requested notice in the Debtor's chapter 11 case pursuant to Bankruptcy Rule 2002.

## Corporate Authority

H.      The Debtor has full corporate power and authority to execute and deliver the Agreement and all other documents contemplated thereby, and the Sale has been duly and validly authorized by all necessary corporate action of the Debtor.  No further consents or approvals, including that of any other court or the New York State Attorney General, are required for the Debtor to consummate the transactions contemplated by the Agreement, except as otherwise set forth in the Agreement.

## Good Faith Purchaser

I.      The Buyer is purchasing the Acquired Assets in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision and any other applicable or similar bankruptcy and non-bankruptcy law.  The Buyer has at all times acted in good faith and will continue to act in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the Sale. The Buyer is not an "insider" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.

## Arm's-Length Sale

J.      The Agreement was negotiated, proposed and entered into by the Debtor and the Buyer without collusion, in good faith and from arm's-length bargaining positions.

5

Neither the Debtor nor the Buyer have engaged in any conduct that would cause or permit the avoidance of the Sale or the Agreement or the imposition of costs or damages under section 363(n) of the Bankruptcy Code.

### Business Justification

K.     The Debtor has demonstrated good, sufficient and sound business reasons and compelling circumstances to enter into the Agreement and sell the Acquired Assets to the Buyer, and such actions and the transactions contemplated under the Agreement are appropriate and reasonable exercises of the Debtor's business judgment and in the best interests of the Debtor, its estate and creditors, and other parties in interest.  Such business reasons include, but are not limited to, the facts that (i) the terms and conditions of the Agreement are fair and reasonable, (ii) there is substantial risk of deterioration of the value of the Acquired Assets if the sale is not consummated quickly, (iii) the Agreement constitutes the highest or best offer for the Acquired Assets, (iv) no other person or entity or group of persons or entities has offered to purchase the Acquired Assets for greater economic value to the Debtor's estate than the Buyer, (v) the Sale pursuant to the terms of the Agreement will present the best opportunity to honor the Debtor's mission, and (vi) unless the sale is concluded expeditiously as provided for in the Motion and pursuant to the Agreement, recoveries to creditors may be diminished.  The Debtor's determination that the Agreement constitutes the highest or best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtor's business judgment and complies with the New York Not-for-Profit Corporation Law.

### No Fraudulent Transfer

L.     The consideration provided by the Buyer for the Acquired Assets pursuant to the Agreement (i) is fair and reasonable, (ii) is the highest or best offer for the Acquired

Assets, (iii) will provide a greater recovery for the Debtor's creditors and estate than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

M.    The Buyer is not a mere continuation of the Debtor or its estate, there is no continuity or common identity between the Buyer and the Debtor, and there is no continuity of enterprise between the Buyer and the Debtor.  The Buyer is not holding itself out to the public as a continuation of the Debtor.  The Buyer is not a successor to the Debtor or its estate and the Sale does not amount to a consolidation, merger or de facto merger of the Buyer and the Debtor.  The Sale of the Acquired Assets to the Buyer is not being undertaken for the purpose of escaping liability for the Debtor's debts or hindering, delaying or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

## Free and Clear

N.    Except as otherwise expressly provided in the Agreement or this Order, the Acquired Assets shall be sold free and clear of all interests, obligations, rights, encumbrances, pledges, liens (including, without limitation, mechanics', materialmens' and other consensual and non-consensual liens and statutory liens), mortgages, deeds of trust, security interests, claims (including, any "claim" as defined in section 101(5) of the Bankruptcy Code), leases, charges, offsets, contracts, options, rights of first refusal, easements, servitudes, proxies, voting trusts or agreements, transfer restrictions under any agreement, conditional sale or other title retention agreements, judgments, hypothecations, demands, licenses, sublicenses, assignments, indentures, loan agreements, instruments, debts, rights of recovery, obligations,

7

guaranties, contractual commitments, restrictions, recoupment, employee benefit obligations, collective bargaining agreements, claims based on reimbursement, contribution, indemnity, exoneration, products liability, alter-ego or taxes, claims based on pension plan contributions and related liabilities, environmental liabilities, and options to purchase, in each case of whatever kind, nature, or description in, against or with respect to any of the Acquired Assets, having arisen, existed or accrued prior to and through the date of the closing of the Sale (the "**Closing Date**"), whether direct or indirect, absolute or contingent, choate or inchoate, known or unknown, matured or unmatured, liquidated or unliquidated, arising or imposed by agreement, understanding, law, equity, statute or otherwise and whether arising prior to, on or after the Petition Date, including claims otherwise arising under doctrines of successor liability, <u>de facto</u> merger or substantial continuity (collectively, "**Interests**").

O.    The transfer of the Acquired Assets to the Buyer free and clear of all Interests (other than Liens created by the Buyer and the Permitted Liens) will not result in any undue burden or prejudice to any holders of any Interests as such Interests shall attach to the net proceeds of the sale of the Acquired Assets received by the Debtor in the order of their priority, with the same validity, force and effect which they now have as against the Acquired Assets and subject to any claims and defenses the Debtor, its estate or other parties may possess with respect thereto.

P.    The Debtor may sell the Acquired Assets free and clear of all Interests (other than Liens created by the Buyer and the Permitted Liens) because, in each case, one or more of the standards set forth in section 363(f)(1)45) of the Bankruptcy Code has been satisfied. Holders of Interests against the Debtor, its estate or any of the Acquired Assets who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented

8

thereto pursuant to section 363(f)(2) of the Bankruptcy Code.  Holders of Interests, including

those who did object, fall within one or more of the other subsections of section 363(f) and are

adequately protected by having their Interests, if any, attach to the proceeds of the Sale

ultimately attributable to the Acquired Assets in which such creditor alleges an Interest, in the

same order of priority, with the same validity, force and effect that such creditor had prior to the

Sale, subject to any claims and defenses the Debtor, its estate or other parties may possess with

respect thereto.

Q.    The Buyer would not have entered into the Agreement and would not

consummate the transactions contemplated thereby if the Sale were not free and clear of all

Interests (other than Liens created by the Buyer and the Permitted Liens), or if the Buyer would,

or in the future could be liable for any such Interests.

R.    Not selling the Acquired Assets free and clear of all Interests (other than

Liens created by the Buyer and the Permitted Liens) would adversely impact the Debtor's efforts

to maximize the value of its estate, and the sale of the Acquired Assets other than one free and

clear of all Interests (other than Liens created by the Buyer and the Permitted Liens) would be of

substantially less benefit to the Debtor's estate.

## Validity of Transfer

S.    The consummation of the Sale is legal, valid and properly authorized

under all applicable provisions of the Bankruptcy Code, including, without limitation, sections

105(a), 363(b), 363(f), and 363(m), and all of the applicable requirements of such sections have

been complied with in respect of the transactions contemplated under the Agreement.

T.    The Acquired Assets constitute property of the Debtor's estate and good

title thereto is vested in the Debtor's estate within the meaning of section 541(a) of the

Bankruptcy Code, and the transfer of the Acquired Assets to the Buyer complies with section 541(f) of the Bankruptcy Code and applicable non-bankruptcy law.

### Compelling Circumstances for an Immediate Sale

U.     To maximize the value of the Acquired Assets, it is essential that the Sale of the Acquired Assets occur within the time constraints set forth in the Motion, the Bidding Procedures Order, and the Agreement.   Time is of the essence in consummating the Sale. Accordingly, there is cause to waive the stay contemplated by Bankruptcy Rules 6004.

V.     The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the approval and consummation of the Sale prior to, and outside of, a chapter 11 plan.   The Sale pursuant to the Agreement neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of a liquidating chapter 11 plan for the Debtor and therefore, does not constitute a <u>sub rosa</u> plan.

**NOW,  THEREFORE,  IT  IS  HEREBY  ORDERED,  ADJUDGED  AND DECREED THAT:**

### General Provisions

1.     The Motion is granted and approved as provided herein.   The Motion complies with all applicable provisions of Local Bankruptcy Rules other than those previously waived by the Court.

2.     All objections and responses to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections and responses, are overruled on the merits and denied with prejudice.

10

3.      This Court's findings of fact and conclusions of law set forth in the Bidding Procedures Order are incorporated herein by reference.

## Approval of the Agreement

4.      The Agreement and all other ancillary documents, and all of the terms and conditions thereof, are approved.

5.      Pursuant to section 363(b) of the Bankruptcy Code, the Debtor is authorized and directed to take any and all actions necessary or appropriate to execute and deliver, perform under, consummate, implement and effectuate the Agreement together with any and all instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Agreement, this Order and the Sale, and to take all further actions as may be reasonably requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer, or reducing to possession, the Acquired Assets, or as may be necessary or appropriate to the performance of the Debtor's obligations as contemplated by the Agreement, without any further corporate action or order of this Court.

## Transfer of the Acquired Assets

6.      Except as otherwise expressly provided in the Agreement or this Order, pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Debtors are authorized to transfer the Acquired Assets to the Buyer on the Closing Date on an "as is, where is, and with all faults" basis and free and clear of all Interests of any kind whatsoever with all such Interests to attach to the net proceeds of the sale of the Acquired Assets received by the Debtors in the order of their priority, with the same validity, force and effect which they now have as against the Acquired Assets and subject to any claims and defenses the Debtor, its estate or other parties may possess with respect thereto.

11

7.      The transfer of the Acquired Assets to the Buyer will be, as of the Closing Date, a legal, valid, binding and effective transfer of the Acquired Assets, and, except as otherwise expressly provided in the Agreement or this Order, shall vest the Buyer with all right, title, and interest of the Debtor in and to the Acquired Assets free and clear of all Interests accruing, arising or relating thereto any time prior to and through the Closing Date.  Except as otherwise expressly provided in the Agreement or this Order, the Buyer shall not assume or become liable for any Interests relating to the Acquired Assets, provided, however, that the Buyer shall not be relieved of liability with respect to Liens created by the Buyer and the Permitted Liens.

8.      Nothing in the Agreement or this Order releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under police or regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order.

9.      On the Closing Date, each holder of an Interest in the Acquired Assets (other than Liens created by the Buyer and the Permitted Liens) is authorized and directed to execute such documents and take all other actions as may be necessary to release such Interest, if any, as provided for herein, as such Interests may have been recorded or may otherwise exist.

10.     The transactions authorized herein shall be of full force and effect, regardless of the Debtor's lack of good standing in any jurisdiction in which the Debtor is formed or authorized to transact business.

11.     Upon consummation of the transactions contemplated in the Agreement, the Buyer shall be authorized to file termination statements or lien terminations in any required jurisdiction to remove any record, notice filing, or financing statement recorded to attach, perfect

12

or otherwise notice any lien or encumbrance that is extinguished or otherwise released pursuant to this Order under section 363 and the related provisions of the Bankruptcy Code.

12.    All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Acquired Assets to the Buyer in accordance with the terms of the Agreement and this Order.

13.    All persons and entities that are in possession of some or all of the Acquired Assets on the Closing Date are directed to surrender possession of such Acquired Assets to the Buyer or its assignee on the Closing Date.

14.    A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any of the Interests of record in the Acquired Assets (other than Liens created by the Buyer and the Permitted Liens).

15.    If any person or entity which has filed statements or other documents or agreements evidencing Interests with respect to all or any portion of the Acquired Assets shall not have delivered to the Debtor prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary or desirable to the Buyer for the purpose of documenting the release of all Interests that the person or entity has or may assert with respect to all or any portion of the Acquired Assets (other than Liens created by the Buyer and the Permitted Liens), the Debtor and the Buyer are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Acquired Assets.

13

16.     This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

## **Related Relief**

17.     Upon the Closing Date and except as otherwise expressly provided in the Agreement or by stipulations filed with or announced to this Court with respect to a specific matter, all persons and entities are forever prohibited, estopped, and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Buyer, its successors and assigns, or the Acquired Assets, with respect to any (a) Interest (other than Liens created by the Buyer and the Permitted Liens) arising under, out of, in connection with or in any way relating to the Debtor, the Buyer, the Acquired Assets, or the operation of the Acquired Assets prior to the Closing Date, or (b) successor liability, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Buyer, its successors or assigns, assets or properties, (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Buyer,

14

its successors, assets or properties, (iii) creating, perfecting or enforcing any Interest (other than Liens created by the Buyer and the Permitted Liens) against the Buyer, its successors or assigns, assets or properties, (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Buyer or its successors or assigns, (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect thereof, or (vi) revoking, terminating or failing or refusing to issue or renew any license, permit or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with the Acquired Assets.

18.    Except as otherwise expressly provided in the Agreement or this Order, the Buyer shall not have any liability or other obligation of the Debtor arising under or related to any of the Acquired Assets except with respect to Liens created by the Buyer and the Permitted Liens.  Without limiting the generality of the foregoing, and except as otherwise specifically provided in the Agreement or this Order, the Buyer shall not be liable for any claims against the Debtor or any of its predecessors or affiliates, and the Buyer shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtor or any obligations of the Debtor arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Acquired Assets prior to the Closing Date.  The Buyer has given substantial consideration under the Agreement for the

15

benefit of the holders of any Interest in the Debtor or any of the Acquired Assets.  The consideration given by the Buyer shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Buyer, which releases shall be deemed to have been given in favor of the Buyer by all holders of Interests in the Debtor or any of the Acquired Assets (other than Liens created by the Buyer and the Permitted Liens).

19.    The transactions contemplated by the Agreement are undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization and consummation of such Sale are duly stayed pending such appeal.

20.    Upon the Closing Date, the Debtor is authorized to apply the net proceeds of the Sale in accordance with section 363 of the Bankruptcy Code, pursuant to a confirmed chapter 11 plan, or as otherwise authorized by the Court.  .

21.    Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) this chapter 11 case, (b) any subsequent chapter 7 case into which any this chapter 11 case may be converted, or (c) any related proceeding subsequent to entry of this Order, shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.

22.    Notwithstanding the possible applicability of Bankruptcy Rules 6004, 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.  The Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and may, in their discretion and

without further delay, close the transactions contemplated under the Agreement and take any action and perform any act authorized under this Order.

23.     Nothing in this Order or the Agreement approves or provides for the transfer to the Buyer of any avoidance claims (whether under chapter 5 of the Bankruptcy Code or otherwise) of the Debtor's estate.

24.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

25.     The failure specifically to include any particular provision of the Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Agreement be authorized and approved in its entirety.

26.     The Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof, without further order of this Court; provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate.

27.     The terms and provisions of the Agreement and this Order shall be binding in all respects upon the Debtor, its estate and creditors, all holders of equity interests in any of the Debtors, all holders of any Interest in the Acquired Assets, the Buyer and all successors and assigns of the Buyer, and any trustees, if any, subsequently appointed in any of the Debtor's chapter 11 case or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtor's case.  This Order and the Agreement shall inure to the benefit of the Debtor, its estate and creditors, the Buyer and their respective successors and assigns.

28.     The findings of fact and conclusions of law set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made

17

applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any finding of

fact constitutes a conclusion of law, it is adopted as such, and to the extent any conclusion of law

constitutes a finding of fact, it is adopted as such.

29.    This Court shall retain jurisdiction to, among other things, interpret,

implement, and enforce the terms and provisions of this Order and the Agreement, all

amendments thereto and any waivers and consents thereunder and each of the agreements

executed in connection therewith to which the Debtor is a party, and to adjudicate, if necessary,

any and all disputes concerning or relating in any way to the Agreement, the Sale or this Order.

30.    A copy of this Order shall be served on the New York State Attorney

General, who shall also receive written notice that the sale of the Acquired Assets has closed, if

such sale has been abandoned, or if it is still pending 90 days after entry of this Order.

31.    Each and every federal, state, and local governmental agency or

department is directed to accept any and all documents and instruments necessary and

appropriate to consummate the transactions contemplated by the Agreement and this Order.

32.    All time periods set forth in this Order shall be calculated in accordance

with Bankruptcy Rule 9006(a).

33.    To the extent that the provisions of this Order is inconsistent with any

prior order or pleading with respect to the Motion in this chapter 11 case, the terms of this Order

shall govern.  To the extent there are any inconsistencies between the provisions of this Order

and the Agreement (including all ancillary documents executed in connection therewith), the

terms of this Order shall govern.

34.    The provisions of this Order are nonseverable and mutually dependent.


Dated: _____, 2017


_____
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit 1</u>**

**Asset Purchase Agreement**